CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

06/25/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

JOHN DOE,                                      )
                                               )
      Plaintiff,                             )
                                               )     **Case No.**   3:19CV00038
v.                                             )
                                               )
THE RECTOR AND VISITORS                        )
OF THE UNIVERSITY OF VIRGINIA,                 )
FRANK M. CONNOR, III,                          )
JAMES B. MURRAY, JR.,                          )
ROBERT M. BLUE,                                )
MARK T. BOWLES,                                )
L.D. BRITT,                                    )
WHITTINGTON W. CLEMENT,                        )
ELIZABETH M. CRANWELL,                         )
THOMAS A. DePASQUALE,                          )
BARBARA J. FRIED,                              )
JOHN A. GRIFFIN,                               )
ROBERT D. HARDIE,                              )
MAURICE A. JONES,                              )
BABUR B. LATEEF,                               )
TAMMY S. MURPHY,                               )
C. EVANS POSTON, JR.,                          )
JAMES V. REYES,                                )
JEFFREY C. WALKER,                             )
JAMES E. RYAN,                                 )
EMILY BABB,                                    )
and                                            )
JOHN FLOOD,                                    )
                                               )
      Defendants.                            )
                                               )

## COMPLAINT

Plaintiff John Doe,[1] by and through his undersigned counsel, files this Complaint against the Defendants: The Rector and Visitors of the University of Virginia, Frank M. Connor, III, James B. Murray, Jr., Robert M. Blue, Mark T. Bowles, L.D. Britt, Whittington W. Clement, Elizabeth M. Cranwell, Thomas A. DePasquale, Barbara J. Fried, John A. Griffin, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Tammy S. Murphy, C. Evans Poston, Jr., James V. Reyes, Jeffrey C. Walker, James E. Ryan, Emily Babb, and John Flood. Plaintiff seeks declaratory judgment and injunctive relief and attorneys' fees for violations of Plaintiff's right to due process, and for contract violations.

## INTRODUCTION

1.     This case arises out of the Defendants' decision to effectively suspend John Doe ("Mr. Doe") by summarily refusing to confer his degree without a hearing, after investigating him improperly for the duration of his fourth and final year at the University of Virginia ("University") for alleged conduct which falls outside the jurisdiction of the University's policies and procedures.

2.     On August 8, 2018, Defendants pursued a Title IX investigation against Mr. Doe – then a University student – for conduct which allegedly occurred off-campus in Spring of 2017 and involves Jane Roe ("Ms. Roe"), who is unaffiliated with the University.

---

[1] "John Doe" is a pseudonym for Plaintiff due to the nature of the allegations in this lawsuit. *See* John Doe's Motion and Memorandum for Leave to Proceed Under a Pseudonym and for a Protective Order. Mr. Doe seeks to protect his privacy and his accuser's privacy, who is identified as "Jane Roe."

2

3.     Mr. Doe has consistently denied the allegations made by Ms. Roe.

4.     The University's investigation has been pending for over ten months (five times longer than is typical), and Mr. Doe was informed on May 1, 2019, – eighteen days before graduation – that his degree would not be conferred pending final resolution of a Title IX investigation.

5.     No explanation for the delay in resolving the Title IX investigation was given.

6.     Following his graduation, when Mr. Doe finally received the untimely Final Investigation Report on May 22, 2019, Defendant John Flood ("Defendant Flood") relied heavily on information Defendant Flood recently gathered in the form of an interview with Ms. Roe's close friend and Ms. Roe's phone records from April 2017, to find Mr. Doe responsible for prohibited conduct in violation of the University's policies and procedures.

7.     Mr. Doe received no notice that the additional information existed and would be incorporated in a Final Investigation Report finding him responsible for the alleged misconduct.

8.     Mr. Doe was provided no opportunity to respond to the additional information before Defendant Flood issued the Final Investigation Report.

9.     The University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence ("Title IX Policy" or "Policy") and Procedures for Reports Against Students ("Title IX Procedures" or "Procedures") provide that an investigation is closed at the issuance of a Draft Investigation Report. Both the

3

complainant and respondent are provided an opportunity to review and respond to evidence gathered in the investigation and presented in the Draft Investigation Report.

10.    Pursuant to an assessment conducted by the University under the Title IX Policy provisions over ten months ago, the Defendants determined it was appropriate for Mr. Doe to continue his studies in a normal fashion and that no remedial or protective measures were necessary to safeguard the University community from Mr. Doe.

