IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:19-CV-00038-GEC |
| ) | |
| RECTOR AND VISITORS OF THE ) | |
| UNIVERSITY OF VIRGINIA, ET AL. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT UNIVERSITY OF VIRGINIA'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

More than ten months after being notified of the University's Title IX investigation and potential sanctions for alleged sexual misconduct under the University's Title IX Policy, Plaintiff suddenly claims an "emergency," less than five days before the scheduled Title IX hearing, seeking a preliminary injunction, the relief warranted only in the most extraordinary cases. Plaintiff has known since August 8, 2018 that he was being investigated and faced potential sanctions for sexual assault that arose out of his off-Grounds conduct. By waiting until the eve of his Title IX hearing, Plaintiff has created his own "emergency" and now asks this Court to exercise its equitable powers to circumvent the University's Title IX process and to deny the Complainant's right to a hearing and final adjudication of her case.

The Court should recognize this subterfuge for what it is, deny Plaintiff's motion, and allow the University's Title IX proceedings to be completed on Monday. Plaintiff's allegations do not justify the extraordinary remedy of injunctive relief. Moreover, Plaintiff's Motion does not come close to meeting his burden for this Court to grant a preliminary injunction that is

mandatory, rather than merely prohibitive, which requires application of a heightened and searching standard of review. Depending on the outcome of the University's Review Panel hearing, Plaintiff's claims could be moot after Monday. Even if not, they otherwise can be addressed in the normal course allowing the parties adequate discovery and an opportunity to fully set the table on these important issues for the Court's consideration.

Defendant Rector and Visitors of the University of Virginia (University), by counsel, pursuant to Rule 65 of the Federal Rules of Civil Procedure, therefore opposes Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and respectfully requests that this Court deny it.

## **Preliminary Statement**

Plaintiff's claims are inconsistent on their face.

Plaintiff alleges that he is being irreparably damaged because the University is withholding conferral of his degree pending the outcome of this disciplinary process and without providing a hearing. But as a remedy, Plaintiff asks this Court to enjoin and prevent his hearing which is scheduled to occur next Monday, July 1.

Plaintiff alleges that he has not been provided with an adequate opportunity to respond to information contained in the Final Investigation Report. Yet, Plaintiff has filed with the Court his contest statement to the Final Investigation Report – in which he responds to the facts and the application of the Title IX policy to his case. And again, Plaintiff asks this Court to enjoin the hearing scheduled for Monday at which he will have an opportunity to be heard in opposition to the findings and conclusions in the Final Investigation Report.

Plaintiff claims that the University's process has taken too long. But Plaintiff asks this Court to prevent the University from finishing its process on Monday and instead prematurely

leap into civil litigation before the University's process concludes.

If this Court denies Plaintiff's Motion for extraordinary relief, his claims may be moot after Monday (depending on the outcome of the hearing), or they may ripen into a justiciable controversy. Either way, Plaintiff is not going to suffer irreparable harm in the next five days. This Court should reject Plaintiff's mischaracterization of the University's Title IX process and deny his invitation to short-circuit the Title IX proceedings before they have concluded.

## Standard of Review

This Court is familiar with the well-settled standard Plaintiff must meet to obtain an extraordinary remedy of preliminary injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Preliminary injunctive relief is an "extraordinary" remedy that should be granted sparingly and only in limited circumstances. In re Microsoft Corp. Antitrust Lit., 333 F.3d 517, 526 (4th Cir. 2003). As a "condition precedent" to preliminary injunctive relief, Plaintiff must show that the relief is necessary "to prevent harm that is both irreparable and immediate." Direx Israel, Ltd. V. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) ("[T]he required 'irreparable harm' must be neither remote nor speculative, but actual and imminent.") Only after Plaintiff has satisfied this precondition, will the Court engage in the four-factor balancing test to determine whether to grant the requested relief. In re Microsoft, 333 F.3d at 527. Those four factors are: (1) the likelihood of irreparable harm to the Plaintiff if the requested relief is not granted; (2) the likelihood of harm to the defendant if the relief is granted; (3) the likelihood that Plaintiff will succeed on the merits; and (4) the public interest. Id.; Direx Israel Ltd., 952 F.2d at 811. Plaintiff bears the burden of establishing that each of the four factors supports granting an injunction. Direx Israel Ltd., 952 F.2d at 812. Moreover, Plaintiff must make a "clear showing" he is entitled to relief. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009) vacated on other grounds by 130 S. Ct. 2371 (2010) reaffirmed, in part, on

