CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 28 2019

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | )<br>) |
| Plaintiff, | ) Civil Action No. 3:19CV00038<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| THE RECTOR AND VISITORS OF THE<br>UNIVERSITY OF VIRGINIA, et al., | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge<br>) |
| Defendants. | ) |

Plaintiff John Doe, who has completed all of the requirements to receive his undergraduate degree from the University of Virginia ("University"), was accused of sexually assaulting a young woman off campus ("Jane Roe") in April of 2017.[*] On May 1, 2019, Doe was advised that his degree would be withheld pending final resolution of proceedings conducted pursuant to the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence ("Title IX Policy") and the accompanying Procedures for Reports Against Students ("Title IX Procedures"). The University has scheduled a Review Panel Hearing for Monday, July 1, 2019, at which Doe faces the possible penalty of expulsion.

On June 25, 2019, Doe filed this action under 42 U.S.C. § 1983, alleging that the University has impermissibly exceeded the jurisdictional limits of its Title IX Policy and Procedures and deprived him of due process. That same day, Doe filed a motion for temporary restraining order and preliminary injunction. The court held a hearing on the motion via teleconference on June 27, 2019. For the following reasons, the plaintiff's motion will be granted in part.

---

[*] The plaintiff has filed a motion for leave to proceed under a pseudonym. By separate order, the court will grant the plaintiff's motion.

## Background

### I. Title IX Policy and Procedures

The University's Title IX Policy "prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and/or the Virginia Human Rights Act," including "Sexual Assault" and "Sexual or Gender-Based Harassment," which are collectively referred to as "Prohibited Conduct." Title IX Policy 2, Dkt. No. 3-2. The Policy "applies to Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students"); University employees . . . ("Employees"); and contractors, vendors, visitors, guests or other third parties ("Third Parties"). Id. The Policy further provides, in pertinent part, as follows:

> This policy pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:
>
> (1) the conduct occurs on University Grounds or other property owned or controlled by the University;
>
> (2) the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or
>
> (3) the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University Grounds or other property owned or controlled by the University or in any University employment or education program or activity.

Id. at 3.

Students are "subject to disciplinary action, up to and including separation from the University," if the University determines that they committed a Prohibited Act in violation of the Policy. Id. at 4. The Title IX Procedures applicable to reports of Prohibited Conduct committed

2

Case 3:19-cv-00038-GEC   Document 10   Filed 06/28/19   Page 2 of 14   Pageid#: 241

by Students set forth two resolution processes: (1) a Formal Resolution process, "which involves an investigation, and review and sanction (if applicable) by a Review Panel"; and (2) an Alternative Resolution process. Title IX Procedures 11, Dkt. No. 3-3. The Formal Resolution process was initiated in the instant case.

The Formal Resolution process begins with a Notice of Investigation issued to the complainant and the respondent. During the investigation, both parties have the opportunity to meet with the investigator, submit evidence, and identify witnesses. At the conclusion of the investigation, the investigator prepares a Draft Investigation Report, which summarizes the information gathered and outlines the contested and uncontested information. The complainant and the respondent then have the opportunity to meet with the investigator, submit additional comments and information, and identify additional witnesses.

Upon receipt and consideration of any additional information submitted by the parties, the investigator prepares a Final Investigation Report, which includes a recommendation as to whether there is sufficient evidence to support a finding of responsibility for a violation of the Title IX Policy. If the respondent contests the recommended findings, the respondent may submit a written statement explaining his reasons for doing so. The Final Investigation report, along with any responses from the parties, are then provided to a Review Panel for further proceedings.

