Exhibit 3



# POLICY ON SEXUAL AND GENDER-BASED HARASSMENT
## AND OTHER FORMS
## OF INTERPERSONAL VIOLENCE

Exhibit 3

| | |
|---|---|
| Date: | 07/01/2015 |
| Policy ID # | HRM-041 |
| Status: | Final |
| Policy Type: | University |
| Contact Office: | Equal Opportunity and Civil Rights |
| Oversight Executive: | President of the University |
| Applies to: | Academic Division (including all off-site locations) and Medical Center |

## Table of Contents

I.    STATEMENT OF POLICY ................................................................................ 2

II.   TO WHOM THIS POLICY APPLIES ........................................................... 3

III.  APPLICABLE PROCEDURES UNDER THIS POLICY .................................. 4

      A. WHERE THE RESPONDENT IS A STUDENT ...................................... 4
      B. WHERE THE RESPONDENT IS AN EMPLOYEE .................................. 4
      C. WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE ........... 5
      D. WHERE THE RESPONDENT IS A THIRD PARTY .................................. 5

IV.  TITLE IX COORDINATOR ............................................................................ 5

V.   RESOURCES AND REPORTING OPTIONS ................................................ 7

      A. REMEDIAL AND PROTECTIVE MEASURES .......................................... 7
      B. PRIVACY AND CONFIDENTIALITY .................................................... 7
        Privacy ........................................................................................ 8
        Confidentiality ............................................................................ 8
        Employee Responsibility to Report Disclosures or Information about Prohibited Conduct ........... 8
        A "Confidential Employee" ............................................................ 8
        A "Responsible Employee" ............................................................ 9
        Responsibility to Report Prohibited Conduct where either the Complainant or the Respondent is an Employee ........... 9
        Reporting of Any Prohibited Conduct on Certain University Property ........... 9
        Reporting to Law Enforcement ...................................................... 9
        Clery Act Reporting .................................................................. 10
      C. CONFIDENTIAL RESOURCES .......................................................... 10
      D. REPORTING .................................................................................. 10
        1. Law Enforcement .................................................................. 10
        2. The University .................................................................... 11

VI.  PROHIBITED CONDUCT UNDER THIS POLICY ...................................... 11

Exhibit 3

A. SEXUAL ASSAULT ................................................................................................ 12
   1. Sexual Contact .................................................................................................. 12
   2. Sexual Intercourse............................................................................................ 12
   3. Affirmative Consent......................................................................................... 12
B. SEXUAL EXPLOITATION ................................................................................. 14
C. INTIMATE PARTNER VIOLENCE ................................................................... 15
D. STALKING ............................................................................................................ 15
E. SEXUAL OR GENDER-BASED HARASSMENT............................................. 16
   1. Sexual Harassment........................................................................................... 16
   2. Gender-Based Harassment............................................................................... 16
F. RETALIATION .................................................................................................... 17
G. COMPLICITY....................................................................................................... 17

VII. VIOLATIONS OF LAW ............................................................................................ 17

VIII. PREVENTION AND AWARENESS PROGRAMS .................................................. 17

IX. TRAINING .................................................................................................................. 18

X. RELATED POLICIES................................................................................................ 18

   A. STUDENTS............................................................................................................ 18
   B. EMPLOYEES ....................................................................................................... 18
   C. EMPLOYEES AND THIRD PARTIES .............................................................. 18

XI. OBLIGATION TO PROVIDE TRUTHFUL INFORMATION ........................... 18

XII. ANNUAL REVIEW .................................................................................................. 18

## I.    STATEMENT OF POLICY

The University of Virginia, consisting of its eleven Schools in Charlottesville, its Medical Center, and all Academic Centers, wherever located (collectively, the "University"), is an institution built upon honor, integrity, trust, and respect. Consistent with these values, the University is committed to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community. The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities. To that end, this policy prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and/or the Virginia Human Rights Act. Such behavior also requires the University to fulfill certain obligations under the Violence Against Women Reauthorization Act of 2013 ("VAWA") and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act").

The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by this policy, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under this policy (collectively,

Exhibit 3

"Prohibited Conduct"). These forms of Prohibited Conduct are unlawful, undermine the character and purpose of the University, and will not be tolerated.

