Exhibit 4

APPENDIX A

UNIVERSITY OF VIRGINIA

# PROCEDURES FOR REPORTS AGAINST STUDENTS

INVESTIGATING AND RESOLVING REPORTS OF SEXUAL AND GENDER-BASED
HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE
COMMITTED BY STUDENTS UNDER THE POLICY

## Table of Contents

I.   INTRODUCTION ........................................................................................................ 2

II.   REPORTING ............................................................................................................... 2

III.  EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS ....................................... 3

IV.  INITIAL ASSESSMENT ............................................................................................. 5

V.   THREAT ASSESSMENT ............................................................................................. 6

    A. EVALUATION PANEL ........................................................................................... 6

    B. HEALTH AND SAFETY THREAT ASSESSMENT ...................................................... 6

       1. Risk Factors ..................................................................................................... 6

       2. Disclosure(s) of Information to Law Enforcement ......................................... 7

    C. UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT
       ASSESSMENT ...................................................................................................... 8

       1. Where the Complainant Wishes to Pursue Formal Resolution ...................... 8

       2. Where the Complainant Requests Anonymity, that an Investigation not be Pursued,
         and/or that No Disciplinary Action Be Taken ............................................... 8

    D. NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS 10

    E. NOTICE OF POTENTIAL UNIVERSITY ACTIONS AGAINST STUDENT GROUPS
       OR ORGANIZATIONS ......................................................................................... 10

VI.  UNIVERSITY RESOLUTION ..................................................................................... 11

    A. FORMAL RESOLUTION ...................................................................................... 11

       1. Investigation .................................................................................................. 11

       2. Acceptance of Responsibility ....................................................................... 16

Case 3:19-cv-00038-GEC   Document 45-4   Filed 07/19/19   Page 1 of 23   Pageid#: 358

Exhibit 4

3. Review Panel Hearing.................................................................................................. 16

B. ALTERNATIVE RESOLUTION ................................................................................ 21

C. ACADEMIC TRANSCRIPT NOTATIONS ................................................................ 23

D. RECORDS RETENTION .............................................................................................. 23

## I.   **INTRODUCTION**

The University of Virginia (the "University") is committed to providing a safe and non-discriminatory environment for all members of the University community. The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity and Retaliation (together, "Prohibited Conduct"). These forms of Prohibited Conduct are defined in the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (the "Policy"). This Appendix identifies the procedures (the "Procedures") the University follows when it receives a report alleging Prohibited Conduct by a Student. The University uses these Procedures to investigate and adjudicate any such allegations and to impose disciplinary sanctions against Students found responsible for violating the Policy.[1]

## II.   **REPORTING**

The University encourages anyone[2] who experiences or becomes aware of an incident of Prohibited Conduct involving a Student to *immediately* report the incident to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or Deputy Title IX Coordinator:

  **Emily Babb,** Assistant Vice President for Title IX Compliance/Title IX Coordinator
  O'Neil Hall, Terrace Level, Room 037
  ecb6y@virginia.edu or titleixcoordinator@virginia.edu
  (434) 297-7643

---

[1] These Procedures should be read in conjunction with the Policy. Capitalized terms used and not otherwise defined in these Procedures are defined in the Policy. For purposes of these Procedures, the "Title IX Coordinator" means the Title IX Coordinator, Deputy Title IX Coordinator, and/or any of their respective trained designees.

[2] Pursuant to University policy, certain University employees, called "Responsible Employees," are *required* to report to the Title IX Coordinator all information disclosed to them about an incident of Prohibited Conduct. See "Reporting by University Employees of Disclosures Relating to Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence."

Exhibit 4

**Akia Haynes**, Deputy Title IX Coordinator/Investigator
Title IX Office
O'Neil Hall, Terrace Level Room 036
(434) 924-1696
aah6n@virginia.edu

- Through ***Just Report It***, the University's website for online reporting (which allows for anonymous reporting).

A Complainant may choose to make a report to the University to pursue resolution under these Procedures and may also choose to make a report to law enforcement. A Complainant may pursue either or both of these options at the same time. As set forth in the Policy, a Complainant who wishes to pursue criminal action in addition to, or instead of, making a report under these Procedures should contact law enforcement directly:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

The University also offers access to confidential resources for individuals who are unsure about whether to report Prohibited Conduct or are seeking counseling or other emotional support in addition to (or without) making a report to the University. The following guides identify confidential resources, both at the University and in the Charlottesville community, and further explain options for reporting Prohibited Conduct to the University and to law enforcement:

- Students may refer to the Student Resource Guide (Appendix A-1);
- Employees may refer to the Employee Resource Guide (Appendix B-1);
- Third Parties may contact the University's Title IX Coordinator.

Complainants are entitled to receive information, assistance and a broad range of support and remedial measures regardless of whether they choose to pursue criminal and/or University disciplinary resolution of Prohibited Conduct. The Student and Employee Resource Guides outline these resources and remedial measures and describe how to request them.