11.    Defendants' summary refusal to confer Mr. Doe's degree and indefinite suspension, the pursuit of an investigation which has no basis in University policies or procedures, the lack of resolution of the allegations against Mr. Doe within a reasonable time period, and erroneously finding him responsible without notice and opportunity to be heard – violate Constitutional due process and contract law.

## JURISDICTION AND VENUE

12.    Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 2201, 2202, 1331, 1343 because this action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and pursuant to 28 U.S.C. § 1332 because Mr. Doe is a citizen of another state, the Defendants are citizens of Virginia, and the value of the rights at issue, and the extent of the injury to be prevented, exceeds $75,000.00. This Court has supplemental jurisdiction over the non-federal claim pursuant to 28 U.S.C. § 1367.

13.    The injunctive relief sought in this matter is authorized by 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

4

14.     Venue properly lies in this Court under 28 U.S.C. § 1391(b)(1) and (2), because the Defendants are residents of this judicial district within the meaning of the statute, and because the events giving rise to Mr. Doe's claims have occurred, and are occurring, within this judicial district.

## PARTIES

15.     Plaintiff John Doe finished his fourth and final year at the University and has completed all undergraduate degree requirements.

   a.     The disclosure of John Doe's identity will cause him harm as this case involves matters of utmost personal intimacy, including education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232 and 34 CFR Part 99.

16.     Defendant Rector and Board of Visitors of the University of Virginia ("Board of Visitors" or "University") is a public university formed under the laws of the Commonwealth of Virginia and located in Charlottesville, Virginia, and is part of the statewide system of public higher education operated by the Commonwealth of Virginia. The Board of Visitors is the chief policy-making and oversight authority for the University. Pursuant to its December 7, 2018, *Statement of Visitor Responsibilities*, it has a duty to monitor the implementation of the University's policies. All of the actions of its officials and employees described herein took place under color of state authority.

17.     Defendant Frank M. Connor, III is the Rector of the University, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

5

18.     Defendant James B. Murray, Jr. is the Vice Rector of the University, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

19.     Defendant Robert M. Blue is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

20.     Defendant Mark T. Bowles is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

21.     Defendant L.D. Britt is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

22.     Defendant Whittington W. Clement is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

23.     Defendant Elizabeth M. Cranwell is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

24.     Defendant Thomas A. DePasquale is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section

6

2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

25.     Defendant Barbara J. Fried is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

26.     Defendant John A. Griffin is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

27.     Defendant Robert D. Hardie is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

28.     Defendant Maurice A. Jones is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

29.     Defendant Babur B. Lateef is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

30.     Defendant Tammy S. Murphy is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

31.     Defendant C. Evans Poston, Jr. is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

32.     Defendant James V. Reyes is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

33.     Defendant Jeffrey C. Walker is a member of the Board of Visitors, and pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 2.4(10), has a duty to regulate the government and is responsible for the discipline of students.

34.     Defendant James E. Ryan is the president of the University and is responsible for overseeing the application of the Title IX Policy against students, and has supreme administrative direction over the University's Office for Equal Opportunity and Civil Rights and its Title IX office.  Pursuant to the *Manual of the Board of Visitors of the University of Virginia*, Section 4.22(9), Defendant James E. Ryan is responsible for the discipline of students with the power to impose appropriate penalties including expulsion.

35.     Defendant Emily Babb is the Assistant Vice President for Title IX Compliance/Title IX Coordinator and is responsible for coordinating the University's investigation, response, and resolution of this matter and all reports under the Title IX Policy.  Defendant Emily Babb reports directly to Defendant James E. Ryan.

36.     Defendant John Flood is the investigator in this case and is responsible for applying the Title IX Policy in this matter and conducting a fair and impartial

8

investigation and making findings of responsibility and non-responsibility under the Title IX Policy. Defendant John Flood reports directly to Defendant Emily Babb.

37. The individual Defendants are sued in their official capacities, and are authorized to grant all of the injunctive relief sought in the Complaint.

## STATEMENT OF FACTS

38. Mr. Doe enrolled as an undergraduate student at the University in August 2015. Beginning at that time and continuing through the events that give rise to this action, Mr. Doe paid substantial tuition to the University and completed all degree requirements.