3

reconsideration by 607 F.3d 355 (4th Cir. 2010). This clear showing requires all four requirements must be satisfied. Id.

In addition, Plaintiff does not even acknowledge, much less justify his request for a preliminary injunction that not only is prohibitive, but also mandatory in nature. Plaintiff does not merely ask this Court to maintain the status quo, he requests that this Court direct the University to confer an academic degree. But "when the preliminary injunction is 'mandatory rather than prohibitory in nature,' this Court's 'application of this exacting standard of review is even more searching.'" In re Microsoft, 333 F.3d at 525. This Court's authority "to issue a preliminary injunction especially a mandatory one should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F. 2d 283, 286 (4th Cir. 1980). Plaintiff has not satisfied the standard for a prohibitory preliminary injunction, much less the more exacting standard which would compel this Court to require the University to issue a degree while it's disciplinary process remains pending and will be concluded in less than a week.

### Argument

**A. Plaintiff Has Not Demonstrated that He Will Suffer Immediate and Irreparable Harm.**

Plaintiff simply has failed to show he would suffer irreparable injury that would require this Court to issue the extraordinary and drastic remedy of a preliminary injunction. Despite having threatened to file a lawsuit and seek preliminary injunctive relief for more than a month, Plaintiff submits nothing more than an affidavit with mere conclusory statements about the potential harm he may suffer. The fact that Plaintiff's future employment is conditioned on the receipt of his degree (we do not know when that employment is scheduled to begin or when he is

4

required to confirm receipt of his degree), does not change this fact. Indeed, until the Review Panel hearing takes place, which Plaintiff ironically is asking this Court to enjoin from occurring, the University will not be able to determine appropriate outcome regarding this case. Depending on the outcome of the Review Panel hearing, there is a possibility that Plaintiff would receive his degree and this case could become moot. In essence, Plaintiff contends that he will suffer harm as a result of the anticipated hearing but does not describe how this harm is irreparable in nature. More importantly, Plaintiff does not make any showing, much less a "clear showing," that he will be suffer any harm, much less irreparable harm, between now and Monday. That is the critical issue that Plaintiff has glossed over and upon which the Court should focus in determining whether to grant an extraordinary interlocutory remedy.

**B. <u>Plaintiff Has Not Made a Clear Showing that He is Likely to Succeed on the Merits.</u>**

In the context of a student disciplinary proceeding, due process requires "notice and an opportunity to be heard." See <u>Dixon v. Alabama State Bd. of Educ.</u>, 294 F.2d 150 (5th Cir. 1961); <u>Henson v. Honor Comm. of Univ. of Va.</u>, 719 F.2d 69, 74 (4th Cir. 1983) (citing <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Matthews v. Eldridge</u>, 424 U.S. 319, 333 (1976). Plaintiff's Motion for injunctive relief turns due process on its head and actually asks this Court to prevent the University from providing Plaintiff with an opportunity to be heard before a Review Panel.

The University's Title IX Policy generally "prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by this policy, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any

5

investigation or proceeding under this policy (collectively, 'Prohibited Conduct'). These forms of Prohibited Conduct are unlawful, undermine the character and purpose of the University, and will not be tolerated." Pl's Ex. 1 at 3. The University's Title IX Policy thus intends to reach the broadest possible spectrum of sexual or gender-based misconduct that may impact the University, its students, faculty, staff, and programs.