If either party contests the investigator's recommended findings, "the Review Panel will hold a Hearing to determine (1) whether the concerns stated by the contesting party raise substantial doubts about the thoroughness, fairness and/or impartiality of the investigation; and, if not (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence." Id. at 17. "Typically, a Hearing will be held

3

within fifty-five (55) calendar days from the date of the Notice of Investigation, subject to extension for good cause." Id. The Title IX Procedures explain that "[t]he Hearing is an opportunity for the parties to address the Review Panel, in person[,] about issues relevant to the Standard of Review to be applied by the Review Panel." Id. At the conclusion of the hearing, the Review Panel will "determine, by majority vote, (1) whether the concern(s) stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended findings(s) by a Preponderance of the Evidence." Id. "If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation and affirms that there is sufficient evidence to support a recommended finding of responsibility by a Preponderance of the Evidence, it will then determine, by majority vote, the appropriate sanction(s) for the Prohibited Conduct." Id. at 19. Available sanctions include expulsion and suspension. Sanctions imposed by the Review Panel "are effective immediately, unless otherwise specified by the Review Panel." Id. at 20. The Review Panel's decision "is final, without further recourse or appeal by either party." Id. at 21. "Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days." Id. at 13.

The Title IX Procedures state that a report of Prohibited Conduct may be re-opened at the request of the Title IX Coordinator, if any new or additional information becomes available. Id. at 9. "Although a report may be re-opened at any time, the University will only be able to pursue disciplinary resolution and sanctions where the Respondent continues to be a University 'Student' (i.e., continues to be registered or enrolled for credit- or non-credit-bearing coursework at the University)." Id.

4

## II. Doe Investigation

On the night of April 13, 2017, the plaintiff met Jane Roe at a private, off-campus establishment in Charlottesville, Virginia. In the early morning hours of April 14, 2017, Roe accompanied Doe to his private, off-campus apartment, where they engaged in sexual activity. At the time of the events in question, Doe was a second-year student at the University. Roe was not a University student or employee, and she was not involved in any programs or activities offered by the University.

Roe subsequently reported to local law enforcement authorities that her sexual activity with Doe had been nonconsensual and that Doe had sexually assaulted her. On August 2, 2018, an officer with the Charlottesville Police Department contacted the University's Title IX Coordinator, Emily Babb, and informed her that the officer had been investigating the alleged sexual assault for more than a year and had failed to notify the University. The University had no prior knowledge of the alleged incident.

Based on the information provided by the police officer, the University initiated the Formal Resolution process set forth in its Title IX Policy and Procedures. The investigation commenced on August 8, 2018 and was conducted by John Flood, a Title IX Investigator employed by the University.

Between August 17, 2018 and October 12, 2018, Flood interviewed four individuals, including Roe. On December 18, 2018, Flood issued a Draft Investigation Report summarizing the information gathered during the course of the investigation. Doe filed a response to the Draft Investigation Report, along with his own affidavit and additional evidence. By that time, Doe was a fourth-year student at the University. He was completing his undergraduate degree requirements and was scheduled to graduate the weekend of May 18, 2019.

5

On May 1, 2019, more than four months after the Draft Investigation was issued, Babb emailed Doe and advised him that his "degree w[ould] be held pending final resolution of the current Title IX matter," but that he could still "participate fully in all [graduation] ceremonies," including "Final Exercises." Pl.'s Ex. 3, Dkt. No. 3-4. Doe was not given the opportunity to be heard before the University decided to withhold his degree. He received no further communication from the University until May 21, 2019, when Flood notified him that the Final Investigation Report would be issued the following day. By that point, Doe was no longer enrolled in any courses at the University. He had already accepted a job offer and was scheduled to begin work following graduation.

On May 22, 2019, Flood issued the Final Investigation Report. The report indicates that the alleged conduct "raised the potential Title IX Policy violations of Sexual Assault and Sexual Harassment." Final Investigation Report 46, Dkt. No. 6-1. However, because Flood confirmed that Roe "is not a University student or employee" and that she is "not otherwise seeking access to any University program or activity that was interfered with by [Doe's] alleged conduct," the investigation focused solely on whether Doe was responsible for sexual assault in violation of the Title IX Policy. Id. Flood ultimately found that there was insufficient evidence to find Doe responsible for sexual assault of Roe in the form of intentional, nonconsensual touching at an off-campus commercial establishment. However, Flood found that there was sufficient evidence to find Doe responsible for sexual assault of Roe in the form of nonconsensual vaginal penetration at Doe's off-campus apartment.