The University adopts this policy with a commitment to: (1) eliminating, preventing, and addressing the effects of Prohibited Conduct; (2) fostering the University's Community of Trust, in which Prohibited Conduct is not tolerated; (3) cultivating a climate where all individuals are well-informed and supported in reporting Prohibited Conduct; (4) providing a fair and impartial process for all parties; and (5) identifying the standards by which violations of this policy will be evaluated and disciplinary action may be imposed. Employees or Students who violate this policy may face disciplinary action up to and including termination or expulsion. The University will take prompt and equitable action to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The University conducts ongoing prevention, awareness, and training programs for Employees and Students to facilitate the goals of this policy.

It is the responsibility of every member of the University community to foster an environment free of Prohibited Conduct. All members of the University community are encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. The University will support and assist community members who take such actions.

This policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this policy. Where the date of the Prohibited Conduct precedes the effective date of this policy, the definitions of misconduct in existence at the time of the alleged incident(s) will be used. The procedures under this policy, however, will be used to investigate and resolve all reports made on or after the effective date of this policy, regardless of when the incident(s) occurred.

## II.    **TO WHOM THIS POLICY APPLIES**

This policy applies to Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students"); University employees, consisting of all full-time and part-time faculty, University Staff, Medical Center employees and classified staff, wage (including temps), professional research staff, and post-doctoral fellows ("Employees"); and contractors, vendors, visitors, guests or other third parties ("Third Parties"). This policy pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:

> (1) the conduct occurs on University Grounds or other property owned or controlled by the University;

> (2) the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

> (3) the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University Grounds or other property owned or controlled by the University or in any University employment or education program or activity.

Exhibit 3

The University's Office for Equal Opportunity and Civil Rights ("EOCR") administers two separate policies that address other forms of discrimination and harassment: (1) the Preventing and Addressing Discrimination and Harassment Policy (the "PADH Policy"), and (2) the Preventing and Addressing Retaliation Policy (together, the "EOCR Policies"). This policy supersedes any conflicting provisions contained in the EOCR Policies. Where Prohibited Conduct violates this policy and also violates either or both of the EOCR Policies, the University's response will be governed by the procedures referenced in this policy. Questions about which policy applies in a specific instance should be directed to the University's Title IX Coordinator at (434) 297-7988.

## III.    APPLICABLE PROCEDURES UNDER THIS POLICY

The specific procedures for reporting, investigating, and resolving Prohibited Conduct are based upon the nature of the Respondent's relationship to the University (Student, Employee, or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for Complainants and Respondents. "Complainant" means the Student, Employee or Third Party who presents as the victim of any Prohibited Conduct under this policy, regardless of whether that person makes a report or seeks action under this policy. "Respondent" means the Student, Employee or Third Party who has been accused of violating this policy.

A Student or Employee determined by the University to have committed an act of Prohibited Conduct is subject to disciplinary action, up to and including separation from the University. Third Parties who commit Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

The procedures referenced below provide for prompt and equitable response to reports of Prohibited Conduct. The procedures designate specific timeframes for major stages of the process and provide for thorough and impartial investigations that afford all parties notice and an opportunity to present witnesses and evidence and to view the information that will be used in determining whether a policy violation has occurred. The University applies the Preponderance of the Evidence standard when determining whether this policy has been violated. "Preponderance of the Evidence" means that it is more likely than not that a policy violation occurred.

### A.  WHERE THE RESPONDENT IS A STUDENT

The procedures for responding to reports of Prohibited Conduct committed by Students are detailed in Appendix A: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Students.

### B.  WHERE THE RESPONDENT IS AN EMPLOYEE

The procedures for responding to reports of Prohibited Conduct committed by Employees are detailed in Appendix B: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Employees.

Exhibit 3

C.  WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE

- The Student-Respondent procedures (Appendix A) will apply if the Respondent is a full-time Student but not a full-time Employee;
- The Employee-Respondent procedures (Appendix B) will apply if the Respondent is a full-time Employee but not a full-time Student; or
- If there is a question as to the predominant role of the Respondent, the University's Title IX Coordinator will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the Prohibited Conduct). Further, where a Respondent is both a Student and an Employee, the Respondent may be subject to any of the sanctions applicable to Students or Employees.

D.  WHERE THE RESPONDENT IS A THIRD PARTY

The University's ability to take appropriate corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the University. The Title IX Coordinator will determine the appropriate manner of resolution consistent with the University's commitment to a prompt and equitable process consistent with federal law, federal guidance, and this policy.