III.     **EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS**

Pursuant to these Procedures, Complainants and Respondents can expect:

    A. Prompt and equitable resolution of allegations of Prohibited Conduct;

Exhibit 4

B. Privacy in accordance with the Policy and any legal requirements;

C. Reasonably available interim remedial measures, as described in these Procedures and in the applicable Resource Guide;

D. Freedom from Retaliation for making a good faith report of Prohibited Conduct or participating in any proceeding under the Policy;

E. The responsibility to refrain from Retaliation directed against any person for making a good faith report of Prohibited Conduct or participating in any proceeding under the Policy;

F. The responsibility to provide truthful information in connection with any report, investigation, or resolution of Prohibited Conduct under the Policy or these Procedures;

G. The opportunity to articulate concerns or issues about proceedings under the Policy and these Procedures;

H. Timely notice of any meeting or proceeding at which the party's presence is contemplated by these Procedures;

I. The opportunity to choose an advisor, including the right to have that advisor attend any meeting or proceeding at which the party's presence is contemplated by these Procedures;

J. Written notice of an investigation, including notice of potential Policy violations and the nature of the alleged Prohibited Conduct;

K. The opportunity to challenge the Investigator or any member of the Review Panel for bias or conflict of interest;

L. The opportunity to offer information, present evidence, and identify witnesses during an investigation;

M. The opportunity to be heard, orally and/or in writing, as to the determination of a Policy violation and the imposition of any sanction(s);

N. Timely and equal access to any information that will be used during Alternative or Formal Resolution proceedings and related meetings;

O. Reasonable time to prepare any response contemplated by these Procedures;

P. Written notice of any extension of timeframes for good cause; and

Q. Written notice of the outcome of any Formal Resolution proceedings, including the determination of a Policy violation, imposition of any sanction(s), and the rationale for each.

Exhibit 4

## IV.  INITIAL ASSESSMENT

Upon receipt of a report of Prohibited Conduct committed by a Student, the Title IX Coordinator will make an initial assessment of the reported information and respond to any immediate health or safety concerns raised by the report.  In this initial assessment, the Title IX Coordinator will:

A.  Assess the Complainant's safety and well-being and offer the University's immediate support and assistance;

B.  Inform the Complainant of the right to seek medical treatment, and explain the importance of obtaining and preserving forensic and other evidence;

C.  Inform the Complainant of the right to contact law enforcement, decline to contact law enforcement, and/or seek a protective order;

D.  Inform the Complainant about University and community resources, the right to seek appropriate and available remedial and protective measures, and how to request those resources and measures;

E.  Inform the Complainant of the right to seek Alternative Resolution (where available) or Formal Resolution under these Procedures; ascertain the Complainant's expressed preference (if the Complainant has, at the time of the initial assessment, expressed a preference) for pursuing Alternative Resolution, Formal Resolution, or neither; and discuss with the Complainant any concerns or barriers to participating in any University investigation and resolution under these Procedures;

F.  Explain the University's prohibition against Retaliation and that the University will take prompt action in response to any act of Retaliation;

G.  Assess the nature and circumstances of the report, including whether it provides the names and/or any other information that personally identifies the Complainant, the Respondent, any witness, and/or any other third party with knowledge of the reported incident;

H.  Ascertain the ages of the Complainant and the Respondent, if known, and, if either of the parties is a minor (under 18), contact the appropriate child protective service agency; and

I.  Communicate with appropriate University officials to determine whether the report triggers any Clery Act obligations, including entry of the report in the daily crime log and/or issuance of a timely warning, and take steps to meet those obligations.

The Title IX Coordinator will ensure that the Complainant receives a written explanation of all available resources and options and is offered the opportunity to meet to discuss those resources and options.  When a decision is reached to initiate an investigation or to take any other action under these Procedures that impacts a Respondent (including the imposition of interim protective

Exhibit 4

measures), the Title IX Coordinator will ensure that the Respondent is notified, receives a written explanation of all available resources and options, and is offered the opportunity to meet to discuss those resources and options.

## V.   THREAT ASSESSMENT

Following the initial assessment, the Title IX Coordinator will promptly forward to an Evaluation Panel all information then known about the reported incident of Prohibited Conduct.  Such information includes, if known, the names and/or any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident.

### A. EVALUATION PANEL

An Evaluation Panel will evaluate every report of Prohibited Conduct.  The Evaluation Panel will convene (in person, by telephone, or by videoconference) within 72 hours after receiving information from the Title IX Coordinator, as described above, and will convene again, as necessary, to review new information as it becomes available. The Evaluation Panel may include any and all members of the University's Threat Assessment Team and shall include, at a minimum: (1) the Title IX Coordinator, (2) a representative of the University Police Department (the "UPD Representative"), and (3) a representative from the Division of Student Affairs.   In addition, the Evaluation Panel may include a representative from Human Resources or the Office of the Provost, depending on the circumstances of the reported incident and the status of the Complainant and the Respondent.

The Evaluation Panel operates pursuant to Va. Code §23-9.2:15 (the "Virginia Reporting Statute") and has access, under Virginia law, to certain otherwise confidential information, including law enforcement records, criminal history record information, as provided in Va. Code §19.2-389 and §19.2-389.1; health records, as provided in Va. Code §32.1-127.1:03; University disciplinary, academic and/or personnel records; and any other information or evidence known to the University or to law enforcement. The Evaluation Panel may seek additional information about the reported incident through any other legally permissible means.

### B. HEALTH AND SAFETY THREAT ASSESSMENT

1. **Risk Factors**. The Evaluation Panel will determine whether the reported information and any other available information provides a rational basis for concluding that there is a threat to the health or safety of the Complainant or to any other member of the University community.  The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances, and will be guided by a consideration of the following factors (the "Risk Factors"):

   • Whether the Respondent has prior arrests, is the subject of prior reports and/or

Exhibit 4

complaints related to any form of Prohibited Conduct, or has any history of violent behavior;
- Whether the Respondent has a history of failing to comply with any University No-Contact Directive, other University protective measures, and/or any judicial protective order;
- Whether the Respondent has threatened to commit violence or any form of Prohibited Conduct;
- Whether the Prohibited Conduct involved multiple Respondents;
- Whether the Prohibited Conduct involved physical violence. "Physical violence" means exerting control over another person through the use of physical force. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking and brandishing or using any weapon;
- Whether the report reveals a pattern of Prohibited Conduct (e.g., by the Respondent, by a particular group or organization, around a particular recurring event or activity, or at a particular location);
- Whether the Prohibited Conduct was facilitated through the use of "date-rape" or similar drugs or intoxicants;
- Whether the Prohibited Conduct occurred while the Complainant was unconscious, physically helpless or unaware that the Prohibited Conduct was occurring;
- Whether the Complainant is (or was at the time of the Prohibited Conduct) a minor (under 18); and/or
- Whether any other aggravating circumstances or signs of predatory behavior are present.