39. Mr. Doe is in good standing with the University in all respects, except for the outstanding investigation described herein.

40. Mr. Doe was expected to receive his diploma on May 19, 2019, and had completed all degree requirements by that date.

41. On or about April 13, 2017, Mr. Doe met Ms. Roe at a private off-campus restaurant in Charlottesville.

42. Ms. Roe is not a University student, is not employed by the University, and has no relationship to the University.

43. At some point in the early hours of April 14, 2017, Ms. Roe accompanied Mr. Doe to his private apartment located off-campus. The two engaged in sexual activity.

44. Ms. Roe now claims that she did not consent to this sexual activity and was sexually assaulted.

45. Mr. Doe has consistently maintained his innocence. Mr. Doe has put forward evidence supporting his exoneration.

9

46.     The University initiated a Title IX investigation and conducted a "health and safety threat assessment" on Mr. Doe, and no protective measures or remedial measures designed to protect the University community were imposed.

47.     Mr. Doe's activities on campus were unrestricted, although the investigation placed substantial burdens on him and caused immense stress and financial costs during his entire fourth and final year at the University.

48.     Interviews of Ms. Roe and three witnesses were conducted from August 17, 2018, through October 12, 2018, before the close of the investigation and the issuance of the Draft Investigation Report.

49.     All witness interviews incorporated into the Draft Investigation Report were completed by October 12, 2018, but the Draft Investigation Report was not issued by Defendants Flood and Emily Babb ("Defendant Babb") until December 18, 2018.

50.     Based on the exhibits provided to Mr. Doe, there appears to have been no evidence gathered between October 12, 2018, and December 18, 2018, justifying any delay.

51.     Pursuant to a mutually agreed upon response-period, Mr. Doe submitted responses to the Draft Investigation Report on January 25, 2019, and again on February 13, 2019.

52.     Ms. Roe was also afforded the opportunity to respond, and did so on February 7, 2019.  In her response, Ms. Roe did not put forth any additional evidence.

53.     The Draft Investigation Report did not contain sufficient evidence to find Mr. Doe responsible for the conduct that he has consistently and vehemently denied under oath.

54.     On April 29, 2019, four months after the investigation had closed, Ms. Roe and Defendant Flood engaged in email correspondence, and Ms. Roe attached her phone records from April 2017.

55.     On April 30, 2019, after the investigation had closed, Defendant Flood interviewed a close friend of Ms. Roe's.

56.     Both the friend of Ms. Roe and the phone records were known to Defendants as early as September 2018, but the evidence was not included in the investigation which closed on December 18, 2018.

57.     The Final Investigation Report was not issued within five days per the Title IX Policy and Procedures. Instead, Defendants fell silent for approximately 75 days following the close of Mr. Doe's and Ms. Roe's response period, until May 1, 2019, when Defendant Babb informed Mr. Doe that the University would not confer his degree due to the pending investigation.

58.     Mr. Doe received no further communication until May 21, 2019, when Defendant Flood notified Mr. Doe that the Final Investigation Report would be issued the following day.

59.     Defendant Babb issued the Final Investigation Report on May 22, 2019, in which Defendant Flood exonerated Mr. Doe of some of the alleged sexual misconduct Ms. Roe reported, finding her testimony unreliable, but then erroneously found Mr. Doe responsible for other alleged sexual misconduct.

60.     Defendant Flood's Final Investigation Report concludes that Ms. Roe "…is not a University student or employee nor is otherwise seeking access to any University program or activity that was interfered with by [Mr. Doe's] alleged conduct."

61.     The Final Investigation Report and its finding of responsibility relied heavily on information collected outside of the timeframe for completion, without the knowledge of Mr. Doe and with no prior notice to him.

62.     Mr. Doe received no notice and was not provided an opportunity to respond prior to this new information being spontaneously produced for the first time in the Final Investigation Report on May 22, 2019.

63.     No hearing was held before the Defendants refused to confer Mr. Doe's degree on the basis of the new information which Mr. Doe did not have an opportunity to review or to respond, and was developed by coordinating *ex parte* with Ms. Roe.

64.     Mr. Doe has not received any notice of the delays in the resolution of the Final Investigation Report and scheduling of a hearing, or the reasons therefore.

65.     The investigation has been ongoing for over ten months, and Mr. Doe must now inform his employer that the University refuses to confer his degree because of an unresolved sexual misconduct proceeding against him.  His employment was conditioned on the receipt of his undergraduate degree.