Plaintiff attacks the integrity and thoroughness of the University's Title IX investigation and the findings and conclusions in the Final Investigation Report (FIR), but curiously does not put the FIR before the Court for review. The University is confident in the thoroughness, fairness, impartiality, findings and conclusions in the FIR and attaches it for the Court's careful consideration as Exhibit 1. See Def's Ex 1.

The University's Title IX investigation and adjudication process is extraordinarily thorough and allows both parties multiple opportunities to participate, supply information, respond to factual findings, and ultimately to contest the application of the Title IX policy to the facts in the forthcoming Review Panel hearing. The formal resolution process begins with a notice of investigation issued to both parties which identifies the subject matter of the investigation. In this case, the University issued a notice of investigation within a week after local police informed the University of the Complainant's report of sexual assault. See Def's Ex. 1 at 2 (University's Commencement of Formal Resolution). Both parties are invited to be interviewed, supply documents, and identify witnesses. See Pl's Ex. 2 at 15. The University's investigator also independently may identify sources of information and witnesses. Id. Importantly, the University's investigation is not limited only to what the parties offer. After the initial collection of information, the investigator writes a Draft Investigation Report (DIR). The DIR includes the relevant facts collected up to that point; it does not include any analysis or

determination about whether a policy violation has occurred. The investigator sends the DIR to the parties and invites them to respond to the DIR by providing additional information, identifying additional witnesses, or submitting to supplemental interviews.

Plaintiff repeatedly (and incorrectly) alleges that the issuance of the DIR "closed" the University's investigation. See Compl. ¶ 9 (alleging that "an investigation is closed at the issuance of the Draft Investigation Report."); ¶ 48 ("close of the investigation and the issuance of the [DIR]"); ¶ 54 ("after the investigation had closed"); ¶ 55 ("after the investigation had closed . . ."); ¶ 56 ("evidence was not included in the investigation which closed . . ."). But that is not correct. Plaintiff's representations certainly are self-serving, but they find no support in the University's procedures. Indeed, the University's procedures expressly state that additional investigation will occur after the DIR is issued. See Pl's Ex. 2 at 15. ("The Complainant and the Respondent will have an opportunity to review the [DIR]; meet with the Investigator; submit additional comments and information to the Investigator; identify any additional witnesses or evidence for the Investigator to pursue; and submit any further questions that they believe should be directed by the Investigator to the other party or to any witness.") The University's investigator also independently may continue to pursue investigative steps after the DIR is issued for review and comment. Id. ("Unless there are significant additional investigative steps requested by the parties or identified by the Investigator . . .") (emphasis supplied). After this additional investigation, the investigator collects, synthesizes, and analyzes all of the factual information and issues the FIR.

The FIR contains all of the facts and it applies the policy to the facts. See Def's Ex. 1. The FIR contains the analysis and conclusions about whether any policy violation has occurred. The investigator sends the FIR to the parties. The parties may accept or contest the findings and

conclusions in the FIR. Thus, the University's process allows both parties to review and respond to the FIR. If a party contests a finding of responsibility with respect to a policy violation or if a policy violation has been found and consideration of a sanction will have to occur, the matter will be scheduled for a Review Panel hearing. Both parties have a right to appear and to participate in the Review Panel hearing. At the hearing, both parties may address the findings in the FIR and both parties can be heard on the issue of appropriate sanctions, when the Review Panel confirms that a policy violation has occurred. We currently are at this stage of the proceedings in Plaintiff's case. The Review Panel Hearing for Plaintiff is scheduled for Monday, July 1.