On May 28, 2019, Doe submitted a response to the Final Investigation Report. Among other arguments, Doe asserted that "the University lacks jurisdiction over this matter under its own Policy." Pl.'s Ex. 3, Dkt. No. 3-4. Doe emphasized that Roe "is not affiliated with the

6

University in any capacity," as indicated in the Final Investigation Report, and that "[n]o other provision in the Policy confers jurisdiction over this matter." Id. That same day, Babb acknowledged receipt of Doe's response and requested dates to avoid in scheduling a Review Panel Hearing.

On May 31, 2019, Doe's counsel advised the University that he planned to file suit in federal court. Doe asserted that the University did not have jurisdiction to pursue the disciplinary proceedings under the Title IX Policy and requested that the University stay the Review Panel Hearing. The University declined to do so. On June 5, 2019, the University issued a Notice of Review Panel Hearing indicating that the hearing would be conducted on Monday, July 1, 2019 at 9:00 a.m.

Doe's counsel subsequently contacted the University's Office of General Counsel regarding the jurisdictional challenge raised in Doe's response to the Final Investigation Report. Doe's counsel advised that a lawsuit seeking preliminary injunctive relief would be filed regarding the jurisdictional issues, and once again requested that the University postpone the Review Panel Hearing. The University declined to do so.

### III. Procedural History

On June 25, 2019, Doe commenced this action against the Rector and Visitors of the University and twenty University officials (collectively, "the University"), asserting procedural and substantive due process claims under 42 U.S.C. § 1983 and a claim for breach of contract. That same day, Doe filed a motion for temporary restraining order and preliminary injunction, in which he seeks to enjoin the University from proceeding with the Review Panel Hearing on July 1, 2019. Doe's motion also requests that the University be required to confer his undergraduate

7

degree. The University filed a brief in opposition to the motion on June 26, 2019. The court held a hearing on the motion via teleconference on June 27, 2019.

During the hearing, Doe narrowed his current request for preliminary injunctive relief. In particular, Doe requested that the court temporarily stay the Review Panel Hearing pending further briefing and argument on the threshold issue of whether the University has the authority to investigate and discipline the plaintiff for the alleged violation of the Title IX Policy. Doe emphasized that this issue will not be considered by the Review Panel and that proceeding with the Review Panel Hearing as scheduled would deprive him of due process.

In response, the University acknowledged that Doe may have a colorable argument as to the jurisdictional scope of the Title IX Policy. Nonetheless, the University emphasized that any decision regarding the scope of the policy would have been made by the University in August of 2018, when the investigation commenced. In response to questions from the court, the University acknowledged that there was no formal process in place for Doe to challenge whether the University has authority to discipline him for the alleged violation of the Title IX Policy. The University confirmed that Doe will not have the opportunity to raise his jurisdictional arguments at the Review Panel Hearing, that such arguments will not be considered by the Review Panel, and that there will be no further review of the University's decision to move forward with the disciplinary proceedings against Doe. The University also confirmed that the Review Panel Hearing could result in Doe's expulsion from the University. Nonetheless, the University would not agree to postponing the Review Panel Hearing and argued that the hearing should be allowed to proceed as scheduled. In opposing the requested stay, the University primarily argued that Doe had failed to demonstrate that he would suffer irreparable harm in the

8

absence of preliminary injunctive relief. The University asserted that the presence of a colorable due process claim is not sufficient to justify the entry of a preliminary injunction.

## Discussion

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power" and is "to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). In order to obtain preliminary injunctive relief, "a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" W. Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (quoting Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20 (2008)).