## IV.  TITLE IX COORDINATOR

Under Title IX:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

The Title IX Coordinator is charged with monitoring the University's compliance with Title IX; ensuring appropriate education and training; coordinating the University's investigation, response, and resolution of all reports under this policy; and ensuring appropriate actions to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The Title IX Coordinator is available to meet with any Student, Employee, or Third Party to discuss this policy or the accompanying procedures. The University has also designated a Deputy Title IX Coordinator who may assist the Title IX Coordinator in the discharge of these responsibilities. The Title IX Coordinator and Deputy Title IX Coordinator receive appropriate training to discharge their responsibilities.

Concerns about the University's application of Title IX, VAWA, Title VII, the Clery Act, or the Virginia Human Rights Act may be addressed to the Title IX Coordinator; the United States Department of Education, Clery Act Compliance Division (at clery@ed.gov); the United States Department of Education, Office for Civil Rights (at OCR@ed.gov or (800) 421-3481); and/or the Equal Employment Opportunity Commission (at info@eeoc.gov or (800) 669-4000).

Exhibit 3

The Title IX Coordinator and Deputy Title IX Coordinator can be contacted by telephone, email, or in person during regular office hours:

**Emily Babb,** Assistant Vice President for Title IX Compliance
Title IX Coordinator
O'Neil Hall, Terrace Level, Room 037
ecb6y@virginia.edu or titleixcoordinator@virginia.edu-
(434) 297-7643

**Akia Haynes**, Deputy Title IX Coordinator
Title IX Office
O'Neil Hall, Terrace Level, Room 036
(434) 924-1696
aah6n@virginia.edu

Exhibit 3

## V.    RESOURCES AND REPORTING OPTIONS

The University offers a wide range of resources for all Students and Employees to provide support and guidance in response to any incident of Prohibited Conduct. For comprehensive information on accessing University and community resources, including emergency and ongoing assistance; health, mental health, and victim-advocacy services; options for reporting Prohibited Conduct to the University and/or law enforcement; and available support with academics, housing, and employment:

- Students should refer to the Student Resource Guide (Appendix A-1); Employees should refer to the Employee Resource Guide (Appendix B-1); and

- Third Parties should contact the Title IX Coordinator to discuss available University and/or community resources and reasonably available assistance.

### A. REMEDIAL AND PROTECTIVE MEASURES

The University offers a wide range of resources for Students and Employees, whether as Complainants or Respondents, to provide support and guidance throughout the initiation, investigation, and resolution of a report of Prohibited Conduct. The University will offer reasonable and appropriate measures to protect a Complainant and facilitate the Complainant's continued access to University employment or education programs and activities. These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (involving action against a Respondent). Remedial and protective measures, which may be temporary or permanent, may include no-contact directives, residence modifications, academic modifications and support, work schedule modifications, interim disciplinary suspension, suspension from employment, and pre-disciplinary leave (with or without pay). Remedial measures are available regardless of whether a Complainant pursues a complaint or investigation under this policy. The University will maintain the privacy of any remedial and protective measures provided under this policy to the extent practicable and will promptly address any violation of the protective measures. The Title IX Coordinator has the discretion to impose and/or modify any interim measure based on all available information, and is available to meet with a Complainant or Respondent to address any concerns about the provision of interim measures.

The University will provide reasonable remedial and protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

### B. PRIVACY AND CONFIDENTIALITY

The University is committed to protecting the privacy of all individuals involved in the investigation and resolution of a report under this policy. The University also is committed to providing assistance to help Students, Employees and Third Parties make informed choices. With respect to any report under this policy, the University will make reasonable

Exhibit 3

efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

Privacy and confidentiality have distinct meanings under this policy.

**Privacy:** Privacy means that information related to a report of Prohibited Conduct will be shared with a limited circle of University Employees who "need to know" in order to assist in the assessment, investigation, and resolution of the report. All Employees who are involved in the University's response to reports of Prohibited Conduct receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

The privacy of Student education records will be protected in accordance with the Family Educational Rights and Privacy Act ("FERPA"), as outlined in the University's FERPA policy. The privacy of an individual's medical and related records generally is protected by the Health Insurance Portability and Accountability Act ("HIPAA"), excepting health records protected by FERPA and by Virginia's Health Records Privacy Act, Va. Code § 32.1-127.1:03. Access to an Employee's personnel records may be restricted in accordance with the Virginia Freedom of Information Act, and, where applicable, Department of Human Resources Management ("DHRM") Policy 6.05 Personnel Records Disclosure and DHRM Policy 6.10 Records Management.