2. **Disclosure(s) of Information to Law Enforcement**. Pursuant to the Virginia Reporting Statute, the Evaluation Panel is *required* to disclose information about alleged Prohibited Conduct to law enforcement in the following circumstances:

a) If the Evaluation Panel (or, in the absence of consensus within the Evaluation Panel, the UPD Representative) concludes that there is a significant and articulable threat to the health or safety of the Complainant or to any other member of the University community and that disclosure of available information (including the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident) is necessary to protect the health or safety of the Complainant or other individuals, the UPD Representative will immediately disclose the information to the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct.[3] The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances and consideration of the list of Risk Factors, as described in Section V.B.1 of these Procedures. The Title IX Coordinator will promptly notify the Complainant whenever such disclosure has been made.

---

[3] Where the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct is located outside of the United States, this disclosure is not required by the Virginia Reporting Statute.

Exhibit 4

b) If the alleged act of Prohibited Conduct constitutes a felony violation of the Code of Virginia, the UPD Representative will so inform the other members of the Evaluation Panel and will, within 24 hours, (i) consult with the appropriate Commonwealth's Attorney or other prosecutor who would be responsible for prosecuting the alleged act of Prohibited Conduct (the "Prosecuting Authority"), and (ii) disclose to the Prosecuting Authority the information then known to the Evaluation Panel. This disclosure is required by the Virginia Reporting Statute where the alleged act of Prohibited Conduct would violate Article 7 (§18.2-61 et seq.) of Chapter 4 of title 18.2 of the Code of Virginia. Such disclosure will exclude the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident (the "Identifying Information"), unless the Identifying Information was disclosed to law enforcement under the health and safety exception described in paragraph (a), above, in which case the Identifying Information also will be disclosed to the Prosecuting Authority. If the UPD Representative declines to so consult with the Prosecuting Authority, any member of the Evaluation Panel who individually concludes that the alleged act of Prohibited Conduct would constitute such a felony violation may consult with the Prosecuting Authority and make the required disclosure(s) in the manner and within the timeframe set forth above.

The Evaluation Panel will reconvene as necessary to continue to evaluate whether any new or additional information received triggers any further obligation(s) under the Clery Act or with respect to any child protective service agency, and will direct the Title IX Coordinator to take such further actions, as necessary.

C. UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT ASSESSMENT

Upon completion of the health and safety threat assessment, the Evaluation Panel will determine the course of action under these Procedures, which may include, without limitation, Formal Resolution and/or Alternative Resolution (if available). Where the Complainant requests that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no further action be taken, the Evaluation Panel will seek to honor the preferences of the Complainant wherever possible. In all cases, the initial report, the health and safety threat assessment, and the determinations of the Evaluation Panel will be documented and retained by the University in accordance with applicable law.

1. **Where the Complainant Wishes to Pursue Formal Resolution.** In *every* case in which the Complainant reports Prohibited Conduct and requests an investigation and disciplinary action, the Title IX Coordinator will promptly initiate Formal Resolution under these Procedures.

2. **Where the Complainant Requests Anonymity, that an Investigation not be Pursued, and/or that No Disciplinary Action Be Taken.** A Complainant may

Exhibit 4

request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

The Evaluation Panel will consider the following factors in evaluating such request(s): (1) the totality of the known circumstances; (2) the presence of any Risk Factors, as described in Section V.B.1 of these Procedures; (3) the potential impact of such action(s) on the Complainant; (4) any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct; (5) the existence of any independent information or evidence regarding the Prohibited Conduct; and (6) any other available and relevant information. The University will seek to honor the Complainant's request(s) if it is possible to do so while also protecting the health and safety of the Complainant and the University community.

a) Determination that a Complainant's Request(s) *Can* be Honored. Where the Evaluation Panel determines that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) *can* be honored, the University may nevertheless take other appropriate steps designed to eliminate the reported conduct, prevent its recurrence, and remedy its effects on the Complainant and the University community. Those steps may include offering appropriate remedial measures to the Complainant, providing targeted training or prevention programs, and/or providing or imposing other remedies tailored to the circumstances as a form of Alternative Resolution.

At any time, the Complainant may choose to pursue Alternative Resolution (if available) or Formal Resolution under these Procedures. The Title IX Coordinator also may request that a report be re-opened and pursued under these Procedures if any new or additional information becomes available.[4]

b) Determination that a Complainant's Request(s) *Cannot* be Honored. Where the Evaluation Panel has determined that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) *cannot* be honored (i.e., because honoring the Complainant's request(s) would impede the University's ability to ensure the health and safety of the Complainant and other members of the University community), the Evaluation Panel will direct the Title IX Coordinator to take any appropriate University actions, which may include, without limitation, (i) causing the Dean of Students to impose a No Contact Directive or an Interim Disciplinary Suspension on the Respondent; (ii) causing the University Registrar to place a "hold" on the Respondent's University transcript; (iii) initiating an investigation and Formal Resolution under these

---

[4] Although a report may be re-opened at any time, the University will only be able to pursue disciplinary resolution and sanctions where the Respondent continues to be a University "Student" (i.e., continues to be registered or enrolled for credit- or non-credit-bearing coursework at the University).

Exhibit 4

Procedures; and/or (iv) arranging, imposing, or extending any other appropriate remedial and/or protective measures.