**Title IX and the University's Title IX Policy and Procedures**

66.     Under Title IX of the Education Amendments of 1972 and its implementing regulations, all institutions that receive federal funds must ensure that no student

12

experiences a deprivation of his or her access to educational opportunities on the basis of sex.

67.    Consequently, the University promulgated its Title IX Policy.  The version of the Title IX Policy relevant to the allegations in this case was adopted on July 1, 2015.

68.    The University also promulgated its Procedures, which "should be read in conjunction with the Title IX Policy."

69.    The University's adoption of the Title IX Policy and Procedures, and the University's practices under this Policy and these Procedures, substantially limit the University's ability to discipline, suspend, expel, or dismiss students.

70.    The University's Title IX Policy and Procedures incorporate and apply the requirements of the federal Title IX law, and the University, in its written procedures, aims to embody the fundamental guarantees grounded in the Due Process Clause and other constitutional protections.

71.    In its November 24, 2014, *Resolution and Statement on Sexual Assault*, the Board of Visitors resolved that the University is committed to the fundamental principle of the right to due process, and will ensure the University will apply the rule of law.

72.    In its *Board Basics Book*, the University describes its Title IX Policy as effectuating federal law.  "Consistent with its Title IX obligation, the University prohibits discrimination, including sexual and gender-based harassment and violence, on the basis of sex and gender in all of its programs and activities, including academics, athletics, and other extracurricular activities."

13

73.     The Title IX Policy states that "The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities. To that end, this policy prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ('Title IX')…"

74.     Title IX prohibits discrimination on the basis of sex "under any education program or activity" receiving federal financial assistance ((20 U.S.C. § 1681(a); 34 C.F.R. § 106.1)), meaning within the "operations" of a postsecondary institution or school district ((20 U.S.C. § 1687; 34 C.F.R. § 106.2(h)).

75.     Schools are responsible for redressing a hostile environment that occurs on campus even if it relates to off-campus activities.

76.     Consequently, the University restricts the application of its Title IX Policy to (1) prohibited conduct occurring on University Grounds[2] or on property controlled by the University, (2) conduct occurring in the context of a University education program or activity, and (3) conduct occurring outside of its educational programs or activities, but which has "continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University Grounds or other property owned or controlled by the University or in any University employment or education program or activity."  (Section II, "To Whom This Policy Applies").

77.     The Title IX Policy limits its jurisdiction over the above conduct to "Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students").

---

[2] The University refers to its campus as "Grounds."

14

78.     Further, the Title IX Procedures state that the University will only be able to

pursue disciplinary resolution and sanctions where the Respondent continues to be

registered or enrolled for credit- or non-credit-bearing coursework at the University.

(Title IX Procedures, Section V(C)).

79.     The University restricts the application of its Title IX Policy to "…specific forms

of behavior that violate Title IX…"

80.     While courts do not recognize "continuing adverse effects" as a violation of Title

IX, the existence of a hostile environment is prohibited.  A hostile environment exists

when sexual misconduct is so severe, persistent, or pervasive as to unreasonably deny or

limit a student's ability to participate in or benefit from the school's programs or

activities.  (Title IX Policy, Section VI(E)).

81.     Defendant Flood concluded in his Final Investigation Report issued on May 22,

2019, that Ms. Roe "…is not a University student or employee nor is otherwise seeking

access to any University program or activity that was interfered with by [Mr. Doe's]

alleged conduct."

82.     The Title IX Policy and Procedures provide, after a "health and safety threat

assessment" immediately following a report of prohibited conduct, that the University's

Evaluation Panel may impose remedial and/or protective measures, for the purpose of

protecting a complainant and facilitating the complainant's continued access to

University employment or education programs and activities. (Title IX Policy, Section

V(A); Title IX Procedures, Section V).  Only the Evaluation Panel may impose these

interim measures.

83.     The Title IX Procedures state that respondents "can expect [p]rompt and equitable resolutions of allegations of Prohibited Conduct" and "written notice of any extension of timeframes for good cause."  The investigator is to "conduct a prompt, thorough, fair, and impartial investigation."  (Title IX Procedures, Section III; VI(A)(1)).