Plaintiff repeatedly claims that he has not (or will not) have an adequate opportunity to respond to the information contained in the FIR. See Compl. at ¶ 8 ("Mr. Doe was provided no opportunity to respond to the additional information . . ."); ¶ 62 ("was not provided an opportunity to respond . . ."). That is not correct. Plaintiff has at least two opportunities to respond to the FIR under the Title IX Procedures – he can (and did) file a statement contesting the findings and conclusions in the FIR. See Pl's Ex. 4. Plaintiff also has a right to appear before the Review Panel to challenge the findings and conclusions in the FIR. Plaintiff already has availed himself of the first opportunity to be heard. After the FIR was issued, Plaintiff filed his contest statement to the FIR in which he disputes the analysis and conclusions in the FIR. See Pl's Ex. 4. Plaintiff's request to have this Court intercede in the nearly concluded Title IX process actually would prevent Plaintiff (and the Complainant) from having their opportunity to be heard before the Review Panel regarding the findings and conclusions in the FIR. Thus, Plaintiff's claims that he has not (and will not) have an adequate opportunity to be heard in response to the FIR simply are not true. Although Plaintiff attempts to shroud his true intent in

8

the cloak of various due process claims, it is apparent that Plaintiff would prefer to avoid his due process and his opportunity to be heard and he asks for this Court's assistance in doing so.

Plaintiff's claim that the University lacks authority to adjudicate off-Grounds conduct is not appropriate for resolution on a motion for interlocutory relief. It also is wrong as matter of law and policy. Plaintiff has known since August 8, 2018 that he was being investigated for a reported sexual assault that occurred off-Grounds. Yet, Plaintiff has waited until six days before his scheduled Title IX hearing, to seek interlocutory relief from this Court. The assertion that the University lacks authority to investigate and sanction misconduct that occurs outside of Grounds is not appropriate for resolution on hastily noticed hearing with virtually no opportunity to develop a meaningful record on this issue.

Plaintiff's theory also is antithetical to the manner in which the University of Virginia – and nearly all colleges and universities operate. The University has three systems that adjudicate all manner of student misconduct which occurs on and off-Grounds. The University's Honor Code applies to lying, cheating, or stealing, which occurs on and off-Grounds. The University's Standards of Conduct (prohibiting physical assaults, intentional or reckless threats to health or safety, disruption, disorderly conduct, property damage, etc.) applies to student misconduct that occurs on or off-Grounds. And the University's Title IX Policy (prohibiting sexual or gender-based harassment, sexual assault, stalking, intimate partner violence, etc.) applies to conduct that occurs on or off-Grounds. Plaintiff's suggested reading of the University's Title IX Policy would mean that victims of serious sexual or gender-based violence actually have less protection, than those who have suffered simple assaults or been victims of other minor misconduct.

Plaintiff's interpretation of the University's Title IX Policy leads to nonsensical results in the holistic application of the University's student misconduct systems. Under Plaintiff's

9
Case 3:19-cv-00038-GEC   Document 6   Filed 06/26/19   Page 9 of 14   Pageid#: 161

interpretation, if Mr. Doe punches his roommate with whom he has no romantic relationship in his off-Grounds apartment, his misconduct is adjudicated under the University's Standards of Conduct and sanctioned. But under Plaintiff's interpretation of the Title IX Policy, if Mr. Doe punches his girlfriend in an act of domestic violence in his off-Grounds apartment (or sexually assaults her), the University apparently is powerless to adjudicate that act of intimate partner violence under its Title IX Policy. Plaintiff's cramped interpretation is convenient for him, but would exclude from University purview a wide swath of student misbehavior that the University has a moral and legal obligation to investigate and to police for the benefit of the University community writ large.

Plaintiff's argument also ignores one of the two prongs of the Title IX Policy that provides the University with authority to adjudicate off-Grounds conduct. The Title IX Policy, by its express terms, applies to conduct that has "continuing adverse effects on or creates a hostile environment" on University Grounds, on property owned or controlled by the University, or in any University employment or education program or activity." In an effort to side-step the full scope of that provision, Plaintiff repeatedly references the investigator's conclusion in the FIR that Plaintiff's misconduct did not create a continuing hostile environment for the Complainant since she is not a member of the University community. But Plaintiff largely ignores the other prong of the provision – namely that allowing a student who has been investigated and found responsible for sexual assault to go without a finding of responsibility or sanction necessarily will have a "continuing adverse effect" on the University community at large. Plaintiff only references the key provision in two conclusory footnotes of his Memorandum with a bare statement that the provision is vague and overbroad and no analysis of how allowing a student who has committed a serious sexual assault could and would have