### I. Likelihood of Success on the Merits

At the preliminary injunction stage, the plaintiff must first show that he is likely to succeed on at least one of his claims. Stinnie v. Holcomb, 355 F. Supp. 3d 514, 527 (W.D. Va. 2018) (citing League of Women Voters of N.C. v. N.C., 769 F.3d 224 (4th Cir. 2014)). Although the relevant inquiry "requires plaintiffs seeking injunctions to make a clear showing that they are likely to succeed" on the merits, they "need not show a certainty of success." Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013). For the following reasons, the court concludes that Doe has met the requisite burden with respect to his procedural due process claim.

"State universities must afford students minimum due process protections before issuing significant disciplinary decisions." Doe v. Univ. of Cincinnati, 872 F.3d 393, 399 (6th Cir. 2017). The suspension or expulsion of a student "clearly implicates a protected property interest,

9

and allegations of sexual assault may impugn [a student's] reputation and integrity, thus implicating a protected liberty interest." Id. (citations omitted); see also Doe v. Alger, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016) (concluding at the motion to dismiss stage that a state university student accused of sexual misconduct adequately pled that he had a constitutionally protected property interest in continued enrollment); Doe v. Rector & Visitors of George Mason Univ., 149 F. Supp. 3d 602, 622 (E.D. Va. 2016) (holding that a student's expulsion from a public university, coupled with accusations of sexual misconduct, implicated a protected liberty interest).

Because Doe's allegations implicate the Due Process Clause of the Fourteenth Amendment, "the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 146 (4th Cir. 2014). The notice and hearing requirements are "distinct features of due process," and are thus governed by different standards. Id. "Notice must be 'reasonably calculated to convey information concerning a deprivation,' while the hearing requirement is flexible, taking into account a 'balancing of the private interest and the public interest, along with the risk of an erroneous deprivation of such interest through the procedures used, and the probable value if any, of additional or substitute procedural safeguards.'" Applegate, LP v. City of Frederick, 179 F. Supp. 3d 522, 529 (D. Md. 2016) (quoting Snider Int'l Corp., 739 F.3d at 146); see also Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). At a minimum, a student facing expulsion is "entitled to the opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Univ. of Cincinnati, 872 F.3d at 399 (internal quotation marks omitted); see also Mathews,

10

424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard in a meaningful manner.").

Applying these basic principles, the court concludes that Doe has demonstrated a likelihood of success on the merits of his procedural due process claim. Based on the terms of the Title IX Policy and Procedures, Doe has a colorable argument that the University does not have authority to discipline him for the alleged incident involving Roe. As indicated above, the incident occurred off campus on private property, and the investigation confirmed that Roe is not a student or employee of the University and that she is not "otherwise seeking access to any University program or activity that was interfered with by [Doe's] alleged conduct." Final Investigation Report at 46. Moreover, by the time that the Final Investigation Report was issued, Doe had completed the requirements for his undergraduate degree and was no longer enrolled in classes at the University. Notwithstanding Doe's colorable challenges to the University's jurisdiction and authority to discipline him under the Title IX Policy and Procedures, the University has not afforded him any opportunity to be heard on these threshold issues, and has confirmed that such opportunity will not be provided at the Review Panel Hearing.

Based on the current record, the court concludes that Doe is likely to show that the balance of the factors relevant to the due process inquiry weighs in his favor. First, the private interest at stake in this case is substantial. "A finding of a responsibility for a sexual offense can have a lasting impact on a student's personal life, in addition to his educational and employment opportunities, especially when the disciplinary action involves a long-term suspension [or expulsion]." Doe v. Univ. of Cincinnati, 872 F.3d at 400 (internal quotation marks omitted). "The 'private interest that will be affected by the official action' is therefore compelling." Id. (quoting Mathews, 424 U.S. at 335). Second, because the procedures afforded by the University

11

do not allow Doe to be heard on the threshold issue of whether the University has authority to discipline him for the alleged violation of Title IX, "the risk of an erroneous deprivation" of Doe's interest in his reputation, education, and employment is significant. Mathews, 424 U.S. at 335. Finally, the University has not advanced any interest that would justify the imposition of severe penalties without affording an accused individual the opportunity to challenge whether the University has the authority to discipline him in the first place.