**Confidentiality:** Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Virginia law. The University has designated individuals who have the ability to have privileged communications as "Confidential Employees." When information is shared by an individual with a Confidential Employee or a community professional with the same legal protections, the Confidential Employee (and/or such community professional) cannot reveal the information to any third party except when an applicable law or a court order requires or permits disclosure of such information. For example, information may be disclosed when: (i) the individual gives written consent for its disclosure; (ii) there is a concern that the individual will likely cause serious physical harm to self or others; or (iii) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

**Employee Responsibility to Report Disclosures or Information about Prohibited Conduct:** An Employee's responsibility to report incidents of Prohibited Conduct is governed by the University's separate reporting policy ("Reporting Policy"). Under the Reporting Policy, every Employee is designated as either a "Confidential Employee" or a "Responsible Employee."

**A "Confidential Employee"** is (1) any Employee who is a licensed medical, clinical or mental-health professional (e.g., physicians, nurses, physicians' assistants, psychologists,

Exhibit 3

psychiatrists, professional counselors and social workers, and those performing services under their supervision), when acting in that professional role in the provision of services to a patient who is a Student ("health care providers"); and (2) any Employee providing administrative, operational and/or related support for such health care providers in their performance of such services. A Confidential Employee will not disclose information about Prohibited Conduct to the University's Title IX Coordinator without the Student's permission (subject to the exceptions set forth in the Confidentiality section of this policy).

A **"Responsible Employee"** is any University Employee who is not a Confidential Employee. A Responsible Employee is required to report to the University's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of Prohibited Conduct that involves any Student as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses. Responsible Employees include Resident Assistants, Graduate Teaching Assistants, and all other student-employees, when disclosures are made to any of them in their capacities as employees. Responsible Employees are not required to report information disclosed (1) at public awareness events (e.g., "Take Back the Night," candlelight vigils, protests, "survivor speak-outs" or other public forums in which students may disclose incidents of Prohibited Conduct; collectively, "Public Awareness Events"), or (2) during a student's participation as a subject in an Institutional Review Board-approved human subjects research protocol ("IRB Research"). The University may provide information about Students' Title IX rights and about available University and community resources and support at Public Awareness Events, however, and Institutional Review Boards may, in appropriate cases, require researchers to provide such information to all Student subjects of IRB Research.

**Responsibility to Report Prohibited Conduct Where Either the Complainant or the Respondent Is an Employee**: Under this policy, supervisors, management and human resources professionals are required to report to the University's Title IX Coordinator all relevant details about an incident of Prohibited Conduct where either the Complainant or the Respondent is an Employee. Reporting is required when such supervisors, management and human resource professionals know (by reason of a direct or indirect disclosure) or should have known of such Prohibited Conduct. For academic faculty, supervisors include department chairs, deans, and other unit administrators.

**Reporting of Any Prohibited Conduct on Certain University Property**: Consistent with the requirements of Va. Code § 23-9.2:15 (the "Virginia Reporting Statute"), Responsible Employees are also required to report to the Title IX Coordinator all information obtained, from any source, about alleged Prohibited Conduct that occurs anywhere on University Grounds (including residence halls); on any contiguous (off-Grounds) property owned or controlled by the University; on any property controlled by a Student organization (including fraternity houses) or frequently used by Students, wherever located; and public property (including streets, sidewalks and parking facilities) that is within or immediately adjacent to, and accessible from, Grounds. These reporting obligations, and the Virginia Reporting Statute, are described in the Reporting Policy.

**Reporting to Law Enforcement**: Under the Virginia Reporting Statute, the University is

Exhibit 3

required to report information about certain allegations of Prohibited Conduct to the law enforcement agencies and the prosecuting authorities who would be responsible, respectively, for investigating and prosecuting such allegations.

**Clery Act Reporting:** Pursuant to the Clery Act, the University includes statistics about certain offenses in its annual security report and provides those statistics to the United States Department of Education in a manner that does not include any personally identifying information about individuals involved in an incident. The Clery Act also requires the University to issue timely warnings to the University community about certain crimes that have been reported and may continue to pose a serious or continuing threat to Students and Employees. Consistent with the Clery Act, the University withholds the names and other personally identifying information of Complainants when issuing timely warnings to the University community.