Where the Evaluation Panel has determined that the University must proceed with an investigation despite a Complainant's request to the contrary, the Title IX Coordinator will make reasonable efforts to protect the privacy of the Complainant. However, actions that may be required as part of the University's investigation will involve speaking with the Respondent and others who may have relevant information, in which case the Complainant's identity may have to be disclosed. In such cases, the Title IX Coordinator will notify the Complainant that the University intends to proceed with an investigation, but that the Complainant is not required to participate in the investigation or in any other actions undertaken by the University.

Where a Complainant declines to participate in an investigation, the University's ability to meaningfully investigate and respond to a report may be limited. In such cases, the Title IX Coordinator may pursue the report if it is possible to do so without the Complainant's participation in the investigation or resolution (e.g., where there is other relevant evidence of the Prohibited Conduct, such as recordings from security cameras, corroborating reports from other witnesses, physical evidence, or any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct). In the absence of such other evidence, however, the University will only be able to respond to the report in limited and general ways (i.e., through the provision of remedial measures, targeted training or prevention programs, or other remedies tailored to the circumstances).

## D. NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS

The Title IX Coordinator will promptly inform the Complainant of any action(s) undertaken by the University to respond to a health or safety threat to the Complainant or the University community, including the decision to proceed with an investigation. The Title IX Coordinator also will promptly inform the Respondent of any action(s) (including any interim protective measures) that will directly impact the Respondent, and provide an opportunity for the Respondent to respond to such action(s). The Title IX Coordinator retains the discretion to impose and/or modify any interim protective measures based on all available information. Interim protective measures will remain in effect until the resolution of the report by the Review Panel, unless new circumstances arise which warrant reconsideration of the protective measures prior to the hearing and determination by the Review Panel. A Complainant or Respondent may challenge interim protective measures or other actions, or failure to impose interim protective measures or take other actions, by contacting the Title IX Coordinator to address any concerns.

## E. NOTICE OF POTENTIAL UNIVERSITY ACTIONS AGAINST STUDENT GROUPS OR ORGANIZATIONS.

Exhibit 4

If, upon completion of the health and safety threat assessment, the Evaluation Panel determines that a report of Prohibited Conduct reveals involvement of, or a pattern of behavior by, a particular Student group or organization (e.g., agency group, special status organization, fraternity, sorority, contracted independent organization, club sport, and/or athletic team), the Evaluation Panel will direct the Title IX Coordinator to impose any appropriate remedial or protective measures contemplated by these Procedures (e.g., training and/or prevention programs targeted to Student members of the group or organization). The Title IX Coordinator will also consult with relevant University officials regarding any appropriate University action directed at the Student group or organization, including, but not limited to, modification, suspension or termination of the Student group's or organization's agreement or status with the University.

## VI.   UNIVERSITY RESOLUTION

These Procedures offer two forms of resolution of reports of Prohibited Conduct: (1) Formal Resolution, which involves an investigation, and review and sanction (if applicable) by a Review Panel (as described in Section VI.A.3 of these Procedures), and (2) Alternative Resolution (as described in Section VI.B of these Procedures), which includes a variety of informal options for resolving reports.

### A.  FORMAL RESOLUTION

Formal Resolution is commenced when:

- A Complainant reports that a Student has engaged in one or more instances of Prohibited Conduct and requests, at any time, an investigation and disciplinary action; or
- Alternative Resolution does not resolve a reported incident of Prohibited Conduct and, in the Title IX Coordinator's discretion, an investigation of the report of Prohibited Conduct is required; or
- At the conclusion of the threat assessment process described in Section V.B of these Procedures, the Evaluation Panel has determined, based upon a review of the totality of the circumstances and guided by a consideration of the Risk Factors, that investigation of the reported conduct is necessary to ensure the health and safety of the Complainant and/or other members of the University community, notwithstanding the Complainant's request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

1. **Investigation**. Whenever Formal Resolution is commenced, the Title IX Coordinator will designate one or more Investigators from the University's Office for Equal Opportunity and Civil Rights and/or an experienced external investigator to conduct a prompt, thorough, fair, and impartial investigation. All Investigators will receive annual training on issues related to sexual and gender-based harassment, sexual assault, dating violence, domestic violence, and stalking, and

Exhibit 4

on how to conduct an investigation that is fair and impartial, provides parties with notice and a meaningful opportunity to be heard, and protects the safety of Complainants and the University community while promoting accountability.

a) Notice of Investigation. The Title IX Coordinator will notify the Complainant and the Respondent, in writing, of the commencement of an investigation. Such notice will (1) identify the Complainant and the Respondent; (2) specify the date, time (if known), location, and nature of the alleged Prohibited Conduct; (3) identify potential Policy violation(s); (4) identify the Investigator; (5) include information about the parties' respective expectations under the Policy and these Procedures; (6) explain the prohibition against Retaliation; (7) instruct the parties to preserve any potentially relevant evidence in any format; (8) inform the parties how to challenge participation by the Investigator on the basis of bias or a conflict of interest; and (9) provide a copy of the Policy and these Procedures.

b) Other Forms of Discriminatory and/or Harassing Conduct. If a report of Prohibited Conduct also implicates other forms of discriminatory and/or harassing conduct prohibited by the University's Preventing and Addressing Discrimination and Harassment (PADH) policy and/or any other violation(s) of the University's Standards of Conduct, the Title IX Coordinator will evaluate all reported allegations to determine whether the alleged Prohibited Conduct and the alleged PADH violation(s) and/or alleged Standard of Conduct violation(s) may be appropriately investigated together without unduly delaying the resolution of the report of Prohibited Conduct. Where the Title IX Coordinator determines that a single investigation is appropriate, the determination of responsibility for the violation of University policy will be evaluated under the applicable policy (i.e., the Policy, the PADH policy, and/or the Standards of Conduct), but the investigation and resolution will be conducted in accordance with these Procedures.