84.     The Title IX Procedures require that the parties be able to respond to the evidence gathered at the end of the investigation and summarized in the Draft Investigation Report, prior to the issuance of the Final Investigation Report, and that they have an "equal opportunity to be heard."  (Title IX Procedures, Section VI(A)(1)).

85.     Section VI(A)(1)(c) of the Title IX Procedures – "Presumption of Non-Responsibility and Participation by the Parties" provides that

> The investigation is a neutral fact-gathering process. The Respondent is presumed to be not responsible; this presumption may be overcome only where the Investigator and/or Review Panel conclude that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding that the Respondent violated the Title IX Policy. Neither party is required to participate in the investigation or any form of resolution under these Procedures, and the Investigator will not draw any adverse inference from a decision by either of the parties not to participate.

86.     Section VI(A)(1)(d) of the Title IX Procedures – "Timeframe for Completion of Investigation; Extension for Good Cause" – states that

> Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days. This timeframe may be extended for good cause, which may exist if additional time is necessary to ensure the integrity and completeness of the investigation, to comply with a request by external law enforcement for temporary delay to gather evidence for a criminal investigation, to accommodate the availability of

16

witnesses, to account for University breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or for other legitimate reasons. The Investigator will notify the parties in writing of any extension of this timeframe and the reason for such extension.

87.  Section VI(A)(1)(n) of the Title IX Procedures – "Final Investigation Report" –

states that

Unless there are significant additional investigative steps requested by the parties or identified by the Investigator, within five (5) calendar days after receipt and consideration of any additional comments, questions and/or information submitted by the parties during the designated review and response period, the Investigator will prepare a Final Investigation Report, which will include a recommendation as to whether there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility for a violation of the Title IX Policy (and, where applicable, the PADH policy and/or the University's Standards of Conduct).

88.  Section VI(A)(1)(r) of the Title IX Procedures – "Timing of Investigation" – states that

The investigation typically will be completed within forty-five (45) calendar days. This period may be extended to account for a previous attempt, if any, at Alternative Resolution, or for other good cause, as described Section VI.A.1(d) of these Procedures. Any extension, other than for Alternative Resolution, and the reason for the extension, will be shared with the parties in writing.

89.  Section VI(A)(3)(b) of the Title IX Procedures – "Notice and Timing of Hearing – states that

Typically, a Hearing will be held within fifty-five (55) calendar days from the date of the Notice of Investigation, subject to extension for good cause, as described in Section VI.A.1(d) of these Procedures.

17

90.	Pursuant to Section VI of the Title IX Procedures, only the Review Panel presiding over the Hearing may impose sanctions, to include suspension and expulsion. The Panel does not have the authority to review, assess, evaluate or overturn a prior decision that the University had jurisdiction to investigate prohibited conduct.

### The University's Title IX Policy as Applied to Mr. Doe

91.	The Defendants subjected, and are subjecting, Mr. Doe to a procedure that does not apply to him, have indefinitely suspended him outside of applicable procedure by refusing to confer his degree, and continue to substantially deviate from their own Title IX Policy and Procedures, which Mr. Doe relied upon, in violation of the Due Process Clause.

a.	Mr. Doe's continuing presence on University property and his participation in the University's education and other programs created no hostile environment on University property or other property owned or controlled by the University, or in any University education program or activity that the University was required to remedy, resulting from the alleged off-campus conduct involving an individual unaffiliated with the University.

b.	In fact, the University's Evaluation Panel conducted a health and safety threat assessment at the start of the investigation and did not impose any remedial measures to protect the health or safety of the University community, or any individual member of the community, or third parties while on University property, or in University employment or education program or activity.

c.     From the commencement of the investigation through the period of the graduation exercise in which Mr. Doe fully participated, Mr. Doe enjoyed all the rights and privileges of his enrollment as a student at the University, including access to University property and fully participated in University education programs and activities.

d.     The University never deemed it necessary to reconvene its Evaluation Panel and never re-revaluated its initial health and safety threat assessment, as provided in its Policy.

e.     At the point he was scheduled to graduate and receive his degree, Mr. Doe was a student in good standing.

f.     The University employs measures including cooperation with law enforcement agencies to monitor student misconduct.

g.     The University employs other measures to monitor, identify, and act upon student misconduct.

h.     The University has received no information of any misconduct by Mr. Doe during his time as a student, except the allegation that is the subject of the disputed Title IX investigation.

i.     Now that Mr. Doe is no longer registered or enrolled as a student or present on University owned or controlled property, no continuing adverse effects or hostile environment exist purportedly stemming from the alleged misconduct which is the subject of the Title IX investigation.