continuing adverse effects on the University community. See Pl's Mem. in Supp. at n. 3 & 4. Under Plaintiff's cabined interpretation of the University's Title IX Policy, George Huguely could not have been investigated, found responsible, or sanctioned for intimate partner violence because his act would not have created a future hostile environment for the victim and, according to Plaintiff's logic, his misconduct seemingly would have no continuing adverse effect on the larger University community since the offending act occurred off Grounds. There is no reason that Plaintiff's limited interpretation of the University's Title IX Policy should supersede the University's logical and internally consistent interpretation of its own policy and the University's consistent application of its Title IX Policy to off Grounds conduct since it was adopted in 2015.

## C. **Plaintiff's Request for Injunctive Relief is Contrary to the Public Interest.**

Plaintiff improperly conflates his personal interest in potentially avoiding accountability through extraordinary injunctive relief with the public's interest in the conclusion of the University's Title process. Plaintiff claims that an injunction somehow would benefit the larger University Community by impacting the University's application of the Title IX policy. But an injunction would serve Plaintiff's interests only. The University and the University community have a strong interest in the consistent application of the Title IX Policy. So does the Complainant in this case – who has participated with law enforcement and with the University's investigation from the outset. The Complainant intends to participate in the Review Panel hearing which will conclude the University's process involving her report of sexual assault. Like the Plaintiff, the Complainant is entitled to due process and an opportunity to be heard with respect to her report of sexual assault. The Complainant is entitled to finality – with a conclusion of responsibility, or not – in the University's process. Nowhere does Plaintiff even acknowledge the existence of this other party and the Complainant's interest in the conclusion of the Title IX

11

adjudication. The University urges the Court not to subscribe to Plaintiff's theory that his interests are somehow aligned with the interests of the University community or with the greater public interest. They are not.

## Conclusion

For the reasons stated above, the Court should deny Plaintiff's request for a preliminary injunction because Plaintiff is not going to suffer irreparable harm in the next five days; Plaintiff is not going to suffer irreparable harm from being provided another opportunity to be heard at the Review Panel hearing on Monday, July 1; Plaintiff has not demonstrated a likelihood of success on the merits regarding his claim that the University lacks authority to investigate, adjudicate, and sanction his off-Grounds conduct; and the public interest strongly favors the conclusion of the University's process on Monday as opposed to interlocutory intervention by the Court in a proceeding that was thrust in front of it by virtue of Plaintiff's brinksmanship.

Considering these factors, the Court should deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

Date: June 26, 2019

                        Respectfully submitted,

                        **RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA**

                By:    /s/ Barry T. Meek
                          Counsel

Timothy J. Heaphy (VSB No. 68912)
University Counsel and
 Senior Assistant Attorney General

Barry T. Meek (VSB No. 41715)
Associate University Counsel and
 Senior Assistant Attorney General

Melissa Wolf Riley (VSB No. 43316)
Associate University Counsel and
 Assistant Attorney General

Jasmine Yoon (VSB No. 73542)
Associate University Counsel and
 Assistant Attorney General

Office of the University Counsel
University of Virginia
P.O. Box 400225
Charlottesville, Virginia 22904-4225

Telephone:   (434) 924-3586
Facsimile:    (434) 982-3070
E-mail:       bmeek@virginia.edu

# CERTIFICATE

I hereby certify that on the 26th day of June 2019, a true copy of the Defendant University of Virginia's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction was served by electronic means through the Court's CM/ECF system on counsel for Plaintiff as follows:

>Rhonda Quagliana, Esq.
>Francesca E. Fornari, Esq.
>416 Park Street
>Charlottesville, Virginia 22902
>Telephone: (434) 296-7138
>Facsimile: (434) 296-1301
>Email: rq@stlawva.com
>Email: fef@stlawva.com
>
>Counsel for Plaintiff John Doe

**RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA**


/s/ Barry T. Meek