For all of these reasons, the court concludes that Doe has demonstrated a likelihood of success on the merits of his procedural due process claim.

## II.     Irreparable Harm

The court also concludes that Doe is likely to suffer irreparable harm in the absence of preliminary injunctive relief. In opposing Doe's motion, the University argued that the presence of a colorable due process claim is not sufficient to justify the entry of a preliminary injunction. However, courts have recognized that "[w]hen constitutional rights are being threatened or impaired, irreparable injury is presumed." Doe v. Univ. of Cincinnati, 872 F.3d at 407 (emphasis added); see also Stinnie, 355 F. Supp. 3d at 532 ("[W]here Plaintiff's constitutional rights are being violated, there is a presumption of irreparable harm.") (citing Davis v. District of Columbia, 158 F.3d 1342, 1343 (4th Cir. 1998)). Moreover, if the Review Panel Hearing is not stayed, Doe would "face[] an immediate threat of expulsion, a penalty that could drastically curtail future educational and employment opportunities." Doe v. Univ. of Mich., 325 F. Supp. 3d 821, 829 (E.D. Mich. 2018); see also Ritter v. Oklahoma, No. 5:16-cv-00438, 2016 U.S. Dist. LEXIS 60193, at *8 (W.D. Okl. May 6, 2016) ("The court concludes plaintiff has also demonstrated that he will suffer irreparable harm if the injunction is denied. The loss of educational and career opportunities he will encounter if not reinstated and allowed to graduate is

12

not readily compensable in money damages."). Indeed, Doe indicates that his current job offer is "contingent on receiving [his] degree and providing a copy of [his] transcript . . . documenting that [he has] graduated." Doe Aff. ¶ 5, Dkt. No. 3-12. Accordingly, this factor also weighs in Doe's favor.

### III. Balance of the Equities and the Public Interest

Finally, the court is of the opinion that the balance of the equities favors the plaintiff in the instant case, and that an injunction protecting the plaintiff's right to due process is in the public interest. See Doe v. Univ. of Mich., 325 F. Supp. 3d at 829 (emphasizing that protecting a person's right to due process is "always in the public interest"); Ritter, 2016 U.S. Dist. LEXIS 60193, at *8 (noting that "it is always in the public's interest that a student be treated fairly before being disciplined").

The court recognizes that the University has a "strong interest in maintaining campus safety and disciplining students who have committed sexual misconduct." Doe v. Univ. of Mich., 325 F. Supp. 3d at 829. However, Doe is no longer enrolled at the University, and he is no longer on campus. Therefore, there is no basis to believe that staying the Review Panel Hearing would pose a risk of harm to students or employees of the University. There is also no basis to find that a stay would unduly prejudice the alleged victim, who has no affiliation with the University. While Roe may have a legitimate interest in the finality of the Title IX process, the timeframe for completion of the investigation has already lasted far longer than the typical 60-day period set forth in the Title IX Procedures, and the University has not offered any explanation for the delay. In any event, the court is convinced that any prejudice or inconvenience to Roe is outweighed by the potential implications for the plaintiff if the requested stay is denied.

13

## Conclusion

For the reasons stated, the plaintiff's motion for temporary retraining order and preliminary injunction will be granted in part. Specifically, the court will enjoin the defendants from proceeding with the Review Panel Hearing currently scheduled for Monday, July 1, 2019. The Review Panel Hearing will be stayed pending further order of the court. The court will permit the parties to submit supplemental briefing on the issues raised by Doe, including the issue of whether the University has the authority to investigate and discipline Doe for the alleged violation of the Title IX Policy. A hearing on the plaintiff's remaining request for preliminary injunctive relief will be tentatively scheduled for Wednesday, August 21, 2019.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 28th day of June, 2019.

/s/ Glen Conrad
Senior United States District Judge

14