## C. CONFIDENTIAL RESOURCES

Consistent with the definition of Confidential Employees and licensed community professionals, there are a number of resources within the University and Charlottesville communities where Students and Employees can obtain confidential, trauma-informed counseling and support. These resources include the Sexual Assault Resource Agency ((434) 977-7273), pursuant to a separate Memorandum of Understanding with the University; the Shelter for Help in Emergency ((434) 293-8509); and the Family Violence and Sexual Assault Virginia Hotline ((800) 838-8238, or text at (804) 793-9999).

Students can also obtain such counseling at Counseling and Psychological Services within Student Health and at the Women's Center ((434) 982-2903). For a complete list of University and community-based confidential resources for Students, see the Student Resource Guide (Appendix A-1).

Employees can also obtain such counseling through the Faculty and Employee Assistance Program ((434) 243-2643). For a complete list of University and community-based confidential resources for Employees, see the Employee Resource Guide (Appendix B-1).

## D. REPORTING

There are multiple channels for reporting Prohibited Conduct. A Complainant may choose to report to the University, to law enforcement, to both, or to neither. These reporting options are not exclusive. Complainants may simultaneously pursue criminal and disciplinary action. The University will support Complainants in understanding, assessing and pursuing these options.

### 1. Law Enforcement

Complainants have the right to notify or decline to notify law enforcement. In keeping with its commitment to taking all appropriate steps to eliminate, prevent, and remedy all Prohibited Conduct, the University urges Complainants to report Prohibited

Exhibit 3

Conduct *immediately* to local law enforcement by contacting:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking Emergency Protective Orders. Although a police report may be made at any time, Complainants should be aware that a one-year statute of limitations may apply to certain misdemeanors in Virginia. The University will assist Complainants in notifying law enforcement if they choose to do so.

**2. The University**

The University also urges anyone who becomes aware of an incident of Prohibited Conduct to report the incident *immediately* to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or any Deputy Title IX Coordinator by telephone, email, or in person during regular office hours at their respective locations, email addresses and/or phone numbers listed in Section IV, above; or
- Through *Just Report It*, the University's website for online reporting (which also allows for anonymous reporting).

There is no time limit for reporting Prohibited Conduct to the University under this policy; however, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer a Student or an Employee, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take reasonable steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

The University will not pursue disciplinary action against Complainants or witnesses for disclosure of illegal personal consumption of drugs or alcohol where such disclosures are made in connection with a good faith report or investigation of Prohibited Conduct. Complainants may simultaneously pursue criminal and University complaints.

## VI. PROHIBITED CONDUCT UNDER THIS POLICY

Conduct under this policy is prohibited regardless of the sex, sexual orientation and/or gender identity/expression of the Complainant or Respondent. Prohibited Conduct includes the following

Exhibit 3

specifically defined forms of behavior: Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity, and Retaliation.

A. SEXUAL ASSAULT

Sexual Assault consists of (1) Sexual Contact and/or (2) Sexual Intercourse that occurs without (3) Affirmative Consent.

**1. Sexual Contact** is:

- Any intentional sexual touching
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Contact includes (a) intentional touching of the breasts, buttocks, groin or genitals, whether clothed or unclothed, or intentionally touching another with any of these body parts; and (b) making another touch you or themselves with or on any of these body parts.

**2. Sexual Intercourse** is:

- Any penetration
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Intercourse includes (a) vaginal penetration by a penis, object, tongue, or finger; (b) anal penetration by a penis, object, tongue, or finger; and (c) any contact, no matter how slight, between the mouth of one person and the genitalia of another person.

**3. Affirmative Consent** is:

- Informed (knowing)
- Voluntary (freely given)
- Active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed-upon sexual activity

Affirmative Consent cannot be obtained by Force. Force includes (a) the use of physical violence, (b) threats, (c) intimidation, and/or (d) coercion.

a) Physical violence means that a person is exerting control over another person through the use of physical force. Examples of physical violence include

Exhibit 3

       hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

b) Threats are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples include threats to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

c) Intimidation is an implied threat that menaces or causes reasonable fear in another person. A person's size, alone, does not constitute intimidation; however, a person's size may be used in a way that constitutes intimidation (e.g., blocking access to an exit).

d) Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of Sexual Contact or Sexual Intercourse, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider: (i) the frequency of the application of the pressure, (ii) the intensity of the pressure, (iii) the degree of isolation of the person being pressured, and (iv) the duration of the pressure.