c) Presumption of Non-Responsibility and Participation by the Parties. The investigation is a neutral fact-gathering process. The Respondent is presumed to be not responsible; this presumption may be overcome only where the Investigator and/or Review Panel conclude that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding that the Respondent violated the Policy. Neither party is required to participate in the investigation or any form of resolution under these Procedures, and the Investigator will not draw any adverse inference from a decision by either of the parties not to participate.

d) Timeframe for Completion of Investigation; Extension for Good Cause. Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days. This timeframe may be extended for good cause, which may exist if additional time is necessary to ensure the integrity and completeness of the investigation, to comply with a request by external law enforcement for temporary delay to gather evidence for a criminal investigation, to

Exhibit 4

accommodate the availability of witnesses, to account for University breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or for other legitimate reasons. The Investigator will notify the parties in writing of any extension of this timeframe and the reason for such extension.

e) Overview of Investigation. During the investigation, the parties will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit questions that they believe should be directed by the Investigator to each other or to any witness. The Investigator will notify and seek to meet separately with the Complainant, the Respondent, and third-party witnesses, and will gather other relevant and available evidence and information, including, without limitation, electronic or other records of communications between the parties or witnesses (via voice-mail, text message, email and social media sites), photographs (including those stored on computers and smartphones), and medical records (subject to the consent of the applicable party).

f) Advisors. Throughout the investigation and resolution process, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness involved in the investigation. The parties may be accompanied by their respective advisors at any meeting or proceeding related to the investigation and resolution of a report under these Procedures. While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

g) Prior or Subsequent Conduct. Prior or subsequent conduct of the Respondent may be considered in determining pattern, knowledge, intent, motive, or absence of mistake. For example, evidence of a pattern of Prohibited Conduct by the Respondent, either before or after the incident in question, regardless of whether there has been a prior finding of a Policy violation, may be deemed relevant to the determination of responsibility for the Prohibited Conduct under investigation. The determination of relevance of pattern evidence will be based on an assessment of whether the previous or subsequent conduct was substantially similar to the conduct under investigation or indicates a pattern of similar Prohibited Conduct. Such prior or subsequent conduct may also constitute a violation of the PADH policy and/or the University's Standards of Conduct, in which case it may subject the Respondent to additional sanctions. The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior or subsequent conduct is deemed relevant.

h) Prior Sexual History. The sexual history of a Complainant or Respondent will never be used to prove character or reputation. Moreover, evidence related to the prior sexual history of either of the parties is generally not relevant to the

Exhibit 4

determination of a Policy violation and will be considered only in limited circumstances. For example, if the existence of Affirmative Consent is at issue, the sexual history between the parties may be relevant to help understand the manner and nature of communications between the parties and the context of the relationship, which may have bearing on whether Affirmative Consent was sought and given during the incident in question. However, even in the context of a relationship, Affirmative Consent to one sexual act does not, by itself, constitute Affirmative Consent to another sexual act, and Affirmative Consent on one occasion does not, by itself, constitute Affirmative Consent on a subsequent occasion. In addition, prior sexual history may be relevant to explain the presence of a physical injury or to help resolve another question raised by the report. The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior sexual history is deemed relevant.

i)  Relevance. The Investigator has the discretion to determine the relevance of any proffered evidence and to include or exclude certain types of evidence. In general, the Investigator will not consider statements of personal opinion, rather than direct observations or reasonable inferences from the facts, or statements as to any party's general reputation for any character trait.

j)  Site Visit(s). The Investigator may visit relevant sites or locations and record observations through written, photographic, or other means.

k)  Expert Consultation(s). The Investigator may consult medical, forensic, technological or other experts when expertise on a topic is needed in order to achieve a fuller understanding of the issues under investigation.

l)  Coordination with Law Enforcement. The Investigator will contact any law enforcement agency that is conducting its own investigation to inform that agency that a University investigation is also in progress; to ascertain the status of the criminal investigation; and to determine the extent to which any evidence collected by law enforcement may be available to the University in its investigation. At the request of law enforcement, the Investigator may delay the University investigation temporarily while an external law enforcement agency is gathering evidence. The Investigator will promptly resume the University investigation when notified that law enforcement has completed the evidence-gathering stage of its criminal investigation.

m)  Draft Investigation Report. At the conclusion of the investigation, the Investigator will prepare a Draft Investigation Report summarizing the information gathered and outlining the contested and uncontested information. The Draft Investigation Report will not include any findings. The Complainant and the Respondent will have an opportunity to review the Draft Investigation Report; meet with the Investigator; submit additional comments and information to the Investigator; identify any additional witnesses or evidence for the Investigator to pursue; and submit any further questions that they believe

Exhibit 4

should be directed by the Investigator to the other party or to any witness. The Investigator will designate a reasonable time for this review and response by the parties, not to exceed five (5) calendar days. In the absence of good cause, information discoverable through the exercise of due diligence that is not provided to the Investigator during the designated review and response period will not be considered in the determination of responsibility for a violation of the Policy, and will not be considered by the Review Panel.

n) <u>Final Investigation Report</u>. Unless there are significant additional investigative steps requested by the parties or identified by the Investigator, within five (5) calendar days after receipt and consideration of any additional comments, questions and/or information submitted by the parties during the designated review and response period, the Investigator will prepare a Final Investigation Report, which will include a recommendation as to whether there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility for a violation of the Policy (and, where applicable, the PADH policy and/or the University's Standards of Conduct). In reaching this recommended finding, the Investigator will consult with the Office of University Counsel. The Investigator will deliver the Final Investigation Report to the Title IX Coordinator. The Title IX Coordinator will notify both parties, simultaneously, that the Final Investigation Report is complete and available for review.