19

j.    Defendant Flood concluded that Ms. Roe "…is not a University student or employee nor is otherwise seeking access to any University program or activity that was interfered with by [Mr. Doe's] alleged conduct." Consequently, any pursuit of this investigation cannot be to the end of remedying a hostile environment on campus, the only potentially valid grounds for jurisdiction.

92.    There is a pattern of misapplication of the Title IX Policy. Defendants, outside of this case, have retained jurisdiction of at least one other matter that did not fall within the plain language of the Title IX Policy section "To Whom This Policy Applies."

93.    The Defendants have investigated Mr. Doe over his entire fourth and final year at the University and have refused to confer his degree without authority under the Policy and Procedures, and prior to holding a hearing in which he could advance his defenses.

94.    The Defendants now seek to pursue disciplinary resolution and sanctions even though Mr. Doe is no longer a student, that is Mr. Doe no longer continues to be registered or enrolled for credit- or non-credit-bearing coursework at the University.

95.    Mr. Doe relied on the fact that Defendant Babb notified him on August 8, 2018, that he could expect "prompt" resolution of the allegations, and that the University aimed to resolve matters within 60 calendar days, except in the case of extensions of time for "good cause shown," which he would be notified of in writing.

96.    Mr. Doe was not informed in the August 2018 Notice of Investigation, or by any applicable policy, that the University could refuse to confer his degree summarily during the pendency of the investigation, which could stretch to the better part of a year.

20

97.     There is no applicable policy upon which the University may rely to withhold Mr. Doe's degree or refuse to release his transcript reflecting his completion of the University's degree requirements.

98.     It has now been more than ten months since the investigation commenced, and Mr. Doe has received no notifications of extensions of time for "good cause shown" except for a delay in October 2018 concerning the Draft Investigation Report.

99.     No new evidence was collected between October 2018, when the delay was issued, and December 2018 when the Draft Investigation Report was disseminated.

100.    Mr. Doe relied on these representations when he decided to respond to the allegations made in August 2018, and accepted an offer of employment and a signing bonus believing that his name would be cleared in advance of graduation pursuant to the University's stated procedures.

101.    Mr. Doe simply had no notice in August 2018 that he could be indefinitely suspended in May 2019 after he completed all degree requirements, on the basis of new information gathered *ex parte* in coordination with Ms. Roe after the close of the investigation, and that the University would refuse to confer his degree on the basis of that new information, or for any other reason.

102.    Further, in February 2019, no Final Investigation Report was issued within five days of the response period as required by the Title IX Procedures.  A Final Investigation Report was not issued until May 22, 2019, when Defendant Babb e-mailed the document containing new and previously unseen information developed by coordinating with Ms. Roe.

103. Defendant Flood worked *ex parte* with Ms. Roe to develop additional information after the close of the investigation and the issuance of the Draft Investigation Report.

104. The Final Investigation Report, issued after graduation, included new information in the form of a witness interview provided by a close friend of Ms. Roe, and Ms. Roe's phone records that Mr. Doe was not given an opportunity to review or to respond.

105. Defendant Flood relied heavily on this previously undisclosed information to find Mr. Doe responsible in the Final Investigation Report issued on May 22, 2019, after Mr. Doe was no longer a student at the University.

106. In violation of University policy that neither party is required to participate in the investigation or any form of resolution and that the investigator will not draw any adverse inference from a decision by either of the parties not to participate, Defendant Flood disregarded truthful exonerating statements Mr. Doe provided in an affidavit under oath; improperly credited unsworn statements of Ms. Roe; and improperly found Mr. Doe's sworn testimony insufficient to establish his non-responsibility and to overcome the presumption of innocence.

107. The information relied on in the May 22, 2019, Final Investigation Report was available to Defendants by September 2018, but not included in the Draft Investigation Report issued in December 2018.

108. Defendants have deprived Mr. Doe of an opportunity to mount an effective defense and caused an erroneous outcome.

109.    Mr. Doe's good name, reputation, honor, and integrity have been damaged and called into question, and his indefinite suspension effectuated by refusing to confer his degree has interfered with his ability to remain employed.