Affirmative Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. Incapacitation means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity.

A person who is incapacitated is unable, temporarily or permanently, to give Affirmative Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

The University offers the following guidance on Affirmative Consent and assessing incapacitation:

A person who wants to engage in a specific sexual activity is responsible for obtaining Affirmative Consent for that activity. Lack of protest does not constitute Affirmative Consent. Lack of resistance does not constitute Affirmative Consent. Silence and/or passivity also do not constitute Affirmative Consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Policy. It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to talk with one another before engaging in sexual activity. If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarify a mutual willingness to continue that activity.

Exhibit 3

Affirmative Consent to one form of sexual activity does not, by itself, constitute Affirmative Consent to another form of sexual activity. For example, one should not presume that Affirmative Consent to oral-genital contact constitutes Affirmative Consent to vaginal or anal penetration. Affirmative Consent to sexual activity on a prior occasion does not, by itself, constitute Affirmative Consent to future sexual activity. In cases of prior relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of Affirmative Consent.

Affirmative Consent may be withdrawn at any time. An individual who seeks to withdraw Affirmative Consent must communicate, through clear words or actions, a decision to cease the sexual activity. Once Affirmative Consent is withdrawn, the sexual activity must cease immediately.

In evaluating Affirmative Consent in cases of alleged incapacitation, the University asks two questions: (1) *Did the person initiating sexual activity know that the other party was incapacitated? and if not,* (2) *Should a sober, reasonable person in the same situation have known that the other party was incapacitated?* If the answer to either of these questions is "YES," Affirmative Consent was absent and the conduct is likely a violation of this policy.

Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated merely as a result of drinking or using drugs. The impact of alcohol and other drugs varies from person to person.

One is not expected to be a medical expert in assessing incapacitation. One must look for the common and obvious warning signs that show that a person may be incapacitated or approaching incapacitation. Although every individual may manifest signs of incapacitation differently, typical signs include slurred or incomprehensible speech, unsteady gait, combativeness, emotional volatility, vomiting, or incontinence. A person who is incapacitated may not be able to understand some or all of the following questions: "Do you know where you are?" "Do you know how you got here?" "Do you know what is happening?" "Do you know whom you are with?"

One should be cautious before engaging in Sexual Contact or Sexual Intercourse when either party has been drinking alcohol or using other drugs. The introduction of alcohol or other drugs may create ambiguity for either party as to whether Affirmative Consent has been sought or given. If one has doubt about either party's level of intoxication, the safe thing to do is to forego all sexual activity.

***Being impaired by alcohol or other drugs is no defense to any violation of this policy.***

B. SEXUAL EXPLOITATION

Sexual Exploitation is purposely or knowingly doing any of the following:

- Causing the incapacitation of another person (through alcohol, drugs, or any other

Exhibit 3

means) for the purpose of compromising that person's ability to give Affirmative Consent to sexual activity;

- Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images);
- Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy);
- Recording or photographing private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Disseminating or posting images of private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Prostituting another person; or
- Exposing another person to a sexually transmitted infection or virus without the other's knowledge.

## C. INTIMATE PARTNER VIOLENCE

Intimate Partner Violence includes any act of violence or threatened act of violence that occurs between individuals who are involved or have been involved in a sexual, dating, spousal, domestic, or other intimate relationship.[1] Intimate Partner Violence may include any form of Prohibited Conduct under this policy, including Sexual Assault, Stalking, and Physical Assault (as defined below).

Physical Assault is threatening or causing physical harm or engaging in other conduct that threatens or endangers the health or safety of any person. Physical Assault will be addressed under this policy if it involves Sexual or Gender-Based Harassment, Intimate Partner Violence, or is part of a course of conduct under the Stalking definition.

## D. STALKING[2]

Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property. Substantial emotional distress means significant mental suffering or anguish.

---

[1] Intimate Partner Violence includes "dating violence" and "domestic violence," as defined by VAWA. Consistent with VAWA, the University will evaluate the existence of an intimate relationship based upon the Complainant's statement and taking into consideration the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.
[2] This definition is consistent with VAWA.

Exhibit 3

Stalking includes "cyber-stalking," a particular form of stalking in which a person uses electronic media, such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact.