o) <u>Recommended Finding(s) of Responsibility</u>. When the Investigator determines that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Respondent may accept or contest such recommended finding(s) by so notifying the Title IX Coordinator, in writing. If the Respondent accepts the recommended finding(s) of responsibility, the Title IX Coordinator will refer the case for a Hearing before the Review Panel solely on the issue of sanction, as outlined in Section VI.A.3(g) of these Procedures. If the Respondent contests one or more of the recommended finding(s), the Respondent may submit to the Title IX Coordinator a written statement explaining why the Respondent contests such finding(s). The Title IX Coordinator will ensure that the Complainant has an opportunity to review and respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.A.3 of these Procedures.

p) <u>Recommended Finding(s) of No Responsibility</u>. When the Investigator determines that there is insufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Complainant may accept or contest the recommended finding(s) by so notifying the Title IX Coordinator, in writing. If the Complainant accepts the recommended finding(s) of no responsibility, the investigation will be closed and documented in accordance with applicable University policies. If the Complainant contests one or more of the recommended finding(s), the

Exhibit 4

Complainant may submit to the Title IX Coordinator a written statement explaining why the Complainant contests such finding(s). The Title IX Coordinator will ensure that the Respondent has an opportunity to review and respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.A.3 of these Procedures.

q) <u>Impact and Mitigation Statements</u>. Where there is a finding of responsibility on one or more of the allegations, both parties may submit a statement to the Title IX Coordinator for consideration by the Review Panel in determining an appropriate sanction. The Complainant may submit a written statement describing the impact of the Prohibited Conduct on the Complainant and expressing a preference about the sanction(s) to be imposed. The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanctions(s) imposed. The Title IX Coordinator will ensure that each of the parties has an opportunity to review any statement submitted by the other party. The Title IX Coordinator will provide any statement(s) with the Final Investigation Report and the parties' other written submissions to the Review Panel.

r) <u>Timing of Investigation</u>. The investigation typically will be completed within forty-five (45) calendar days. This period may be extended to account for a previous attempt, if any, at Alternative Resolution, or for other good cause, as described Section VI.A.1(d) of these Procedures. Any extension, other than for Alternative Resolution, and the reason for the extension, will be shared with the parties in writing.

2. **Acceptance of Responsibility**. The Respondent may, at any time, elect to resolve the Formal Resolution process by accepting responsibility for the Prohibited Conduct, in which case the Title IX Coordinator will refer the matter to the Review Panel to determine the appropriate sanction(s).

3. **Review Panel Hearing.** The Title IX Coordinator will appoint a standing pool of trained members of the University community and, at the discretion of the Title IX Coordinator, external professionals with experience adjudicating cases of Prohibited Conduct. The Title IX Coordinator will select (a) three members from this pool to serve on the Review Panel, and (b) an additional member from this pool to serve as the non-voting Hearing Chair. The Review Panel will review the Investigator's recommended finding(s) and, if applicable, determine any appropriate sanction(s) under these Procedures. All persons serving on any Review Panel (or as the Hearing Chair) must be impartial and free from actual bias or conflict of interest.

a) <u>Standard of Review</u>. If either of the parties contests the Investigator's recommended finding(s) of responsibility (or no responsibility) for an alleged

Exhibit 4

violation of the Policy, the Review Panel will hold a Hearing to determine (1) whether the concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

b) <u>Notice and Timing of Hearing</u>. Typically, a Hearing will be held within fifty-five (55) calendar days from the date of the Notice of Investigation, subject to extension for good cause, as described in Section VI.A.1(d) of these Procedures. The Hearing Chair will notify the parties in writing of the date, time, and location of the Hearing; the names of the Review Panel members and the Hearing Chair; and how to challenge participation by any member of the Review Panel or the Hearing Chair for bias or conflict of interest. The Hearing will usually be scheduled within five (5) calendar days from the date of the Notice of Hearing, subject to extension for good cause at the discretion of the Title IX Coordinator. Good cause for extension may include the unavailability of the parties, the timing of semester breaks or University holidays, or other extenuating circumstances. Any extension, including the reason for the extension, will be shared with the parties in writing.

c) <u>Postponement of Hearing</u>. Permission to postpone a Hearing may be granted provided that the request to do so is based on a compelling emergency and communicated to the Hearing Chair prior to the time of the Hearing.

d) <u>Hearing Format</u>. The Hearing is an opportunity for the parties to address the Review Panel, in person about issues relevant to the Standard of Review to be applied by the Review Panel. The parties may address any information in the Final Investigation Report, supplemental statements submitted in response to the Final Investigation Report, and any impact and mitigation statements. Each party has the opportunity to be heard, to identify witnesses for the Review Panel's consideration, and to respond to any questions of the Review Panel. The parties may not directly question each another or any witness, although they may proffer questions for the Review Panel, which may choose, in its discretion, to pose appropriate and relevant questions to the Investigator, the parties and/or any witnesses. A typical hearing may include brief opening remarks by the Complainant and/or Respondent, with follow-up questions posed by the Review Panel; information presented by the Investigator or witnesses deemed relevant by the Review Panel, with follow-up questions by the Review Panel of the Investigator or witnesses; and brief concluding remarks by the Complainant and/or Respondent. The Chair of the Review Panel has the discretion to determine the specific Hearing format.

e) <u>Participation in Hearing</u>.

    i. <u>Parties</u>. Both the Complainant and the Respondent have a right to be present at the Hearing. Either party may request alternative methods for participating in the Hearing that do not require physical proximity to the other party,

Exhibit 4

including participating through electronic means. This request should be submitted to the Hearing Chair at least two (2) calendar days prior to the Hearing.