110.    The unexplained and unjustifiable substantial delay in the conclusion of Defendant Flood's investigation, and the spontaneous introduction of new information favoring Ms. Roe in the Final Investigation Report, violates fundamental concepts of justice and the community's sense of fair play and decency.

111.    On May 23, 2019, Mr. Doe, through counsel, sent the University Office of General Counsel a copy of a draft legal complaint, and a statement regarding his position on the University's refusal to confer his degree, the University's jurisdiction over the investigation, the length of time the investigation has been pending, the lack of notice and opportunity to be heard, and other substantial deviations from the University's policies, and a justiciable controversy exists which is ripe for review.

**COUNT I**
**(42 U.S.C. § 1983 – VIOLATION OF PROCEDURAL DUE PROCESS**
**UNDER THE FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS)**

112.    Mr. Doe incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein.

113.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

114.    The Defendants have acted intentionally under color of law in disregard of Mr. Doe's clearly established constitutional rights.

23

115.    As a direct and proximate result of Defendants' violations, Mr. Doe in the absence of injunctive relief will suffer severe and substantial damages, including lost career and business opportunities, diminished earnings capacity, litigation expenses including attorneys' fees, loss of reputation, humiliation, mental and emotional anguish and distress, and other compensatory damages.

116.    Defendants' continued actions outside of the jurisdiction of the Title IX Policy, accumulation of substantial errors in the investigation, and failures to comply with internal policies are causing substantial, immediate, and continuing damage to Mr. Doe.

117.    Mr. Doe relied to his detriment on the University's stated policies, and has been prejudiced by the erroneous outcome caused by the Defendants' substantial deviation from the University's established policies.

118.    The University regularly and routinely disciplines, dismisses, suspends, or expels students only with cause and pursuant to specific procedures.

119.    No cause or authority exists under the Title IX Policy and Procedures to suspend Mr. Doe and refuse to confer Mr. Doe's degree, or to find him responsible for prohibited conduct under the Title IX Policy.

120.    Mr. Doe has completed all degree requirements, and has a constitutionally protected interest in obtaining his degree from the University, and maintaining his employment and a constitutionally protected liberty interest in his good name, reputation, and integrity.

121.    The University has deprived Mr. Doe of a constitutionally protected property right and liberty interest under the facts alleged.

24

122.    Pursuant to 42 U.S.C. § 1983, Mr. Doe is entitled to an Injunction and Declaratory Judgment from this Court conferring his degree and prohibiting the imposition of, or reporting of, any disciplinary actions under the University's Title IX Policy and Procedures against Mr. Doe.

123.    Mr. Doe is entitled to his attorneys' fees under 42 U.S.C. § 1988.

## COUNT II
## (42 U.S.C. § 1983 – VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS)

124.    Mr. Doe incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein.

125.    Defendants' conduct in pursuing this investigation against Mr. Doe is egregious, arbitrary, and capricious.  In March 2018, another respondent in a separate Title IX investigation informed Defendant Babb and the University's General Counsel office that the jurisdictional provisions of the Title IX Policy were being misapplied.  The Defendants ignored that respondent's arguments and refused to respond or identify the basis of jurisdiction in that matter.  The Defendants' continued disregard of students' protected rights is unconstitutional and deliberate.

126.    Mr. Doe has finished his fourth and final year at the University, and the alleged conduct occurred off campus with an individual unaffiliated with the University.  Mr. Doe has consistently denied all of the allegations under oath.

127.    Defendants cannot maintain an investigation against him under the premise that a hostile environment exists on campus that is denying another student the right to an education on the basis of sex.

128.    Defendants' actions, in effectively suspending Mr. Doe in the days before graduation after a ten-month investigation – by refusing to confer his degree on the basis of evidence developed by coordinating with Ms. Roe after the close of the investigation – shocks the conscience because the University did not have jurisdiction to investigate him in the first place.

129.    Mr. Doe is entitled to his attorneys' fees under 42 U.S.C. §1988.

## COUNT III
## (BREACH OF CONTRACT AGAINST THE UNIVERSITY)

130.    Mr. Doe incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein.

131.    Mr. Doe has paid the University substantial amounts of money for his education, and in return, the University has contracted to provide Mr. Doe with access to its undergraduate degree program.

132.    Mr. Doe's enrollment in and attendance of classes at the University created in Mr. Doe a reasonable expectation that he would earn his degree from the University, provided he maintained satisfactory grades and complied the University's rules and policies.