### E. SEXUAL OR GENDER-BASED HARASSMENT

**Sexual Harassment** is any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when the conditions outlined in (1) and/or (2), below, are present.

**Gender-Based Harassment** includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve conduct of a sexual nature, when the conditions outlined in (1) and/or (2), below, are present.

(1) Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "*quid pro quo*" harassment); or

(2) Such conduct creates a hostile environment. A "hostile environment" exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective. In evaluating whether a hostile environment exists, the University will consider the totality of known circumstances, including, but not limited to:

- The frequency, nature and severity of the conduct;
- Whether the conduct was physically threatening;
- The effect of the conduct on the Complainant's mental or emotional state;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct;
- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities; and
- Whether the conduct implicates concerns related to academic freedom or protected speech.

Exhibit 3

A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical. A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment.

## F. RETALIATION

Retaliation means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding under this policy. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of Prohibited Conduct. Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct.

## G. COMPLICITY

Complicity is any act taken with the purpose of aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person.

## VII. VIOLATIONS OF LAW

Behavior that violates this policy may also constitute a crime under the laws of the jurisdiction in which the incident occurred. For example, the Commonwealth of Virginia criminalizes and punishes some forms of Sexual Assault, Intimate Partner Violence, Sexual Exploitation, Stalking, and Physical Assault. The criminal statutes that may apply in cases of Physical Assault and Intimate Partner Violence are found in various sections of Chapter 4, Articles 1 (Homicide) and 4 (Assaults and Bodily Woundings), of Title 18.2 of the Code of Virginia. The criminal statutes relating to Sexual Assault are found in Sections 18.2-61 to 18.2-67.10 of the Code of Virginia. Section 18.2-60.3 of the Code of Virginia defines and identifies the penalty for criminal stalking. Finally, Sections 18.2-386.1 and 18.2-386.2 of the Code of Virginia provide for criminal penalties in some cases of Sexual Exploitation. This compilation of criminal statutes is not exhaustive, but is offered to notify the University community that, some forms of Prohibited Conduct may also constitute crimes under Virginia law, which may subject a person to criminal prosecution and punishment in addition to any sanctions under this policy.

## VIII. PREVENTION AND AWARENESS PROGRAMS

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs. Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and

Exhibit 3

current Employees receive ongoing training and related education. For a description of the University's Prohibited Conduct prevention and awareness programs, including programs on minimizing the risk of incidents of Prohibited Conduct and bystander intervention, see Appendix C.

## IX.   TRAINING

The University provides training to Students and Employees to ensure they understand this policy and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination. For a description of the University's training related to this policy, see Appendix C.

## X.   RELATED POLICIES

### A. STUDENTS

Standards of Conduct: www.student.virginia.edu/~judic/standards-of-conduct.

Rights of Students at the University of Virginia Pursuant to the Family Educational Rights and Privacy Act (FERPA): http://uvapolicy.virginia.edu/policy/STU-002.

### B. EMPLOYEES

Reporting Policy: http://uvapolicy.virginia.edu/policy/HRM-040.

### C. EMPLOYEES AND THIRD PARTIES

Preventing and Addressing Discrimination and Harassment: http://uvapolicy.virginia.edu/policy/HRM-009.

Preventing and Addressing Retaliation: http://uvapolicy.virginia.edu/policy/HRM-010.

## XI.   OBLIGATION TO PROVIDE TRUTHFUL INFORMATION

All University community members are expected to provide truthful information in any report or proceeding under this policy. Submitting or providing false or misleading information in bad faith or with a view to personal gain or intentional harm to another in connection with an incident of Prohibited Conduct is prohibited and subject to disciplinary sanctions under the University's Honor Code and disciplinary action under the appropriate Employee disciplinary policy. This provision does not apply to reports made or information provided in good faith, even if the facts alleged in the report are not later substantiated.

## XII.   ANNUAL REVIEW

Exhibit 3

This policy is maintained by EOCR. The University will review and update this policy, as appropriate, by October 31 of each year. The University will evaluate, among other things, any changes in legal requirements, existing University resources, and the resolution of cases from the preceding year (including, but not limited to, timeframes for completion and sanctions and remedies imposed). The Title IX Coordinator shall certify to the State Council of Higher Education for Virginia that this policy has been reviewed and updated, as appropriate, in accordance with Virginia law.