If, despite being notified of the date, time, and location of the Hearing, either party is not in attendance, the Hearing may proceed and applicable sanctions may be imposed. Neither party is required to participate in the Hearing in order for the Hearing to proceed.

ii. <u>Investigator or other witnesses</u>. The Review Panel may request the presence of the Investigator or any other witness it deems necessary to its determination. The parties may also request the presence of any witness they deem relevant to the determination by the Review Panel. The Review Panel has absolute discretion to determine which witnesses are relevant to its determination and may decline to hear from witnesses where it concludes that the information is not necessary for its review.

iii. <u>Advisors</u>. Both the Complainant and the Respondent have the right to be accompanied at the Hearing by an advisor of their choosing. The advisor may be anyone, including an attorney, who is not otherwise a party or witness. While the advisor may provide support and advice to a party at the Hearing, the advisor may not speak on behalf of the party or otherwise participate in, or in any manner disrupt, the Hearing. The University reserves the right to remove any individual whose actions are disruptive to the proceedings.

f) <u>Determination by the Review Panel</u>. Where either of the parties has contested the recommended finding(s) of responsibility, the members of the Review Panel will, at the conclusion of the Hearing, determine, by majority vote, (1) whether the concern(s) stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

If the Review Panel finds that concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, it will remand the matter to the Title IX Coordinator with instructions for further investigation or other action. The instructions may include guidance regarding the scope of information to be further investigated and any appropriate stipulations, including the appointment of a new Investigator.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, but determines there is insufficient evidence to support the Investigator's recommended finding, it may remand the matter for further investigation, or reject the Investigator's recommended finding(s) and make alternative finding(s).

Exhibit 4

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms that there is sufficient evidence to support a recommended finding of responsibility by a Preponderance of the Evidence, it will then determine, by majority vote, the appropriate sanction(s) for the Prohibited Conduct.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms a recommended finding of no responsibility, the matter will be considered resolved and the investigation will be closed. The Title IX Coordinator may nevertheless ensure that remedial measures remain in effect to support a Complainant.

g) <u>Sanctions</u>. Where there is a finding of responsibility, the Review Panel may impose one or more sanctions. Sanctions may include any of the sanctions that are available for violations of the University's Standards of Conduct, including:

- <u>Expulsion</u>: Termination of student status for any indefinite period.
- <u>Suspension</u>: Exclusion from classes and other privileges or activities or from the University for a definite period of time.
- <u>Suspension held in abeyance</u>: Exclusion from classes and other privileges or activities or from the University for a definite period of time to be enforced should another violation occur.
- <u>Restitution</u>:   Reimbursement for damages or misappropriation of property.
- <u>Disciplinary Probation</u>: Exclusion from participation in privileged or extracurricular activities for a definite period of time.
- <u>Reprimand</u>: A written censure for violation of the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct) placed in the Student's record, including the possibility of more severe disciplinary sanctions should another violation occur within a stated period of time.
- <u>Warning Notice</u>: A notice, in writing, that continuation or repetition of conduct found wrongful, within a period of time stated in the warning, may be cause for more severe disciplinary action.
- <u>Admonition</u>: An oral statement that the Student violated the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct).

The Policy prohibits a broad range of conduct, all of which is serious in nature. The propriety of any particular sanction is reviewed on an individual basis based on the unique facts and circumstances as found by the Review Panel. In keeping with the University's commitment to foster an environment that is safe, inclusive, and free from discrimination and harassment, the Policy provides the Review Panel with wide latitude in the imposition of sanctions tailored to the facts and circumstances of the Prohibited Conduct, the impact of the conduct on the Complainant and University community, and accountability by the Respondent. The imposition of sanctions is designed to eliminate Prohibited

Exhibit 4

Conduct, prevent its recurrence, and remedy its effects, while supporting the University's educational mission and legal obligations. Sanctions may include educational, restorative, rehabilitative, and punitive components. Some conduct, however, is so egregious in nature, harmful to the individuals involved or so deleterious to the educational process that it requires severe sanctions, including suspension or expulsion from the University.

Once the Review Panel has determined that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility under the Policy, any one or more sanctions may be imposed. In determining the appropriate sanction(s), the Review Panel will be guided by a number of considerations, including:

- The severity, persistence or pervasiveness of the Prohibited Conduct;
- The nature or violence (if applicable) of the Prohibited Conduct;
- The impact of the Prohibited Conduct on the Complainant;
- The impact or implications of the Prohibited Conduct within the University community;
- Prior misconduct by the Respondent, including the Respondent's relevant prior disciplinary history, at the University or elsewhere, and any criminal convictions;
- Whether the Respondent has accepted responsibility for the Prohibited Conduct;
- The maintenance of a safe, nondiscriminatory and respectful environment conducive to learning; and
- Any other mitigating, aggravating, or compelling factors.

Sanctions are effective immediately, unless otherwise specified by the Review Panel.

In addition to other sanctions, the Review Panel may direct the Title IX Coordinator to impose or extend a No-Contact Directive and impose or extend academic, University housing and/or University employment modifications, as may be appropriate; impose or extend increased monitoring, supervision, and/or security at locations or in connection with activities where the Prohibited Conduct occurred or is likely to reoccur; arrange for conducting targeted or broad-based educational programming or training for relevant persons or groups; impose one or more restorative remedies to encourage a Respondent to develop insight about the Prohibited Conduct, learn about the impact of that Prohibited Conduct on the Complainant and the University community, and identify how to prevent that Prohibited Conduct in the future (including community service and mandatory participation in training, education and/or prevention programs related to the Prohibited Conduct); and/or impose any other remedial or protective measures that are tailored to achieve the goals of the Policy.