133.    The terms and conditions offered by the University and accepted by Mr. Doe upon his matriculation constituted a contractual relationship under which each party owes the other certain duties.

134.    The Title IX Policy and Procedures set forth, at least in part, the requirements of that contractual relationship.

135.    Among the representations made by the University is that all Title IX proceedings will apply only to certain categories of conduct under its "To Whom This Policy Applies" provision; that its investigations will be conducted in a "prompt and equitable" manner, in which the respondent will be given notice and an opportunity to be heard; and that written notice of good cause for delays will be provided.

136.    The University has failed, and is failing, to meet these requirements, including by subjecting Mr. Doe to a campus disciplinary process for which it has no jurisdiction under its own policies.

137.    More generally, the University has breached, and is breaching, its contractual obligations by subjecting Mr. Doe to a disciplinary process that – in the ways, and for the reasons, set out herein – is egregious, arbitrary, capricious, and violates the University's policies and procedures.

138.    As a direct and proximate result of these breaches, Mr. Doe has been, and is being, required to expend substantial amounts of his own time and resources, with detrimental impact on his studies during his fourth and final year, engaging in the University's Title IX process.

139.    Most significantly, the University refused to confer Mr. Doe's degree in violation of the applicable contractual terms, causing the imminent loss of his employment, which was conditioned on him receiving his degree.

## COUNT IV
## (DECLARATORY JUDGMENT AGAINST ALL DEFENDANTS)

140.   Mr. Doe incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein.

141.   The Fourteenth Amendment protects against state action that involves a deprivation of "life, liberty, or property, without due process of law…"  U.S. Const. Amend. XIV, § 1.

142.   The Defendants have a constitutional obligation to provide a fundamentally fair and reliable campus disciplinary process.

143.   Mr. Doe is entitled under the Constitution, to the opportunity to be heard in a meaningful manner prior to being effectively suspended days before graduation, and ten months after an improper investigation was commenced.

144.   The Defendants plan to convene a panel to consider imposing sanctions, but that panel has no authority to act for the reasons enumerated in the paragraphs herein.

145.   Mr. Doe's interests in the results of the Review Panel hearing scheduled for July 1, 2019, on the Final Investigation Report are significant, and include damage to his academic and professional reputation, his ability to enroll in other institutions of higher education, and to pursue a career.

146.   The Defendants have violated Mr. Doe's rights as enumerated in the paragraphs herein.

147.   The Plaintiff and the Defendants have a dispute about whether the Title IX Policy and Procedures, as applied to Mr. Doe, violate the United States Constitution.

28

148.    The Defendants continue to enforce a policy against Mr. Doe which does not apply to him, and have substantially deviated from, and have failed to comply with, their own Title IX Policy and Procedures which Mr. Doe relied on, to his detriment.

149.    Mr. Doe is entitled to a declaration that the Title IX Policy and Procedures, as applied to Mr. Doe, violate the Constitution, and that the University's application of the Title IX Policy and Procedures to his alleged conduct is null and void.

150.    Pursuant to 42 U.S.C. § 1988, Mr. Doe is entitled to attorneys' fees incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Doe respectfully prays that this Court enter judgment on his behalf and against Defendants, and order relief against the Defendants as follows:

a.    That this Court issue preliminary and permanent injunctive relief, (i) restraining Defendants from proceeding with further campus disciplinary proceedings against Plaintiff; (ii) removing all record of the existence of the proceedings from Plaintiff's educational records; and (iii) conferring Plaintiff's degree.

b.    That this Court award Plaintiff his costs and expenses incurred in this action, including attorneys' fees as authorized under 42 U.S.C. § 1988 and any other appropriate authority, as well as such other and further relief as the Court deems just and proper.

DATED:  June 25, 2019

29

Respectfully Submitted,

JOHN DOE

By counsel

ST. JOHN, BOWLING, LAWRENCE & QUAGLIANA, LLP

By:     _/s/ Rhonda Quagliana_____
        Rhonda Quagliana (VSB# 39522)
        Francesca E. Fornari (VSB# 70989)
        416 Park Street
        Charlottesville, Virginia 22902
        (434) 296-7138
        Facsimile: (434) 296-1301
        rq@stlawva.com
        fef@stlawva.com
        Counsel for Plaintiff John Doe