Exhibit 4

h) <u>Transcript Notations</u>. If the Review Panel imposes a sanction of expulsion or suspension, the Title IX Coordinator will notify the University Registrar to place a prominent notation on the Respondent's transcript, as described in Section VI.C of these Procedures.

i) <u>Decision of the Review Panel is Final</u>. The decision of the Review Panel is final, without further recourse or appeal by either party.

j) <u>Final Outcome Letter</u>. The Review Panel Chair will simultaneously issue a written decision (the "Final Outcome Letter") to both the Complainant and the Respondent, with a copy to the Title IX Coordinator, within five (5) calendar days following the Review Panel Hearing (or such longer time as the Chair may for good cause determine). The Final Outcome Letter will set forth the violation(s) of the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct) for which the Respondent was found responsible or not responsible, as supported by the rationale set forth in the Final Investigation Report and/or modified by the Review Panel; the sanction(s) (if applicable) imposed against the Respondent; and the rationale for any sanction(s) imposed. The Final Outcome Letter may also identify protective measures implemented with respect to the Respondent or the broader University community. The Final Outcome Letter will not disclose any remedial measures provided to the Complainant.

k) <u>Release of Documents</u>. Under federal privacy laws, the Final Investigation Report, statements of one party that are shared with the other party in the resolution process, and any documents prepared by the University, including documents by or for the Review Panel in advance of the Hearing, constitute education records which may not be disclosed outside of the proceedings, except as may be required or authorized by law. The University does not, however, impose any restrictions on the parties regarding re-disclosure of the incident, their participation in proceedings under these Procedures, or the Final Outcome Letter.

## B. ALTERNATIVE RESOLUTION

The Complainant may seek Alternative Resolution in place of an investigation and Formal Resolution. The University, however, has the discretion to determine whether the nature of the reported conduct is appropriate for Alternative Resolution, to determine the type of Alternative Resolution that may be appropriate in a specific case, and, pursuant to Section V.C of these Procedures, to refer a report for Formal Resolution at any time. In addition, Alternative Resolution may not be available where the Evaluation Panel has determined that one or more of the Risk Factors listed in Section V.B.1 of these Procedures is present. **Forms of Alternative Resolution that involve face-to-face meetings between the Complainant and the Respondent, such as mediation, are not available in cases involving Sexual Assault.**

Participation in Alternative Resolution (including any specific form of Alternative

Exhibit 4

Resolution) is voluntary. The University will not compel a Complainant or Respondent to engage in Alternative Resolution, will not compel a Complainant to directly confront the Respondent, and will allow a Complainant or Respondent to withdraw from Alternative Resolution at any time. The University may decline the request for Alternative Resolution in any particular case and may terminate an ongoing Alternative Resolution process at any time. Pursuing Alternative Resolution does not preclude later use of Formal Resolution if the Alternative Resolution fails to achieve a resolution acceptable to the parties and the University. Where the Complainant or the Respondent withdraws from Alternative Resolution or Alternative Resolution is otherwise terminated for any reason, any statements or disclosures made by the parties during the course of the Alternative Resolution may be considered in a subsequent investigation and Formal Resolution.

With any form of Alternative Resolution, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness to the reported incident(s). The parties may be accompanied by their respective advisors at any meeting or proceeding held as part of Alternative Resolution. While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

Alternative Resolution may include:

- <u>Resolution with the Assistance of a Third Party</u>: A Complainant may seek assistance in informally resolving a report of Prohibited Conduct from the Title IX Coordinator, who can arrange to have a trained representative facilitate a meeting or meetings between the parties. The availability of this form of Alternative Resolution, and any resolution reached through such form of Alternative Resolution, is subject to the agreement of the Title IX Coordinator, the Complainant and the Respondent. This form of Alternative Resolution may not be used where the allegation involves Sexual Assault.
- <u>Interventions and Remedies</u>: Alternative Resolution agreements may involve a host of interventions and remedies, such as actions designed to maximize the Complainant's access to educational, extracurricular, and/or University employment activities; increased monitoring, supervision, and/or security at locations or activities where the Prohibited Conduct occurred or is likely to reoccur; targeted or broad-based educational programming or training for relevant individuals or groups; academic and/or University housing modifications for Student Complainants; workplace modifications for Employee Complainants; one or more of the restorative remedies or other sanctions described in these Procedures; and/or any other remedial or protective measures that can be tailored to the involved individuals to achieve the goals of the Policy.

Any form of Alternative Resolution and any combination of interventions and remedies may be utilized. If an agreement acceptable to the University, the Complainant, and the Respondent is reached through Alternative Resolution, the terms of the agreement are implemented and the matter is resolved and closed. If an agreement is not reached, and the

Exhibit 4

Title IX Coordinator determines that further action is necessary, or if a Respondent fails to comply with the terms of the Alternative Resolution, the matter may be referred for an investigation and Formal Resolution under these Procedures.

The Title IX Coordinator will maintain records of all reports and conduct referred for Alternative Resolution, which typically will be completed within thirty (30) calendar days.

C.  ACADEMIC TRANSCRIPT NOTATIONS

Pursuant to Va. Code §23-9.2:18, the Title IX Coordinator will direct the University Registrar to include a prominent notation on the academic transcript of any Student who has been (1) suspended, (2) expelled (i.e., permanently dismissed), or (3) who has withdrawn from the University while under investigation, for Prohibited Conduct pursuant to the Policy. Such notation will reflect, as appropriate, the following language: "[Suspended, Expelled, or Withdrew While Under Investigation] for a Violation of the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence." The Title IX Coordinator will direct the University Registrar to remove any such notation where (a) a Student is subsequently found not to have committed an act of Prohibited Conduct pursuant to the Policy, and/or (b) a Student who has been suspended for Prohibited Conduct pursuant to the Policy, has (i) completed the term of such suspension and any conditions thereof, and (ii) has been determined by the University to be in good standing pursuant to all applicable University academic and non-academic standards.

D.  RECORDS RETENTION

The University shall retain all records relating to a report of Prohibited Conduct for a period of ten years after the date the report was received, and the University shall retain all of such records for a period of twenty years in cases in which the Respondent was found responsible for Prohibited Conduct.