# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:19-cv-38 |
| v. | ) | |
| | ) | |
| THE RECTOR AND VISITORS | ) | |
| OF THE UNIVERSITY OF VIRGINIA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AFFIDAVIT OF JOHN DOE

I, John Doe, being first duly sworn, state as follows:

1.    I am John Doe.

2.    In my fourth year of college at the University of Virginia, on August 8, 2018, the University's Deputy Title IX Coordinator sent a Notice of Investigation to me via e-mail.

3.    The e-mail showing all of the documents I received at the issuance of the Notice of Investigation is attached as Exhibit 1 to this Affidavit.

        a.    The Notice of Investigation is attached as Exhibit 2 to this Affidavit.

        b.    The Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence is attached as Exhibit 3 to this Affidavit.

        c.    The Procedures for Reports Against Students (Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Students Under the Policy), is attached as Exhibit 4 to this Affidavit.

        d.    The Resource and Reporting Guide for Students (Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence) is attached as Exhibit 5 to this Affidavit.

Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 1 of 92   Pageid#: 435

e.  The Notice of Investigation also attached an infographic and a list of potential advisors which are attached as Exhibits 6 and 7 to this Affidavit.

4.      I never received any amended Notice of Investigation or any other notice concerning the allegations and informing me of other actions the University could take to investigate or discipline me.

5.      It is my understanding that the University convened an Evaluation Panel meeting on August 6, 2018, pursuant to its procedures.

6.      The University never notified me that I was the subject of any remedial or protective measures.  Beginning from August 2018 through commencement exercises on the weekend of May 18, 2019, I was never restricted in any way from participating in any University educational or other program; I had free access to University owned and controlled property; and, there were no restrictions placed on my contacts or interactions with any faculty, staff, other students, or third parties. I participated fully in all aspects of University life.

7.      Under the Policy, I am entitled to have an advisor. I hired Rhonda Quagliana to act as my advisor.

8.      On August 15, 2018, Mr. John Flood ("Mr. Flood") e-mailed me and requested that I participate in an interview.  *See* Exhibit 8 to this Affidavit.

9.      The University's Title IX Policy provides that as the Respondent, I was not required to participate in an investigation, and that my decision not to participate could not be held against me.  On the advice of my advisor and considering that the Complainant had filed a police report against me, I chose not to provide an interview at the time of Mr. Flood's request.

10.     On October 8, 2018, Mr. Flood sent an e-mail to me informing me of a delay in the distribution of the Draft Investigation Report.  *See* Exhibit 9 to this Affidavit. This was the only notice of delay I received.

11.     From August 17, 2018, to October 12, 2018, Mr. Flood interviewed the Complainant and three witnesses.

12.     On December 18, 2018, Ms. Emily Babb ("Ms. Babb") issued the Draft Investigation Report. *See* Exhibit 10 to this Affidavit.

13.     Ms. Babb gave a deadline of January 7, 2019, for the Complainant and me to respond to the information contained in the Draft Investigation Report.

14.     I received the Draft Investigation Report just before Christmas. I was out of the country with my family. I requested and received an extension. *See* Exhibit 10 to this Affidavit.

15.     Having received the Draft Investigation Report, including an interview of the Complainant, I then was able to understand and dispute the allegations against me. On January 25, 2019, I submitted my response to the Draft Investigation Report and an Affidavit in which I denied under oath that I sexually assaulted the Complainant. Mr. Flood confirmed receipt of my response and Affidavit. *See* Exhibit 11 to this Affidavit.

16.     While Mr. Flood stated that the Complainant did not respond to the Draft Investigation Report, Mr. Flood shared my January 25, 2019, response with her.

17.     On February 7, 2019, Mr. Flood shared with me, the Complainant's comments to my response. *See* Exhibit 12 to this Affidavit.

18.     Mr. Flood granted permission for me to further respond to the Complainant's comments by February 13, 2019. *See* Exhibit 12 to this Affidavit.

19.     On February 13, 2019, I submitted my response to Ms. Roe's response. My February 13, 2019 response included written comments and an additional Supplemental Affidavit. *See* Exhibit 13 to this Affidavit.

20.     On February 13, 2019, Mr. Flood confirmed receipt of my February 13, 2019, response and Affidavit. *See* Exhibit 14.

21.     I did not receive any communications or any notices from anyone within the Title IX office or any other University official or administrator from February 14, 2019, to May 1, 2019, regarding the matter.

22.     By February 13, 2019, I understood that the investigation part of the process was complete because I did not receive any notification that the investigation was being continued.

23.     During the months after February 13, 2019, I focused on completing the course-work for my degree, which I did.

24.     On May 1, 2019, Ms. Babb notified me by e-mail that my degree would be withheld. *See* Exhibit 15 to this Affidavit.

25.     The University's graduation ceremonies occurred on May 18 and May 19, 2019.  On May 18 and 19, 2019, I attended the University's commencement exercises with my classmates.

26.     I was no longer enrolled or registered for classes by May 18, 2019.

27.     I had met all degree requirements by the time of the graduation ceremonies, and had no misconduct proceedings pending with the exception of the investigation that was the subject of the August 8, 2018, Notice of Investigation.

28.     On May 21, 2019, Mr. Flood e-mailed me a one-day notification of the release of the Final Investigation Report.

29.     On May 22, 2019, the Final Investigation Report was issued.  On May 22, 2019, I received a Final Investigation Report finding me not responsible for an alleged sexual assault at a restaurant off campus, but finding me responsible for an alleged sexual assault in the form of nonconsensual vaginal penetration in my off-campus apartment where I was living at the time of the alleged incident.

30.     The Final Investigation Report includes in full the Complainant's comments regarding my January 25, 2019, response.

31.     The Final Investigation Report does not refer to, or include, my February 13, 2019, Supplemental Affidavit and response.

32.     The Final Investigation Report contains the Complainant's cellular telephone records, which she e-mailed to Mr. Flood on April 29, 2019. *See* Exhibit 16 to this Affidavit.

33.     The Final Investigation Report contains the transcript of an interview of a friend of the Complainant that Mr. Flood conducted on April 30, 2019.  The friend was previously identified in the Draft Investigation Report. The witness had been identified in the Draft Investigation Report on Page 26: "[name redacted] stated that Complainant contacted a best/friend classmate from [name redacted High School], [name redacted] to come to the Medical Center to drive [Complainant] home."

34.     Until the Final Investigation Report was issued, I was not aware of the information Mr. Flood gathered on April 29, 2019, and April 30, 2019.  I had been provided with no information that the investigation was ongoing.  Ms. Babb did not inform me in her e-mail on May 1, 2019, that additional information was being gathered to which I would have no opportunity to respond.

35. On May 28, 2019, I responded to the Final Investigation Report. *See* Exhibit 17 to this Affidavit.

36. I was notified on June 5, 2019, that the University intended to convene a Review Panel hearing that would be held on July 1, 2019. *See* Exhibit 18 to this Affidavit.

37. I have done nothing and did not encourage any conduct to deliberately or even indirectly, delay the resolution of this case.

38. I was in constant communication with my attorney following my receipt of the Final Investigation Report, and understood that she was in discussions with University General Counsel concerning how to address these issues, and was being told that the University was insisting on moving forward with a Review Panel Hearing, where I was going to have to overcome the investigator's finding of responsibility against me or face sanctions, including expulsion.

39. It is my understanding that these discussions were ongoing until it became evident that I had no recourse, except to file suit. It was a difficult decision to make to file suit against my University. Having to file suit has caused me unbelievable anxiety and expense as I have tried to deal with the consequences of these events.

40. Among other things, I was afraid that my name might be used or my identity revealed, further damaging my reputation.

The above statements are true and correct to the best of my knowledge and belief.

*John Doe*
_____
John Doe

STATE OF Virginia
CITY/COUNTY OF Charlottesville

The foregoing affidavit was subscribed and sworn to before me this 18th day of July, 2019, by John Doe.

_____
Notary Public

My commission expires: 4/30/21
ID No. 7650900

DIANE KATHRYN MATHEWS
NOTARY PUBLIC
REG. #7650900
MY COMMISSION EXPIRES
04/30/2021
COMMONWEALTH OF VIRGINIA

Page 5 of 5

Exhibit 1

**Diane Mathews**

| | |
|---|---|
| **Subject:** | FW: [EXTERNAL] Fwd: Confidential University Communication--Notice of Investigation |
| **Attachments:** | noname.dat; Title IX Policy (July 2017).pdf; Appendix A Student Procedures.pdf; Appendix A-1 Student Resource Guide.07.18.17.pdf; Student Infographic.pdf; List of Advisors_Respondent.pdf; NOI ███████████████; image003.png |

---------- Forwarded message ---------
From: **Haynes, Akia A. (aah6n)** <aah6n@virginia.edu>
Date: Wed, Aug 8, 2018 at 9:47 AM
Subject: Confidential University Communication--Notice of Investigation
To: ████████████
CC: Bassett, Kimberley C (kcb6j) <kcb6j@virginia.edu>, Title IX Coordinator <titleixcoordinator@virginia.edu>, Groves, Allen W. (awg8vd) <awg8vd@virginia.edu>, Flood, John J. (jjf3y) <jjf3y@virginia.edu>

███████

Good morning and I hope this message finds you well. As discussed during our phone call yesterday, our office typically provides this information in person. However, as you are not currently in Charlottesville, I am writing to provide you with the following information.

Please see enclosed the Notice of Investigation that the University is opening a formal investigation under the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence ("the Title IX Policy") in which you have been identified as the Respondent. I have attached a written Notice which outlines the alleged conduct, potential policy violations, and explains your rights and responsibilities under the Title IX Policy. John Flood, Title IX Investigator, has been assigned to investigate this matter and is copied on this message. If you believe that Mr. Flood has an actual conflict of interest, please notify me or the Title IX Coordinator in writing within 72 hours of the date of this notice to challenge his participation.

Additionally, I have included the Title IX Policy, Appendix A: Student Procedures, Appendix A1: Student Resource Guide, the Student Infographic, and an Advisor list. These documents provide additional resources and information about the process. As noted yesterday, Dean Bassett is included on this message in her role as support for you during this process. If you need any support resources during this process such as access to counseling services, academic accommodations, and the like, please contact Dean Bassett who can assist with this. She will also be notified at critical junctures so that she can offer support. As Dean Bassett is not a confidential resource and does not serve as an advisor, you may select an advisor to assist you during this process.

If you have any questions about the process, please do not hesitate to contact me via email or phone if you have any additional questions or concerns. You should expect to receive an email from Mr. Flood about next steps shortly as he will serve as your primary point of contact during the investigation.

Sincerely,

Akia

Akia A. Haynes
Deputy Title IX Coordinator
[cid:image001.png@01CF3171.F298CF40]
O'Neil Hall

1

Exhibit 1

445 Rugby Road
Post Office Box 400211
Charlottesville, VA 22904-4211
Phone: (434) 297-7988
aah6n@virginia.edu<mailto:Jep3f@virginia.edu>
Pronouns: she, her, hers

.

Exhibit 2

## UNIVERSITY *of* VIRGINIA
### OFFICE FOR EQUAL OPPORTUNITY AND CIVIL RIGHTS
Title IX Office, O'Neil Hall, Terrace Level, Room 037 • 445 Rugby Road • Charlottesville, VA 22904 • (434) 297-7988

August 8, 2018

**Via Hand Delivery and Electronic Mail**

██████████
██████████

**RE:**    **Notice of Investigation**

Dear ██████

I am writing to inform you that the University of Virginia ("University") has initiated a Title IX investigation in a matter involving you. This letter includes information about the nature of the reported incident, the potential policy violations at issue, the procedures that apply to this investigation, the assigned investigator, expectations and responsibilities of the parties, and other information about the investigative process. Please note that you are considered to be the Respondent in this matter.

**Nature of Report, Potential Policy Violations, and Standard of Review**

On August 2, 2018, the University received a report from the Charlottesville Police Department that alleged that in the evening of April 14, 2017 or early morning of April 15, 2017, you sexually assaulted ██████████ who is considered to be the Complainant in this matter, by penetrating her vagina with your penis without her consent. On August 6, 2018, the University convened an Evaluation Panel and performed an assessment of all reported and available information consistent with Section V of the Procedures for Reports Against Students. As a result of that meeting, the Title IX Coordinator is initiating Formal Resolution.

This report raises potential policy violations under the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence ("the Title IX Policy") for: Sexual Assault and Sexual Harassment. Other potential violations of the Title IX Policy, the Preventing and Addressing Discrimination and Harassment Policy ("PADH Policy"), and/or the University's Standards of Conduct may be identified during the investigation of the reported incident. Should additional potential policy violations be identified, an Amended Notice of Investigation will be issued to both parties, and both parties will be provided an opportunity to respond.

Where the Title IX Coordinator determines that a single investigation is appropriate, the determination of responsibility for the violation of University policy will be evaluated under the applicable policy (i.e., the Title IX Policy, the PADH Policy, and/or the Standards of Conduct), but the investigation and resolution will be conducted in accordance with the Procedures for Reports Against Students, Appendix A ("the Procedures"), including the requirement for use of the preponderance of the evidence standard. This means that all allegations, including allegations of

*Mission*
*Ensuring equal opportunity and protecting the civil rights of all University community members through proactive outreach, education, and effective response and resolution.*

Exhibit 2

any Standards of Conduct violations in this process, will be decided using the preponderance of the evidence (i.e., what more likely than not occurred) standard. See Section VI (A)(1)(b) & (n) of the Procedures.

**Procedures**

The reported incident, which allegedly occurred on or about April 14-15, 2018, will be investigated and resolved under the University's Formal Resolution option, which is outlined in Section VI (A) of the Procedures. The University seeks to investigate and resolve matters pursuant to the Procedures within 60 calendar days of the date of this notice. Should extensions of time need to be granted for good cause shown, you will be notified in writing. I have enclosed a copy of the Title IX Policy, the Procedures, and a Resource Guide outlining University and community resources available to students. Should you have any questions about these materials, you may contact me or the investigator assigned to this matter.

**Procedure for Requesting Reasonable Accommodations**

If you are an individual with a disability and need a reasonable accommodation in order to fully and effectively participate in the University's Title IX formal investigation and resolution process, please notify me as soon as possible. I will work with the University's Student Disabilities Access Center (SDAC) to ensure reasonable accommodations are provided. While such requests may be made at any point during the process, individuals are strongly encouraged to make their requests known at the earliest possible time and, if possible, five business days in advance of an anticipated activity where the accommodation is needed (such as an interview or hearing).

**Assigned Investigator**

I have designated John Flood, Title IX Investigator, to investigate this matter. If you believe Mr. Flood has an actual conflict of interest, please notify me in writing, by email, within 72 hours of the date of this notice to challenge his participation. The email must contain specific grounds for the challenge. Upon receipt of any challenge, I will make a determination whether there is sufficient information to find a conflict of interest and notify you of my decision in writing, by email, with the name of a new investigator if I determine that a conflict of interest exists.

**Overview of Investigative Process**

During the investigation, you and Complainant will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit any questions that you believe should be directed by the investigators to the other parties or to any witness. The investigator will notify and seek to meet separately with you, Complainant, and third-party witnesses and will seek to gather other relevant and available evidence and information, including electronic or other records of communications between the parties or witnesses (via voice-mail, text message, email, and social media sites), photographs (including those stored on computers and smartphones), and medical records

2

Exhibit 2

(subject to the written consent of the applicable party). In preparation for the investigation, please preserve any potentially relevant evidence in any form.

Neither you nor Complainant is required to participate in the investigation or any form of resolution under the Title IX Policy or the Procedures. As provided in the Title IX Policy, you are presumed to be not responsible; however, this presumption may be overcome where the Review Panel concludes by a preponderance of the evidence (i.e., what more likely than not occurred) that there is sufficient evidence to determine that you violated the Title IX Policy, the PADH Policy, and/or the Standards of Conduct. Mr. Flood will not draw any adverse inference from a decision by you or Complainant not to participate in the investigation. The investigation and formal resolution, however, may proceed, and a finding of responsibility and imposition of any sanction(s) may occur with or without such participation.

**Expectations and Responsibilities**

As set forth in Section III of the Procedures, you and Complainant can expect the following during the University's investigation and resolution of the reported incident:

A. Prompt and equitable resolution of allegations of Prohibited Conduct;

B. Privacy in accordance with the Policy and any legal requirements;

C. Reasonably available interim remedial measures, as described in the Procedures and Resource and Reporting Guide for Students;

D. Freedom from retaliation for making a good faith report of Prohibited Conduct or participating in any proceeding under the Title IX Policy;

E. The responsibility to refrain from Retaliation directed against any person for making a good faith report of Prohibited Conduct or participating in any proceeding under the Title IX Policy;

F. The responsibility to provide truthful information in connection with any report, investigation, or resolution of Prohibited Conduct under the Title IX Policy;

G. The opportunity to articulate concerns or issues about proceedings under the Title IX Policy or the Procedures;

H. Timely notice of any meeting or proceeding at which your presence is contemplated by the Procedures;

I. The opportunity to choose an advisor, including the right to have that advisor attends any meeting or proceeding at which the party's presence is contemplated by the Procedures;

J. This written notice of investigation, which includes notice of the potential policy violations and nature of the alleged Prohibited Conduct;

K. The opportunity to challenge the investigator or any member of the Review Panel for bias or conflict of interest;

3

Exhibit 2

L.  The opportunity to offer information, present evidence, and identify witnesses during an investigation;

M.  The opportunity to be heard, orally and/or in writing, as to the determination of a policy violation and the imposition of any sanction(s);

N.  Timely and equal access to any information that will be used during the Formal Resolution proceedings and related meetings;

O.  Reasonable time to prepare any response contemplated by the Procedures;

P.  Written notice of any extension of time frames for good cause; and

Q.  Written notice of the outcome of any Formal Resolution proceedings, including the determination of a policy violation, imposition of any sanction(s), and the rationale for each.

**Prohibition Against Retaliation**

The University takes every report of Prohibited Conduct seriously. Retaliation is strictly prohibited and constitutes a violation of University policy. Retaliation means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any Title IX proceeding. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under the Title IX Policy. Please immediately report any concerns about retaliation to me.

You should expect a direct communication from Mr. Flood about next steps very soon. The investigator will be your primary point of contact during the investigation. However, please feel free to contact me at (434) 297-7643 or at ecb6y@virginia.edu if you have any questions or concerns.

Sincerely,

*Emily Babb*

Emily Babb
Assistant Vice President for Title IX Compliance/Title IX Coordinator

Enclosures (5)

The Title IX Policy
Appendix A: Procedures for Reports Against Students
Appendix A-1: Resource and Reporting Guide for Students
Path of a Report
Advisor Information

cc:    John Flood, Title IX Investigator; Allen Groves, University Dean of Students

4

Exhibit 3



# POLICY ON SEXUAL AND GENDER-BASED HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE

Exhibit 3

| Date: | 07/01/2015 |
|---|---|
| Policy ID # | HRM-041 |
| Status: | Final |
| Policy Type: | University |
| Contact Office: | Equal Opportunity and Civil Rights |
| Oversight Executive: | President of the University |
| Applies to: | Academic Division (including all off-site locations) and Medical Center |

## Table of Contents

I. STATEMENT OF POLICY ................................................................................ 2

II. TO WHOM THIS POLICY APPLIES ............................................................. 3

III. APPLICABLE PROCEDURES UNDER THIS POLICY .................................. 4

    A. WHERE THE RESPONDENT IS A STUDENT ......................................... 4
    B. WHERE THE RESPONDENT IS AN EMPLOYEE ................................... 4
    C. WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE............ 5
    D. WHERE THE RESPONDENT IS A THIRD PARTY................................... 5

IV. TITLE IX COORDINATOR ............................................................................ 5

V. RESOURCES AND REPORTING OPTIONS .................................................. 7

    A. REMEDIAL AND PROTECTIVE MEASURES...................................... 7
    B. PRIVACY AND CONFIDENTIALITY ..................................................... 7
      Privacy ............................................................................................... 8
      Confidentiality ................................................................................... 8
      Employee Responsibility to Report Disclosures or Information about Prohibited Conduct ........ 8
      A "Confidential Employee"............................................................... 8
      A "Responsible Employee" ............................................................... 9
      Responsibility to Report Prohibited Conduct where either the Complainant or the Respondent is an Employee............................................................... 9
      Reporting of Any Prohibited Conduct on Certain University Property............ 9
      Reporting to Law Enforcement........................................................ 9
      Clery Act Reporting......................................................................... 10
    C. CONFIDENTIAL RESOURCES ............................................................. 10
    D. REPORTING........................................................................................... 10
      1. Law Enforcement....................................................................... 10
      2. The University ........................................................................... 11

VI. PROHIBITED CONDUCT UNDER THIS POLICY ....................................... 11

Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 13 of 92   Pageid#: 447

Exhibit 3

A. SEXUAL ASSAULT ................................................................................... 12
   1. Sexual Contact .................................................................................. 12
   2. Sexual Intercourse............................................................................ 12
   3. Affirmative Consent.......................................................................... 12
B. SEXUAL EXPLOITATION ...................................................................... 14
C. INTIMATE PARTNER VIOLENCE .......................................................... 15
D. STALKING ............................................................................................... 15
E. SEXUAL OR GENDER-BASED HARASSMENT........................................ 16
   1. Sexual Harassment............................................................................ 16
   2. Gender-Based Harassment................................................................. 16
F. RETALIATION ....................................................................................... 17
G. COMPLICITY.......................................................................................... 17

VII.  VIOLATIONS OF LAW ................................................................................ 17

VIII. PREVENTION AND AWARENESS PROGRAMS ......................................... 17

IX.   TRAINING .................................................................................................. 18

X.    RELATED POLICIES................................................................................... 18

   A. STUDENTS................................................................................................ 18
   B. EMPLOYEES ........................................................................................... 18
   C. EMPLOYEES AND THIRD PARTIES ........................................................ 18

XI.   OBLIGATION TO PROVIDE TRUTHFUL INFORMATION ......................... 18

XII.  ANNUAL REVIEW ..................................................................................... 18

## I.    **STATEMENT OF POLICY**

The University of Virginia, consisting of its eleven Schools in Charlottesville, its Medical Center, and all Academic Centers, wherever located (collectively, the "University"), is an institution built upon honor, integrity, trust, and respect. Consistent with these values, the University is committed to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community. The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities. To that end, this policy prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and/or the Virginia Human Rights Act. Such behavior also requires the University to fulfill certain obligations under the Violence Against Women Reauthorization Act of 2013 ("VAWA") and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act").

The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by this policy, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under this policy (collectively,

Exhibit 3

"Prohibited Conduct"). These forms of Prohibited Conduct are unlawful, undermine the character and purpose of the University, and will not be tolerated.

The University adopts this policy with a commitment to: (1) eliminating, preventing, and addressing the effects of Prohibited Conduct; (2) fostering the University's Community of Trust, in which Prohibited Conduct is not tolerated; (3) cultivating a climate where all individuals are well-informed and supported in reporting Prohibited Conduct; (4) providing a fair and impartial process for all parties; and (5) identifying the standards by which violations of this policy will be evaluated and disciplinary action may be imposed. Employees or Students who violate this policy may face disciplinary action up to and including termination or expulsion. The University will take prompt and equitable action to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The University conducts ongoing prevention, awareness, and training programs for Employees and Students to facilitate the goals of this policy.

It is the responsibility of every member of the University community to foster an environment free of Prohibited Conduct. All members of the University community are encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. The University will support and assist community members who take such actions.

This policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this policy. Where the date of the Prohibited Conduct precedes the effective date of this policy, the definitions of misconduct in existence at the time of the alleged incident(s) will be used. The procedures under this policy, however, will be used to investigate and resolve all reports made on or after the effective date of this policy, regardless of when the incident(s) occurred.

## II.  **TO WHOM THIS POLICY APPLIES**

This policy applies to Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students"); University employees, consisting of all full-time and part-time faculty, University Staff, Medical Center employees and classified staff, wage (including temps), professional research staff, and post-doctoral fellows ("Employees"); and contractors, vendors, visitors, guests or other third parties ("Third Parties"). This policy pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:

> (1) the conduct occurs on University Grounds or other property owned or controlled by the University;

> (2) the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

> (3) the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University Grounds or other property owned or controlled by the University or in any University employment or education program or activity.

Exhibit 3

The University's Office for Equal Opportunity and Civil Rights ("EOCR") administers two separate policies that address other forms of discrimination and harassment: (1) the Preventing and Addressing Discrimination and Harassment Policy (the "PADH Policy"), and (2) the Preventing and Addressing Retaliation Policy (together, the "EOCR Policies"). This policy supersedes any conflicting provisions contained in the EOCR Policies. Where Prohibited Conduct violates this policy and also violates either or both of the EOCR Policies, the University's response will be governed by the procedures referenced in this policy. Questions about which policy applies in a specific instance should be directed to the University's Title IX Coordinator at (434) 297-7988.

### III. APPLICABLE PROCEDURES UNDER THIS POLICY

The specific procedures for reporting, investigating, and resolving Prohibited Conduct are based upon the nature of the Respondent's relationship to the University (Student, Employee, or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for Complainants and Respondents. "Complainant" means the Student, Employee or Third Party who presents as the victim of any Prohibited Conduct under this policy, regardless of whether that person makes a report or seeks action under this policy. "Respondent" means the Student, Employee or Third Party who has been accused of violating this policy.

A Student or Employee determined by the University to have committed an act of Prohibited Conduct is subject to disciplinary action, up to and including separation from the University. Third Parties who commit Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

The procedures referenced below provide for prompt and equitable response to reports of Prohibited Conduct. The procedures designate specific timeframes for major stages of the process and provide for thorough and impartial investigations that afford all parties notice and an opportunity to present witnesses and evidence and to view the information that will be used in determining whether a policy violation has occurred. The University applies the Preponderance of the Evidence standard when determining whether this policy has been violated. "Preponderance of the Evidence" means that it is more likely than not that a policy violation occurred.

   A. WHERE THE RESPONDENT IS A STUDENT

   The procedures for responding to reports of Prohibited Conduct committed by Students are detailed in Appendix A: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Students.

   B. WHERE THE RESPONDENT IS AN EMPLOYEE

   The procedures for responding to reports of Prohibited Conduct committed by Employees are detailed in Appendix B: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Employees.

Exhibit 3

C.  <u>WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE</u>

- The Student-Respondent procedures (Appendix A) will apply if the Respondent is a full-time Student but not a full-time Employee;
- The Employee-Respondent procedures (Appendix B) will apply if the Respondent is a full-time Employee but not a full-time Student; or
- If there is a question as to the predominant role of the Respondent, the University's Title IX Coordinator will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the Prohibited Conduct). Further, where a Respondent is both a Student and an Employee, the Respondent may be subject to any of the sanctions applicable to Students or Employees.

D.  WHERE THE RESPONDENT IS A THIRD PARTY

The University's ability to take appropriate corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the University. The Title IX Coordinator will determine the appropriate manner of resolution consistent with the University's commitment to a prompt and equitable process consistent with federal law, federal guidance, and this policy.

## IV.    TITLE IX COORDINATOR

Under Title IX:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

The Title IX Coordinator is charged with monitoring the University's compliance with Title IX; ensuring appropriate education and training; coordinating the University's investigation, response, and resolution of all reports under this policy; and ensuring appropriate actions to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The Title IX Coordinator is available to meet with any Student, Employee, or Third Party to discuss this policy or the accompanying procedures. The University has also designated a Deputy Title IX Coordinator who may assist the Title IX Coordinator in the discharge of these responsibilities. The Title IX Coordinator and Deputy Title IX Coordinator receive appropriate training to discharge their responsibilities.

Concerns about the University's application of Title IX, VAWA, Title VII, the Clery Act, or the Virginia Human Rights Act may be addressed to the Title IX Coordinator; the United States Department of Education, Clery Act Compliance Division (at clery@ed.gov); the United States Department of Education, Office for Civil Rights (at OCR@ed.gov or (800) 421-3481); and/or the Equal Employment Opportunity Commission (at info@eeoc.gov or (800) 669-4000).

Exhibit 3

The Title IX Coordinator and Deputy Title IX Coordinator can be contacted by telephone, email, or in person during regular office hours:

**Emily Babb,** Assistant Vice President for Title IX Compliance
Title IX Coordinator
O'Neil Hall, Terrace Level, Room 037
ecb6y@virginia.edu or titleixcoordinator@virginia.edu-
(434) 297-7643

**Akia Haynes**, Deputy Title IX Coordinator
Title IX Office
O'Neil Hall, Terrace Level, Room 036
(434) 924-1696
aah6n@virginia.edu

Exhibit 3

## V.    RESOURCES AND REPORTING OPTIONS

The University offers a wide range of resources for all Students and Employees to provide support and guidance in response to any incident of Prohibited Conduct. For comprehensive information on accessing University and community resources, including emergency and ongoing assistance; health, mental health, and victim-advocacy services; options for reporting Prohibited Conduct to the University and/or law enforcement; and available support with academics, housing, and employment:

- Students should refer to the Student Resource Guide (Appendix A-1); Employees should refer to the Employee Resource Guide (Appendix B-1); and

- Third Parties should contact the Title IX Coordinator to discuss available University and/or community resources and reasonably available assistance.

### A. REMEDIAL AND PROTECTIVE MEASURES

The University offers a wide range of resources for Students and Employees, whether as Complainants or Respondents, to provide support and guidance throughout the initiation, investigation, and resolution of a report of Prohibited Conduct. The University will offer reasonable and appropriate measures to protect a Complainant and facilitate the Complainant's continued access to University employment or education programs and activities. These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (involving action against a Respondent). Remedial and protective measures, which may be temporary or permanent, may include no-contact directives, residence modifications, academic modifications and support, work schedule modifications, interim disciplinary suspension, suspension from employment, and pre-disciplinary leave (with or without pay). Remedial measures are available regardless of whether a Complainant pursues a complaint or investigation under this policy. The University will maintain the privacy of any remedial and protective measures provided under this policy to the extent practicable and will promptly address any violation of the protective measures. The Title IX Coordinator has the discretion to impose and/or modify any interim measure based on all available information, and is available to meet with a Complainant or Respondent to address any concerns about the provision of interim measures.

The University will provide reasonable remedial and protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

### B. PRIVACY AND CONFIDENTIALITY

The University is committed to protecting the privacy of all individuals involved in the investigation and resolution of a report under this policy. The University also is committed to providing assistance to help Students, Employees and Third Parties make informed choices. With respect to any report under this policy, the University will make reasonable

Exhibit 3

efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

Privacy and confidentiality have distinct meanings under this policy.

**Privacy:** Privacy means that information related to a report of Prohibited Conduct will be shared with a limited circle of University Employees who "need to know" in order to assist in the assessment, investigation, and resolution of the report. All Employees who are involved in the University's response to reports of Prohibited Conduct receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

The privacy of Student education records will be protected in accordance with the Family Educational Rights and Privacy Act ("FERPA"), as outlined in the University's FERPA policy. The privacy of an individual's medical and related records generally is protected by the Health Insurance Portability and Accountability Act ("HIPAA"), excepting health records protected by FERPA and by Virginia's Health Records Privacy Act, Va. Code § 32.1-127.1:03. Access to an Employee's personnel records may be restricted in accordance with the Virginia Freedom of Information Act, and, where applicable, Department of Human Resources Management ("DHRM") Policy 6.05 Personnel Records Disclosure and DHRM Policy 6.10 Records Management.

**Confidentiality:** Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Virginia law. The University has designated individuals who have the ability to have privileged communications as "Confidential Employees." When information is shared by an individual with a Confidential Employee or a community professional with the same legal protections, the Confidential Employee (and/or such community professional) cannot reveal the information to any third party except when an applicable law or a court order requires or permits disclosure of such information. For example, information may be disclosed when: (i) the individual gives written consent for its disclosure; (ii) there is a concern that the individual will likely cause serious physical harm to self or others; or (iii) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

**Employee Responsibility to Report Disclosures or Information about Prohibited Conduct:** An Employee's responsibility to report incidents of Prohibited Conduct is governed by the University's separate reporting policy ("Reporting Policy"). Under the Reporting Policy, every Employee is designated as either a "Confidential Employee" or a "Responsible Employee."

**A "Confidential Employee"** is (1) any Employee who is a licensed medical, clinical or mental-health professional (e.g., physicians, nurses, physicians' assistants, psychologists,

Exhibit 3

psychiatrists, professional counselors and social workers, and those performing services under their supervision), when acting in that professional role in the provision of services to a patient who is a Student ("health care providers"); and (2) any Employee providing administrative, operational and/or related support for such health care providers in their performance of such services. A Confidential Employee will not disclose information about Prohibited Conduct to the University's Title IX Coordinator without the Student's permission (subject to the exceptions set forth in the Confidentiality section of this policy).

A **"Responsible Employee"** is any University Employee who is not a Confidential Employee. A Responsible Employee is required to report to the University's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of Prohibited Conduct that involves any Student as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses. Responsible Employees include Resident Assistants, Graduate Teaching Assistants, and all other student-employees, when disclosures are made to any of them in their capacities as employees. Responsible Employees are not required to report information disclosed (1) at public awareness events (e.g., "Take Back the Night," candlelight vigils, protests, "survivor speak-outs" or other public forums in which students may disclose incidents of Prohibited Conduct; collectively, "Public Awareness Events"), or (2) during a student's participation as a subject in an Institutional Review Board-approved human subjects research protocol ("IRB Research"). The University may provide information about Students' Title IX rights and about available University and community resources and support at Public Awareness Events, however, and Institutional Review Boards may, in appropriate cases, require researchers to provide such information to all Student subjects of IRB Research.

**Responsibility to Report Prohibited Conduct Where Either the Complainant or the Respondent Is an Employee**: Under this policy, supervisors, management and human resources professionals are required to report to the University's Title IX Coordinator all relevant details about an incident of Prohibited Conduct where either the Complainant or the Respondent is an Employee. Reporting is required when such supervisors, management and human resource professionals know (by reason of a direct or indirect disclosure) or should have known of such Prohibited Conduct. For academic faculty, supervisors include department chairs, deans, and other unit administrators.

**Reporting of Any Prohibited Conduct on Certain University Property**: Consistent with the requirements of Va. Code § 23-9.2:15 (the "Virginia Reporting Statute"), Responsible Employees are also required to report to the Title IX Coordinator all information obtained, from any source, about alleged Prohibited Conduct that occurs anywhere on University Grounds (including residence halls); on any contiguous (off-Grounds) property owned or controlled by the University; on any property controlled by a Student organization (including fraternity houses) or frequently used by Students, wherever located; and public property (including streets, sidewalks and parking facilities) that is within or immediately adjacent to, and accessible from, Grounds. These reporting obligations, and the Virginia Reporting Statute, are described in the Reporting Policy.

**Reporting to Law Enforcement**: Under the Virginia Reporting Statute, the University is

Exhibit 3

required to report information about certain allegations of Prohibited Conduct to the law enforcement agencies and the prosecuting authorities who would be responsible, respectively, for investigating and prosecuting such allegations.

**Clery Act Reporting:** Pursuant to the Clery Act, the University includes statistics about certain offenses in its annual security report and provides those statistics to the United States Department of Education in a manner that does not include any personally identifying information about individuals involved in an incident. The Clery Act also requires the University to issue timely warnings to the University community about certain crimes that have been reported and may continue to pose a serious or continuing threat to Students and Employees. Consistent with the Clery Act, the University withholds the names and other personally identifying information of Complainants when issuing timely warnings to the University community.

## C. CONFIDENTIAL RESOURCES

Consistent with the definition of Confidential Employees and licensed community professionals, there are a number of resources within the University and Charlottesville communities where Students and Employees can obtain confidential, trauma-informed counseling and support. These resources include the Sexual Assault Resource Agency ((434) 977-7273), pursuant to a separate Memorandum of Understanding with the University; the Shelter for Help in Emergency ((434) 293-8509); and the Family Violence and Sexual Assault Virginia Hotline ((800) 838-8238, or text at (804) 793-9999).

Students can also obtain such counseling at Counseling and Psychological Services within Student Health and at the Women's Center ((434) 982-2903). For a complete list of University and community-based confidential resources for Students, see the Student Resource Guide (Appendix A-1).

Employees can also obtain such counseling through the Faculty and Employee Assistance Program ((434) 243-2643). For a complete list of University and community-based confidential resources for Employees, see the Employee Resource Guide (Appendix B-1).

## D. REPORTING

There are multiple channels for reporting Prohibited Conduct. A Complainant may choose to report to the University, to law enforcement, to both, or to neither. These reporting options are not exclusive. Complainants may simultaneously pursue criminal and disciplinary action. The University will support Complainants in understanding, assessing and pursuing these options.

### 1. Law Enforcement

Complainants have the right to notify or decline to notify law enforcement. In keeping with its commitment to taking all appropriate steps to eliminate, prevent, and remedy all Prohibited Conduct, the University urges Complainants to report Prohibited

Exhibit 3

Conduct *immediately* to local law enforcement by contacting:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking Emergency Protective Orders. Although a police report may be made at any time, Complainants should be aware that a one-year statute of limitations may apply to certain misdemeanors in Virginia. The University will assist Complainants in notifying law enforcement if they choose to do so.

### 2. The University

The University also urges anyone who becomes aware of an incident of Prohibited Conduct to report the incident *immediately* to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or any Deputy Title IX Coordinator by telephone, email, or in person during regular office hours at their respective locations, email addresses and/or phone numbers listed in Section IV, above; or
- Through *Just Report It*, the University's website for online reporting (which also allows for anonymous reporting).

There is no time limit for reporting Prohibited Conduct to the University under this policy; however, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer a Student or an Employee, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take reasonable steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

The University will not pursue disciplinary action against Complainants or witnesses for disclosure of illegal personal consumption of drugs or alcohol where such disclosures are made in connection with a good faith report or investigation of Prohibited Conduct. Complainants may simultaneously pursue criminal and University complaints.

## VI. PROHIBITED CONDUCT UNDER THIS POLICY

Conduct under this policy is prohibited regardless of the sex, sexual orientation and/or gender identity/expression of the Complainant or Respondent. Prohibited Conduct includes the following

Exhibit 3

specifically defined forms of behavior: Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity, and Retaliation.

## A. SEXUAL ASSAULT

Sexual Assault consists of (1) Sexual Contact and/or (2) Sexual Intercourse that occurs without (3) Affirmative Consent.

**1. Sexual Contact** is:

- Any intentional sexual touching
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Contact includes (a) intentional touching of the breasts, buttocks, groin or genitals, whether clothed or unclothed, or intentionally touching another with any of these body parts; and (b) making another touch you or themselves with or on any of these body parts.

**2. Sexual Intercourse** is:

- Any penetration
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Intercourse includes (a) vaginal penetration by a penis, object, tongue, or finger; (b) anal penetration by a penis, object, tongue, or finger; and (c) any contact, no matter how slight, between the mouth of one person and the genitalia of another person.

**3. Affirmative Consent** is:

- Informed (knowing)
- Voluntary (freely given)
- Active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed-upon sexual activity

Affirmative Consent cannot be obtained by Force. Force includes (a) the use of physical violence, (b) threats, (c) intimidation, and/or (d) coercion.

a) Physical violence means that a person is exerting control over another person through the use of physical force. Examples of physical violence include

Exhibit 3

hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

b) Threats are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples include threats to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

c) Intimidation is an implied threat that menaces or causes reasonable fear in another person. A person's size, alone, does not constitute intimidation; however, a person's size may be used in a way that constitutes intimidation (e.g., blocking access to an exit).

d) Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of Sexual Contact or Sexual Intercourse, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider: (i) the frequency of the application of the pressure, (ii) the intensity of the pressure, (iii) the degree of isolation of the person being pressured, and (iv) the duration of the pressure.

Affirmative Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. Incapacitation means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity.

A person who is incapacitated is unable, temporarily or permanently, to give Affirmative Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

The University offers the following guidance on Affirmative Consent and assessing incapacitation:

A person who wants to engage in a specific sexual activity is responsible for obtaining Affirmative Consent for that activity. Lack of protest does not constitute Affirmative Consent. Lack of resistance does not constitute Affirmative Consent. Silence and/or passivity also do not constitute Affirmative Consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Policy. It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to talk with one another before engaging in sexual activity. If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarify a mutual willingness to continue that activity.

Exhibit 3

Affirmative Consent to one form of sexual activity does not, by itself, constitute Affirmative Consent to another form of sexual activity. For example, one should not presume that Affirmative Consent to oral-genital contact constitutes Affirmative Consent to vaginal or anal penetration. Affirmative Consent to sexual activity on a prior occasion does not, by itself, constitute Affirmative Consent to future sexual activity. In cases of prior relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of Affirmative Consent.

Affirmative Consent may be withdrawn at any time. An individual who seeks to withdraw Affirmative Consent must communicate, through clear words or actions, a decision to cease the sexual activity. Once Affirmative Consent is withdrawn, the sexual activity must cease immediately.

In evaluating Affirmative Consent in cases of alleged incapacitation, the University asks two questions: (1) *Did the person initiating sexual activity know that the other party was incapacitated? and if not,* (2) *Should a sober, reasonable person in the same situation have known that the other party was incapacitated?* If the answer to either of these questions is "YES," Affirmative Consent was absent and the conduct is likely a violation of this policy.

Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated merely as a result of drinking or using drugs. The impact of alcohol and other drugs varies from person to person.

One is not expected to be a medical expert in assessing incapacitation. One must look for the common and obvious warning signs that show that a person may be incapacitated or approaching incapacitation. Although every individual may manifest signs of incapacitation differently, typical signs include slurred or incomprehensible speech, unsteady gait, combativeness, emotional volatility, vomiting, or incontinence. A person who is incapacitated may not be able to understand some or all of the following questions: "Do you know where you are?" "Do you know how you got here?" "Do you know what is happening?" "Do you know whom you are with?"

One should be cautious before engaging in Sexual Contact or Sexual Intercourse when either party has been drinking alcohol or using other drugs. The introduction of alcohol or other drugs may create ambiguity for either party as to whether Affirmative Consent has been sought or given. If one has doubt about either party's level of intoxication, the safe thing to do is to forego all sexual activity.

***Being impaired by alcohol or other drugs is no defense to any violation of this policy.***

B. SEXUAL EXPLOITATION

Sexual Exploitation is purposely or knowingly doing any of the following:

- Causing the incapacitation of another person (through alcohol, drugs, or any other

Exhibit 3

means) for the purpose of compromising that person's ability to give Affirmative Consent to sexual activity;

- Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images);
- Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy);
- Recording or photographing private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Disseminating or posting images of private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Prostituting another person; or
- Exposing another person to a sexually transmitted infection or virus without the other's knowledge.

## C. INTIMATE PARTNER VIOLENCE

Intimate Partner Violence includes any act of violence or threatened act of violence that occurs between individuals who are involved or have been involved in a sexual, dating, spousal, domestic, or other intimate relationship.[1] Intimate Partner Violence may include any form of Prohibited Conduct under this policy, including Sexual Assault, Stalking, and Physical Assault (as defined below).

Physical Assault is threatening or causing physical harm or engaging in other conduct that threatens or endangers the health or safety of any person. Physical Assault will be addressed under this policy if it involves Sexual or Gender-Based Harassment, Intimate Partner Violence, or is part of a course of conduct under the Stalking definition.

## D. STALKING[2]

Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property. Substantial emotional distress means significant mental suffering or anguish.

---

[1] Intimate Partner Violence includes "dating violence" and "domestic violence," as defined by VAWA. Consistent with VAWA, the University will evaluate the existence of an intimate relationship based upon the Complainant's statement and taking into consideration the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.
[2] This definition is consistent with VAWA.

Exhibit 3

Stalking includes "cyber-stalking," a particular form of stalking in which a person uses electronic media, such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact.

## E. SEXUAL OR GENDER-BASED HARASSMENT

**Sexual Harassment** is any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when the conditions outlined in (1) and/or (2), below, are present.

**Gender-Based Harassment** includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve conduct of a sexual nature, when the conditions outlined in (1) and/or (2), below, are present.

(1) Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "*quid pro quo*" harassment); or

(2) Such conduct creates a hostile environment. A "hostile environment" exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities. Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective. In evaluating whether a hostile environment exists, the University will consider the totality of known circumstances, including, but not limited to:

- The frequency, nature and severity of the conduct;
- Whether the conduct was physically threatening;
- The effect of the conduct on the Complainant's mental or emotional state;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct;
- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities; and
- Whether the conduct implicates concerns related to academic freedom or protected speech.

Exhibit 3

A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical. A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment. In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment.

### F. RETALIATION

Retaliation means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding under this policy. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of Prohibited Conduct. Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct.

### G. COMPLICITY

Complicity is any act taken with the purpose of aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person.

## VII. VIOLATIONS OF LAW

Behavior that violates this policy may also constitute a crime under the laws of the jurisdiction in which the incident occurred. For example, the Commonwealth of Virginia criminalizes and punishes some forms of Sexual Assault, Intimate Partner Violence, Sexual Exploitation, Stalking, and Physical Assault. The criminal statutes that may apply in cases of Physical Assault and Intimate Partner Violence are found in various sections of Chapter 4, Articles 1 (Homicide) and 4 (Assaults and Bodily Woundings), of Title 18.2 of the Code of Virginia. The criminal statutes relating to Sexual Assault are found in Sections 18.2-61 to 18.2-67.10 of the Code of Virginia. Section 18.2-60.3 of the Code of Virginia defines and identifies the penalty for criminal stalking. Finally, Sections 18.2-386.1 and 18.2-386.2 of the Code of Virginia provide for criminal penalties in some cases of Sexual Exploitation. This compilation of criminal statutes is not exhaustive, but is offered to notify the University community that, some forms of Prohibited Conduct may also constitute crimes under Virginia law, which may subject a person to criminal prosecution and punishment in addition to any sanctions under this policy.

## VIII. PREVENTION AND AWARENESS PROGRAMS

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs. Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and

Exhibit 3

current Employees receive ongoing training and related education. For a description of the University's Prohibited Conduct prevention and awareness programs, including programs on minimizing the risk of incidents of Prohibited Conduct and bystander intervention, see Appendix C.

## IX.    TRAINING

The University provides training to Students and Employees to ensure they understand this policy and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination.  For a description of the University's training related to this policy, see Appendix C.

## X.    RELATED POLICIES

### A. STUDENTS

Standards of Conduct: www.student.virginia.edu/~judic/standards-of-conduct.

Rights of Students at the University of Virginia Pursuant to the Family Educational Rights and Privacy Act (FERPA): http://uvapolicy.virginia.edu/policy/STU-002.

### B. EMPLOYEES

Reporting Policy: http://uvapolicy.virginia.edu/policy/HRM-040.

### C. EMPLOYEES AND THIRD PARTIES

Preventing and Addressing Discrimination and Harassment: http://uvapolicy.virginia.edu/policy/HRM-009.

Preventing and Addressing Retaliation: http://uvapolicy.virginia.edu/policy/HRM-010.

## XI.    OBLIGATION TO PROVIDE TRUTHFUL INFORMATION

All University community members are expected to provide truthful information in any report or proceeding under this policy.  Submitting or providing false or misleading information in bad faith or with a view to personal gain or intentional harm to another in connection with an incident of Prohibited Conduct is prohibited and subject to disciplinary sanctions under the University's Honor Code and disciplinary action under the appropriate Employee disciplinary policy.  This provision does not apply to reports made or information provided in good faith, even if the facts alleged in the report are not later substantiated.

## XII.    ANNUAL REVIEW

Exhibit 3

This policy is maintained by EOCR. The University will review and update this policy, as appropriate, by October 31 of each year. The University will evaluate, among other things, any changes in legal requirements, existing University resources, and the resolution of cases from the preceding year (including, but not limited to, timeframes for completion and sanctions and remedies imposed). The Title IX Coordinator shall certify to the State Council of Higher Education for Virginia that this policy has been reviewed and updated, as appropriate, in accordance with Virginia law.

Exhibit 4

APPENDIX A

UNIVERSITY OF VIRGINIA

# PROCEDURES FOR REPORTS AGAINST STUDENTS

INVESTIGATING AND RESOLVING REPORTS OF SEXUAL AND GENDER-BASED
HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE
COMMITTED BY STUDENTS UNDER THE POLICY

## Table of Contents

I. INTRODUCTION ........................................................................................... 2

II. REPORTING ................................................................................................. 2

III. EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS ..................................... 3

IV. INITIAL ASSESSMENT ................................................................................. 5

V. THREAT ASSESSMENT ................................................................................. 6

   A. EVALUATION PANEL ............................................................................. 6

   B. HEALTH AND SAFETY THREAT ASSESSMENT ......................................... 6

      1. Risk Factors ................................................................................. 6

      2. Disclosure(s) of Information to Law Enforcement ............................ 7

   C. UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT
      ASSESSMENT ........................................................................................ 8

      1. Where the Complainant Wishes to Pursue Formal Resolution ..................... 8

      2. Where the Complainant Requests Anonymity, that an Investigation not be Pursued,
         and/or that No Disciplinary Action Be Taken ........................................ 8

   D. NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS 10

   E. NOTICE OF POTENTIAL UNIVERSITY ACTIONS AGAINST STUDENT GROUPS
      OR ORGANIZATIONS ............................................................................. 10

VI. UNIVERSITY RESOLUTION ........................................................................... 11

   A. FORMAL RESOLUTION ........................................................................... 11

      1. Investigation ................................................................................. 11

      2. Acceptance of Responsibility ........................................................... 16

Exhibit 4

3. Review Panel Hearing................................................................................. 16

B. ALTERNATIVE RESOLUTION ................................................................. 21

C. ACADEMIC TRANSCRIPT NOTATIONS .................................................. 23

D. RECORDS RETENTION ............................................................................ 23

## I.   **INTRODUCTION**

The University of Virginia (the "University") is committed to providing a safe and non-discriminatory environment for all members of the University community.  The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity and Retaliation (together, "Prohibited Conduct"). These forms of Prohibited Conduct are defined in the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (the "Policy"). This Appendix identifies the procedures (the "Procedures") the University follows when it receives a report alleging Prohibited Conduct by a Student.   The University uses these Procedures to investigate and adjudicate any such allegations and to impose disciplinary sanctions against Students found responsible for violating the Policy.[1]

## II.   **REPORTING**

The University encourages anyone[2] who experiences or becomes aware of an incident of Prohibited Conduct involving a Student to ***immediately*** report the incident to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or Deputy Title IX Coordinator:

  **Emily Babb,** Assistant Vice President for Title IX Compliance/Title IX Coordinator
  O'Neil Hall, Terrace Level, Room 037
  ecb6y@virginia.edu or titleixcoordinator@virginia.edu
  (434) 297-7643

---

[1] These Procedures should be read in conjunction with the Policy.  Capitalized terms used and not otherwise defined in these Procedures are defined in the Policy.  For purposes of these Procedures, the "Title IX Coordinator" means the Title IX Coordinator, Deputy Title IX Coordinator, and/or any of their respective trained designees.

[2] Pursuant to University policy, certain University employees, called "Responsible Employees," are *required* to report to the Title IX Coordinator all information disclosed to them about an incident of Prohibited Conduct.  See "Reporting by University Employees of Disclosures Relating to Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence."

Exhibit 4

**Akia Haynes**, Deputy Title IX Coordinator/Investigator
Title IX Office
O'Neil Hall, Terrace Level Room 036
(434) 924-1696
aah6n@virginia.edu

- Through ***Just Report It***, the University's website for online reporting (which allows for anonymous reporting).

A Complainant may choose to make a report to the University to pursue resolution under these Procedures and may also choose to make a report to law enforcement. A Complainant may pursue either or both of these options at the same time. As set forth in the Policy, a Complainant who wishes to pursue criminal action in addition to, or instead of, making a report under these Procedures should contact law enforcement directly:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

The University also offers access to confidential resources for individuals who are unsure about whether to report Prohibited Conduct or are seeking counseling or other emotional support in addition to (or without) making a report to the University. The following guides identify confidential resources, both at the University and in the Charlottesville community, and further explain options for reporting Prohibited Conduct to the University and to law enforcement:

- Students may refer to the Student Resource Guide (Appendix A-1);
- Employees may refer to the Employee Resource Guide (Appendix B-1);
- Third Parties may contact the University's Title IX Coordinator.

Complainants are entitled to receive information, assistance and a broad range of support and remedial measures regardless of whether they choose to pursue criminal and/or University disciplinary resolution of Prohibited Conduct. The Student and Employee Resource Guides outline these resources and remedial measures and describe how to request them.

## III.    EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS

Pursuant to these Procedures, Complainants and Respondents can expect:

A.  Prompt and equitable resolution of allegations of Prohibited Conduct;

Exhibit 4

B. Privacy in accordance with the Policy and any legal requirements;

C. Reasonably available interim remedial measures, as described in these Procedures and in the applicable Resource Guide;

D. Freedom from Retaliation for making a good faith report of Prohibited Conduct or participating in any proceeding under the Policy;

E. The responsibility to refrain from Retaliation directed against any person for making a good faith report of Prohibited Conduct or participating in any proceeding under the Policy;

F. The responsibility to provide truthful information in connection with any report, investigation, or resolution of Prohibited Conduct under the Policy or these Procedures;

G. The opportunity to articulate concerns or issues about proceedings under the Policy and these Procedures;

H. Timely notice of any meeting or proceeding at which the party's presence is contemplated by these Procedures;

I. The opportunity to choose an advisor, including the right to have that advisor attend any meeting or proceeding at which the party's presence is contemplated by these Procedures;

J. Written notice of an investigation, including notice of potential Policy violations and the nature of the alleged Prohibited Conduct;

K. The opportunity to challenge the Investigator or any member of the Review Panel for bias or conflict of interest;

L. The opportunity to offer information, present evidence, and identify witnesses during an investigation;

M. The opportunity to be heard, orally and/or in writing, as to the determination of a Policy violation and the imposition of any sanction(s);

N. Timely and equal access to any information that will be used during Alternative or Formal Resolution proceedings and related meetings;

O. Reasonable time to prepare any response contemplated by these Procedures;

P. Written notice of any extension of timeframes for good cause; and

Q. Written notice of the outcome of any Formal Resolution proceedings, including the determination of a Policy violation, imposition of any sanction(s), and the rationale for each.

Exhibit 4

## IV.    INITIAL ASSESSMENT

Upon receipt of a report of Prohibited Conduct committed by a Student, the Title IX Coordinator will make an initial assessment of the reported information and respond to any immediate health or safety concerns raised by the report. In this initial assessment, the Title IX Coordinator will:

A. Assess the Complainant's safety and well-being and offer the University's immediate support and assistance;

B. Inform the Complainant of the right to seek medical treatment, and explain the importance of obtaining and preserving forensic and other evidence;

C. Inform the Complainant of the right to contact law enforcement, decline to contact law enforcement, and/or seek a protective order;

D. Inform the Complainant about University and community resources, the right to seek appropriate and available remedial and protective measures, and how to request those resources and measures;

E. Inform the Complainant of the right to seek Alternative Resolution (where available) or Formal Resolution under these Procedures; ascertain the Complainant's expressed preference (if the Complainant has, at the time of the initial assessment, expressed a preference) for pursuing Alternative Resolution, Formal Resolution, or neither; and discuss with the Complainant any concerns or barriers to participating in any University investigation and resolution under these Procedures;

F. Explain the University's prohibition against Retaliation and that the University will take prompt action in response to any act of Retaliation;

G. Assess the nature and circumstances of the report, including whether it provides the names and/or any other information that personally identifies the Complainant, the Respondent, any witness, and/or any other third party with knowledge of the reported incident;

H. Ascertain the ages of the Complainant and the Respondent, if known, and, if either of the parties is a minor (under 18), contact the appropriate child protective service agency; and

I. Communicate with appropriate University officials to determine whether the report triggers any Clery Act obligations, including entry of the report in the daily crime log and/or issuance of a timely warning, and take steps to meet those obligations.

The Title IX Coordinator will ensure that the Complainant receives a written explanation of all available resources and options and is offered the opportunity to meet to discuss those resources and options. When a decision is reached to initiate an investigation or to take any other action under these Procedures that impacts a Respondent (including the imposition of interim protective

Exhibit 4

measures), the Title IX Coordinator will ensure that the Respondent is notified, receives a written explanation of all available resources and options, and is offered the opportunity to meet to discuss those resources and options.

## V.    THREAT ASSESSMENT

Following the initial assessment, the Title IX Coordinator will promptly forward to an Evaluation Panel all information then known about the reported incident of Prohibited Conduct. Such information includes, if known, the names and/or any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident.

### A. EVALUATION PANEL

An Evaluation Panel will evaluate every report of Prohibited Conduct. The Evaluation Panel will convene (in person, by telephone, or by videoconference) within 72 hours after receiving information from the Title IX Coordinator, as described above, and will convene again, as necessary, to review new information as it becomes available. The Evaluation Panel may include any and all members of the University's Threat Assessment Team and shall include, at a minimum: (1) the Title IX Coordinator, (2) a representative of the University Police Department (the "UPD Representative"), and (3) a representative from the Division of Student Affairs. In addition, the Evaluation Panel may include a representative from Human Resources or the Office of the Provost, depending on the circumstances of the reported incident and the status of the Complainant and the Respondent.

The Evaluation Panel operates pursuant to Va. Code §23-9.2:15 (the "Virginia Reporting Statute") and has access, under Virginia law, to certain otherwise confidential information, including law enforcement records, criminal history record information, as provided in Va. Code §19.2-389 and §19.2-389.1; health records, as provided in Va. Code §32.1-127.1:03; University disciplinary, academic and/or personnel records; and any other information or evidence known to the University or to law enforcement. The Evaluation Panel may seek additional information about the reported incident through any other legally permissible means.

### B. HEALTH AND SAFETY THREAT ASSESSMENT

**1. Risk Factors**. The Evaluation Panel will determine whether the reported information and any other available information provides a rational basis for concluding that there is a threat to the health or safety of the Complainant or to any other member of the University community. The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances, and will be guided by a consideration of the following factors (the "Risk Factors"):

- Whether the Respondent has prior arrests, is the subject of prior reports and/or

Exhibit 4

complaints related to any form of Prohibited Conduct, or has any history of violent behavior;

- Whether the Respondent has a history of failing to comply with any University No-Contact Directive, other University protective measures, and/or any judicial protective order;
- Whether the Respondent has threatened to commit violence or any form of Prohibited Conduct;
- Whether the Prohibited Conduct involved multiple Respondents;
- Whether the Prohibited Conduct involved physical violence. "Physical violence" means exerting control over another person through the use of physical force. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking and brandishing or using any weapon;
- Whether the report reveals a pattern of Prohibited Conduct (e.g., by the Respondent, by a particular group or organization, around a particular recurring event or activity, or at a particular location);
- Whether the Prohibited Conduct was facilitated through the use of "date-rape" or similar drugs or intoxicants;
- Whether the Prohibited Conduct occurred while the Complainant was unconscious, physically helpless or unaware that the Prohibited Conduct was occurring;
- Whether the Complainant is (or was at the time of the Prohibited Conduct) a minor (under 18); and/or
- Whether any other aggravating circumstances or signs of predatory behavior are present.

2. **Disclosure(s) of Information to Law Enforcement**. Pursuant to the Virginia Reporting Statute, the Evaluation Panel is *required* to disclose information about alleged Prohibited Conduct to law enforcement in the following circumstances:

a) If the Evaluation Panel (or, in the absence of consensus within the Evaluation Panel, the UPD Representative) concludes that there is a significant and articulable threat to the health or safety of the Complainant or to any other member of the University community and that disclosure of available information (including the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident) is necessary to protect the health or safety of the Complainant or other individuals, the UPD Representative will immediately disclose the information to the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct.[3] The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances and consideration of the list of Risk Factors, as described in Section V.B.1 of these Procedures. The Title IX Coordinator will promptly notify the Complainant whenever such disclosure has been made.

---

[3] Where the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct is located outside of the United States, this disclosure is not required by the Virginia Reporting Statute.

Exhibit 4

b) If the alleged act of Prohibited Conduct constitutes a felony violation of the Code of Virginia, the UPD Representative will so inform the other members of the Evaluation Panel and will, within 24 hours, (i) consult with the appropriate Commonwealth's Attorney or other prosecutor who would be responsible for prosecuting the alleged act of Prohibited Conduct (the "Prosecuting Authority"), and (ii) disclose to the Prosecuting Authority the information then known to the Evaluation Panel. This disclosure is required by the Virginia Reporting Statute where the alleged act of Prohibited Conduct would violate Article 7 (§18.2-61 et seq.) of Chapter 4 of title 18.2 of the Code of Virginia. Such disclosure will exclude the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident (the "Identifying Information"), unless the Identifying Information was disclosed to law enforcement under the health and safety exception described in paragraph (a), above, in which case the Identifying Information also will be disclosed to the Prosecuting Authority. If the UPD Representative declines to so consult with the Prosecuting Authority, any member of the Evaluation Panel who individually concludes that the alleged act of Prohibited Conduct would constitute such a felony violation may consult with the Prosecuting Authority and make the required disclosure(s) in the manner and within the timeframe set forth above.

The Evaluation Panel will reconvene as necessary to continue to evaluate whether any new or additional information received triggers any further obligation(s) under the Clery Act or with respect to any child protective service agency, and will direct the Title IX Coordinator to take such further actions, as necessary.

C. UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT ASSESSMENT

Upon completion of the health and safety threat assessment, the Evaluation Panel will determine the course of action under these Procedures, which may include, without limitation, Formal Resolution and/or Alternative Resolution (if available). Where the Complainant requests that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no further action be taken, the Evaluation Panel will seek to honor the preferences of the Complainant wherever possible. In all cases, the initial report, the health and safety threat assessment, and the determinations of the Evaluation Panel will be documented and retained by the University in accordance with applicable law.

1. **Where the Complainant Wishes to Pursue Formal Resolution.** In *every* case in which the Complainant reports Prohibited Conduct and requests an investigation and disciplinary action, the Title IX Coordinator will promptly initiate Formal Resolution under these Procedures.

2. **Where the Complainant Requests Anonymity, that an Investigation not be Pursued, and/or that No Disciplinary Action Be Taken.** A Complainant may

Exhibit 4

request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

The Evaluation Panel will consider the following factors in evaluating such request(s): (1) the totality of the known circumstances; (2) the presence of any Risk Factors, as described in Section V.B.1 of these Procedures; (3) the potential impact of such action(s) on the Complainant; (4) any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct; (5) the existence of any independent information or evidence regarding the Prohibited Conduct; and (6) any other available and relevant information. The University will seek to honor the Complainant's request(s) if it is possible to do so while also protecting the health and safety of the Complainant and the University community.

a) Determination that a Complainant's Request(s) **Can** be Honored. Where the Evaluation Panel determines that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) _can_ be honored, the University may nevertheless take other appropriate steps designed to eliminate the reported conduct, prevent its recurrence, and remedy its effects on the Complainant and the University community. Those steps may include offering appropriate remedial measures to the Complainant, providing targeted training or prevention programs, and/or providing or imposing other remedies tailored to the circumstances as a form of Alternative Resolution.

At any time, the Complainant may choose to pursue Alternative Resolution (if available) or Formal Resolution under these Procedures. The Title IX Coordinator also may request that a report be re-opened and pursued under these Procedures if any new or additional information becomes available.[4]

b) Determination that a Complainant's Request(s) **Cannot** be Honored. Where the Evaluation Panel has determined that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) _cannot_ be honored (i.e., because honoring the Complainant's request(s) would impede the University's ability to ensure the health and safety of the Complainant and other members of the University community), the Evaluation Panel will direct the Title IX Coordinator to take any appropriate University actions, which may include, without limitation, (i) causing the Dean of Students to impose a No Contact Directive or an Interim Disciplinary Suspension on the Respondent; (ii) causing the University Registrar to place a "hold" on the Respondent's University transcript; (iii) initiating an investigation and Formal Resolution under these

---

[4] Although a report may be re-opened at any time, the University will only be able to pursue disciplinary resolution and sanctions where the Respondent continues to be a University "Student" (i.e., continues to be registered or enrolled for credit- or non-credit-bearing coursework at the University).

Exhibit 4

Procedures; and/or (iv) arranging, imposing, or extending any other appropriate remedial and/or protective measures.

Where the Evaluation Panel has determined that the University must proceed with an investigation despite a Complainant's request to the contrary, the Title IX Coordinator will make reasonable efforts to protect the privacy of the Complainant. However, actions that may be required as part of the University's investigation will involve speaking with the Respondent and others who may have relevant information, in which case the Complainant's identity may have to be disclosed. In such cases, the Title IX Coordinator will notify the Complainant that the University intends to proceed with an investigation, but that the Complainant is not required to participate in the investigation or in any other actions undertaken by the University.

Where a Complainant declines to participate in an investigation, the University's ability to meaningfully investigate and respond to a report may be limited. In such cases, the Title IX Coordinator may pursue the report if it is possible to do so without the Complainant's participation in the investigation or resolution (e.g., where there is other relevant evidence of the Prohibited Conduct, such as recordings from security cameras, corroborating reports from other witnesses, physical evidence, or any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct). In the absence of such other evidence, however, the University will only be able to respond to the report in limited and general ways (i.e., through the provision of remedial measures, targeted training or prevention programs, or other remedies tailored to the circumstances).

D. NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS

The Title IX Coordinator will promptly inform the Complainant of any action(s) undertaken by the University to respond to a health or safety threat to the Complainant or the University community, including the decision to proceed with an investigation. The Title IX Coordinator also will promptly inform the Respondent of any action(s) (including any interim protective measures) that will directly impact the Respondent, and provide an opportunity for the Respondent to respond to such action(s). The Title IX Coordinator retains the discretion to impose and/or modify any interim protective measures based on all available information. Interim protective measures will remain in effect until the resolution of the report by the Review Panel, unless new circumstances arise which warrant reconsideration of the protective measures prior to the hearing and determination by the Review Panel. A Complainant or Respondent may challenge interim protective measures or other actions, or failure to impose interim protective measures or take other actions, by contacting the Title IX Coordinator to address any concerns.

E. NOTICE OF POTENTIAL UNIVERSITY ACTIONS AGAINST STUDENT GROUPS OR ORGANIZATIONS.

Exhibit 4

If, upon completion of the health and safety threat assessment, the Evaluation Panel determines that a report of Prohibited Conduct reveals involvement of, or a pattern of behavior by, a particular Student group or organization (e.g., agency group, special status organization, fraternity, sorority, contracted independent organization, club sport, and/or athletic team), the Evaluation Panel will direct the Title IX Coordinator to impose any appropriate remedial or protective measures contemplated by these Procedures (e.g., training and/or prevention programs targeted to Student members of the group or organization). The Title IX Coordinator will also consult with relevant University officials regarding any appropriate University action directed at the Student group or organization, including, but not limited to, modification, suspension or termination of the Student group's or organization's agreement or status with the University.

## VI.    UNIVERSITY RESOLUTION

These Procedures offer two forms of resolution of reports of Prohibited Conduct: (1) Formal Resolution, which involves an investigation, and review and sanction (if applicable) by a Review Panel (as described in Section VI.A.3 of these Procedures), and (2) Alternative Resolution (as described in Section VI.B of these Procedures), which includes a variety of informal options for resolving reports.

### A.  FORMAL RESOLUTION

Formal Resolution is commenced when:

- A Complainant reports that a Student has engaged in one or more instances of Prohibited Conduct and requests, at any time, an investigation and disciplinary action; or
- Alternative Resolution does not resolve a reported incident of Prohibited Conduct and, in the Title IX Coordinator's discretion, an investigation of the report of Prohibited Conduct is required; or
- At the conclusion of the threat assessment process described in Section V.B of these Procedures, the Evaluation Panel has determined, based upon a review of the totality of the circumstances and guided by a consideration of the Risk Factors, that investigation of the reported conduct is necessary to ensure the health and safety of the Complainant and/or other members of the University community, notwithstanding the Complainant's request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

1. **Investigation**. Whenever Formal Resolution is commenced, the Title IX Coordinator will designate one or more Investigators from the University's Office for Equal Opportunity and Civil Rights and/or an experienced external investigator to conduct a prompt, thorough, fair, and impartial investigation. All Investigators will receive annual training on issues related to sexual and gender-based harassment, sexual assault, dating violence, domestic violence, and stalking, and

Exhibit 4

on how to conduct an investigation that is fair and impartial, provides parties with notice and a meaningful opportunity to be heard, and protects the safety of Complainants and the University community while promoting accountability.

a) Notice of Investigation. The Title IX Coordinator will notify the Complainant and the Respondent, in writing, of the commencement of an investigation. Such notice will (1) identify the Complainant and the Respondent; (2) specify the date, time (if known), location, and nature of the alleged Prohibited Conduct; (3) identify potential Policy violation(s); (4) identify the Investigator; (5) include information about the parties' respective expectations under the Policy and these Procedures; (6) explain the prohibition against Retaliation; (7) instruct the parties to preserve any potentially relevant evidence in any format; (8) inform the parties how to challenge participation by the Investigator on the basis of bias or a conflict of interest; and (9) provide a copy of the Policy and these Procedures.

b) Other Forms of Discriminatory and/or Harassing Conduct. If a report of Prohibited Conduct also implicates other forms of discriminatory and/or harassing conduct prohibited by the University's Preventing and Addressing Discrimination and Harassment (PADH) policy and/or any other violation(s) of the University's Standards of Conduct, the Title IX Coordinator will evaluate all reported allegations to determine whether the alleged Prohibited Conduct and the alleged PADH violation(s) and/or alleged Standard of Conduct violation(s) may be appropriately investigated together without unduly delaying the resolution of the report of Prohibited Conduct. Where the Title IX Coordinator determines that a single investigation is appropriate, the determination of responsibility for the violation of University policy will be evaluated under the applicable policy (i.e., the Policy, the PADH policy, and/or the Standards of Conduct), but the investigation and resolution will be conducted in accordance with these Procedures.

c) Presumption of Non-Responsibility and Participation by the Parties. The investigation is a neutral fact-gathering process. The Respondent is presumed to be not responsible; this presumption may be overcome only where the Investigator and/or Review Panel conclude that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding that the Respondent violated the Policy. Neither party is required to participate in the investigation or any form of resolution under these Procedures, and the Investigator will not draw any adverse inference from a decision by either of the parties not to participate.

d) Timeframe for Completion of Investigation; Extension for Good Cause. Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days. This timeframe may be extended for good cause, which may exist if additional time is necessary to ensure the integrity and completeness of the investigation, to comply with a request by external law enforcement for temporary delay to gather evidence for a criminal investigation, to

Exhibit 4

accommodate the availability of witnesses, to account for University breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or for other legitimate reasons. The Investigator will notify the parties in writing of any extension of this timeframe and the reason for such extension.

e) <u>Overview of Investigation</u>. During the investigation, the parties will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit questions that they believe should be directed by the Investigator to each other or to any witness. The Investigator will notify and seek to meet separately with the Complainant, the Respondent, and third-party witnesses, and will gather other relevant and available evidence and information, including, without limitation, electronic or other records of communications between the parties or witnesses (via voice-mail, text message, email and social media sites), photographs (including those stored on computers and smartphones), and medical records (subject to the consent of the applicable party).

f) <u>Advisors</u>. Throughout the investigation and resolution process, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness involved in the investigation. The parties may be accompanied by their respective advisors at any meeting or proceeding related to the investigation and resolution of a report under these Procedures. While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

g) <u>Prior or Subsequent Conduct</u>. Prior or subsequent conduct of the Respondent may be considered in determining pattern, knowledge, intent, motive, or absence of mistake. For example, evidence of a pattern of Prohibited Conduct by the Respondent, either before or after the incident in question, regardless of whether there has been a prior finding of a Policy violation, may be deemed relevant to the determination of responsibility for the Prohibited Conduct under investigation. The determination of relevance of pattern evidence will be based on an assessment of whether the previous or subsequent conduct was substantially similar to the conduct under investigation or indicates a pattern of similar Prohibited Conduct. Such prior or subsequent conduct may also constitute a violation of the PADH policy and/or the University's Standards of Conduct, in which case it may subject the Respondent to additional sanctions. The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior or subsequent conduct is deemed relevant.

h) <u>Prior Sexual History</u>. The sexual history of a Complainant or Respondent will never be used to prove character or reputation. Moreover, evidence related to the prior sexual history of either of the parties is generally not relevant to the

Exhibit 4

determination of a Policy violation and will be considered only in limited circumstances. For example, if the existence of Affirmative Consent is at issue, the sexual history between the parties may be relevant to help understand the manner and nature of communications between the parties and the context of the relationship, which may have bearing on whether Affirmative Consent was sought and given during the incident in question. However, even in the context of a relationship, Affirmative Consent to one sexual act does not, by itself, constitute Affirmative Consent to another sexual act, and Affirmative Consent on one occasion does not, by itself, constitute Affirmative Consent on a subsequent occasion. In addition, prior sexual history may be relevant to explain the presence of a physical injury or to help resolve another question raised by the report. The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior sexual history is deemed relevant.

i) <u>Relevance</u>. The Investigator has the discretion to determine the relevance of any proffered evidence and to include or exclude certain types of evidence. In general, the Investigator will not consider statements of personal opinion, rather than direct observations or reasonable inferences from the facts, or statements as to any party's general reputation for any character trait.

j) <u>Site Visit(s)</u>. The Investigator may visit relevant sites or locations and record observations through written, photographic, or other means.

k) <u>Expert Consultation(s)</u>. The Investigator may consult medical, forensic, technological or other experts when expertise on a topic is needed in order to achieve a fuller understanding of the issues under investigation.

l) <u>Coordination with Law Enforcement</u>. The Investigator will contact any law enforcement agency that is conducting its own investigation to inform that agency that a University investigation is also in progress; to ascertain the status of the criminal investigation; and to determine the extent to which any evidence collected by law enforcement may be available to the University in its investigation. At the request of law enforcement, the Investigator may delay the University investigation temporarily while an external law enforcement agency is gathering evidence. The Investigator will promptly resume the University investigation when notified that law enforcement has completed the evidence-gathering stage of its criminal investigation.

m) <u>Draft Investigation Report</u>. At the conclusion of the investigation, the Investigator will prepare a Draft Investigation Report summarizing the information gathered and outlining the contested and uncontested information. The Draft Investigation Report will not include any findings. The Complainant and the Respondent will have an opportunity to review the Draft Investigation Report; meet with the Investigator; submit additional comments and information to the Investigator; identify any additional witnesses or evidence for the Investigator to pursue; and submit any further questions that they believe

Exhibit 4

should be directed by the Investigator to the other party or to any witness. The Investigator will designate a reasonable time for this review and response by the parties, not to exceed five (5) calendar days. In the absence of good cause, information discoverable through the exercise of due diligence that is not provided to the Investigator during the designated review and response period will not be considered in the determination of responsibility for a violation of the Policy, and will not be considered by the Review Panel.

n) <u>Final Investigation Report</u>. Unless there are significant additional investigative steps requested by the parties or identified by the Investigator, within five (5) calendar days after receipt and consideration of any additional comments, questions and/or information submitted by the parties during the designated review and response period, the Investigator will prepare a Final Investigation Report, which will include a recommendation as to whether there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility for a violation of the Policy (and, where applicable, the PADH policy and/or the University's Standards of Conduct). In reaching this recommended finding, the Investigator will consult with the Office of University Counsel. The Investigator will deliver the Final Investigation Report to the Title IX Coordinator. The Title IX Coordinator will notify both parties, simultaneously, that the Final Investigation Report is complete and available for review.

o) <u>Recommended Finding(s) of Responsibility</u>. When the Investigator determines that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Respondent may accept or contest such recommended finding(s) by so notifying the Title IX Coordinator, in writing. If the Respondent accepts the recommended finding(s) of responsibility, the Title IX Coordinator will refer the case for a Hearing before the Review Panel solely on the issue of sanction, as outlined in Section VI.A.3(g) of these Procedures. If the Respondent contests one or more of the recommended finding(s), the Respondent may submit to the Title IX Coordinator a written statement explaining why the Respondent contests such finding(s). The Title IX Coordinator will ensure that the Complainant has an opportunity to review and respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.A.3 of these Procedures.

p) <u>Recommended Finding(s) of No Responsibility</u>. When the Investigator determines that there is insufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Complainant may accept or contest the recommended finding(s) by so notifying the Title IX Coordinator, in writing. If the Complainant accepts the recommended finding(s) of no responsibility, the investigation will be closed and documented in accordance with applicable University policies. If the Complainant contests one or more of the recommended finding(s), the

Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 46 of 92   Pageid#: 480

Exhibit 4

Complainant may submit to the Title IX Coordinator a written statement explaining why the Complainant contests such finding(s). The Title IX Coordinator will ensure that the Respondent has an opportunity to review and respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.A.3 of these Procedures.

q) <u>Impact and Mitigation Statements</u>. Where there is a finding of responsibility on one or more of the allegations, both parties may submit a statement to the Title IX Coordinator for consideration by the Review Panel in determining an appropriate sanction. The Complainant may submit a written statement describing the impact of the Prohibited Conduct on the Complainant and expressing a preference about the sanction(s) to be imposed. The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanctions(s) imposed. The Title IX Coordinator will ensure that each of the parties has an opportunity to review any statement submitted by the other party. The Title IX Coordinator will provide any statement(s) with the Final Investigation Report and the parties' other written submissions to the Review Panel.

r) <u>Timing of Investigation</u>. The investigation typically will be completed within forty-five (45) calendar days. This period may be extended to account for a previous attempt, if any, at Alternative Resolution, or for other good cause, as described Section VI.A.1(d) of these Procedures. Any extension, other than for Alternative Resolution, and the reason for the extension, will be shared with the parties in writing.

2. **Acceptance of Responsibility**. The Respondent may, at any time, elect to resolve the Formal Resolution process by accepting responsibility for the Prohibited Conduct, in which case the Title IX Coordinator will refer the matter to the Review Panel to determine the appropriate sanction(s).

3. **Review Panel Hearing.** The Title IX Coordinator will appoint a standing pool of trained members of the University community and, at the discretion of the Title IX Coordinator, external professionals with experience adjudicating cases of Prohibited Conduct. The Title IX Coordinator will select (a) three members from this pool to serve on the Review Panel, and (b) an additional member from this pool to serve as the non-voting Hearing Chair. The Review Panel will review the Investigator's recommended finding(s) and, if applicable, determine any appropriate sanction(s) under these Procedures. All persons serving on any Review Panel (or as the Hearing Chair) must be impartial and free from actual bias or conflict of interest.

a) <u>Standard of Review</u>. If either of the parties contests the Investigator's recommended finding(s) of responsibility (or no responsibility) for an alleged

Exhibit 4

violation of the Policy, the Review Panel will hold a Hearing to determine (1) whether the concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

b) <u>Notice and Timing of Hearing</u>. Typically, a Hearing will be held within fifty-five (55) calendar days from the date of the Notice of Investigation, subject to extension for good cause, as described in Section VI.A.1(d) of these Procedures. The Hearing Chair will notify the parties in writing of the date, time, and location of the Hearing; the names of the Review Panel members and the Hearing Chair; and how to challenge participation by any member of the Review Panel or the Hearing Chair for bias or conflict of interest. The Hearing will usually be scheduled within five (5) calendar days from the date of the Notice of Hearing, subject to extension for good cause at the discretion of the Title IX Coordinator. Good cause for extension may include the unavailability of the parties, the timing of semester breaks or University holidays, or other extenuating circumstances. Any extension, including the reason for the extension, will be shared with the parties in writing.

c) <u>Postponement of Hearing</u>. Permission to postpone a Hearing may be granted provided that the request to do so is based on a compelling emergency and communicated to the Hearing Chair prior to the time of the Hearing.

d) <u>Hearing Format</u>. The Hearing is an opportunity for the parties to address the Review Panel, in person about issues relevant to the Standard of Review to be applied by the Review Panel. The parties may address any information in the Final Investigation Report, supplemental statements submitted in response to the Final Investigation Report, and any impact and mitigation statements. Each party has the opportunity to be heard, to identify witnesses for the Review Panel's consideration, and to respond to any questions of the Review Panel. The parties may not directly question each another or any witness, although they may proffer questions for the Review Panel, which may choose, in its discretion, to pose appropriate and relevant questions to the Investigator, the parties and/or any witnesses. A typical hearing may include brief opening remarks by the Complainant and/or Respondent, with follow-up questions posed by the Review Panel; information presented by the Investigator or witnesses deemed relevant by the Review Panel, with follow-up questions by the Review Panel of the Investigator or witnesses; and brief concluding remarks by the Complainant and/or Respondent. The Chair of the Review Panel has the discretion to determine the specific Hearing format.

e) <u>Participation in Hearing</u>.

    i. <u>Parties</u>. Both the Complainant and the Respondent have a right to be present at the Hearing. Either party may request alternative methods for participating in the Hearing that do not require physical proximity to the other party,

Exhibit 4

including participating through electronic means. This request should be submitted to the Hearing Chair at least two (2) calendar days prior to the Hearing.

If, despite being notified of the date, time, and location of the Hearing, either party is not in attendance, the Hearing may proceed and applicable sanctions may be imposed. Neither party is required to participate in the Hearing in order for the Hearing to proceed.

ii. <u>Investigator or other witnesses</u>. The Review Panel may request the presence of the Investigator or any other witness it deems necessary to its determination. The parties may also request the presence of any witness they deem relevant to the determination by the Review Panel. The Review Panel has absolute discretion to determine which witnesses are relevant to its determination and may decline to hear from witnesses where it concludes that the information is not necessary for its review.

iii. <u>Advisors</u>. Both the Complainant and the Respondent have the right to be accompanied at the Hearing by an advisor of their choosing. The advisor may be anyone, including an attorney, who is not otherwise a party or witness. While the advisor may provide support and advice to a party at the Hearing, the advisor may not speak on behalf of the party or otherwise participate in, or in any manner disrupt, the Hearing. The University reserves the right to remove any individual whose actions are disruptive to the proceedings.

f) <u>Determination by the Review Panel</u>. Where either of the parties has contested the recommended finding(s) of responsibility, the members of the Review Panel will, at the conclusion of the Hearing, determine, by majority vote, (1) whether the concern(s) stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

If the Review Panel finds that concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, it will remand the matter to the Title IX Coordinator with instructions for further investigation or other action. The instructions may include guidance regarding the scope of information to be further investigated and any appropriate stipulations, including the appointment of a new Investigator.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, but determines there is insufficient evidence to support the Investigator's recommended finding, it may remand the matter for further investigation, or reject the Investigator's recommended finding(s) and make alternative finding(s).

Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 49 of 92   Pageid#: 483

Exhibit 4

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms that there is sufficient evidence to support a recommended finding of responsibility by a Preponderance of the Evidence, it will then determine, by majority vote, the appropriate sanction(s) for the Prohibited Conduct.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms a recommended finding of no responsibility, the matter will be considered resolved and the investigation will be closed. The Title IX Coordinator may nevertheless ensure that remedial measures remain in effect to support a Complainant.

g) <u>Sanctions</u>. Where there is a finding of responsibility, the Review Panel may impose one or more sanctions. Sanctions may include any of the sanctions that are available for violations of the University's Standards of Conduct, including:

- <u>Expulsion</u>: Termination of student status for any indefinite period.
- <u>Suspension</u>: Exclusion from classes and other privileges or activities or from the University for a definite period of time.
- <u>Suspension held in abeyance</u>: Exclusion from classes and other privileges or activities or from the University for a definite period of time to be enforced should another violation occur.
- <u>Restitution</u>: Reimbursement for damages or misappropriation of property.
- <u>Disciplinary Probation</u>: Exclusion from participation in privileged or extracurricular activities for a definite period of time.
- <u>Reprimand</u>: A written censure for violation of the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct) placed in the Student's record, including the possibility of more severe disciplinary sanctions should another violation occur within a stated period of time.
- <u>Warning Notice</u>: A notice, in writing, that continuation or repetition of conduct found wrongful, within a period of time stated in the warning, may be cause for more severe disciplinary action.
- <u>Admonition</u>: An oral statement that the Student violated the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct).

The Policy prohibits a broad range of conduct, all of which is serious in nature. The propriety of any particular sanction is reviewed on an individual basis based on the unique facts and circumstances as found by the Review Panel. In keeping with the University's commitment to foster an environment that is safe, inclusive, and free from discrimination and harassment, the Policy provides the Review Panel with wide latitude in the imposition of sanctions tailored to the facts and circumstances of the Prohibited Conduct, the impact of the conduct on the Complainant and University community, and accountability by the Respondent. The imposition of sanctions is designed to eliminate Prohibited

Exhibit 4

Conduct, prevent its recurrence, and remedy its effects, while supporting the University's educational mission and legal obligations. Sanctions may include educational, restorative, rehabilitative, and punitive components. Some conduct, however, is so egregious in nature, harmful to the individuals involved or so deleterious to the educational process that it requires severe sanctions, including suspension or expulsion from the University.

Once the Review Panel has determined that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility under the Policy, any one or more sanctions may be imposed. In determining the appropriate sanction(s), the Review Panel will be guided by a number of considerations, including:

- The severity, persistence or pervasiveness of the Prohibited Conduct;
- The nature or violence (if applicable) of the Prohibited Conduct;
- The impact of the Prohibited Conduct on the Complainant;
- The impact or implications of the Prohibited Conduct within the University community;
- Prior misconduct by the Respondent, including the Respondent's relevant prior disciplinary history, at the University or elsewhere, and any criminal convictions;
- Whether the Respondent has accepted responsibility for the Prohibited Conduct;
- The maintenance of a safe, nondiscriminatory and respectful environment conducive to learning; and
- Any other mitigating, aggravating, or compelling factors.

Sanctions are effective immediately, unless otherwise specified by the Review Panel.

In addition to other sanctions, the Review Panel may direct the Title IX Coordinator to impose or extend a No-Contact Directive and impose or extend academic, University housing and/or University employment modifications, as may be appropriate; impose or extend increased monitoring, supervision, and/or security at locations or in connection with activities where the Prohibited Conduct occurred or is likely to reoccur; arrange for conducting targeted or broad-based educational programming or training for relevant persons or groups; impose one or more restorative remedies to encourage a Respondent to develop insight about the Prohibited Conduct, learn about the impact of that Prohibited Conduct on the Complainant and the University community, and identify how to prevent that Prohibited Conduct in the future (including community service and mandatory participation in training, education and/or prevention programs related to the Prohibited Conduct); and/or impose any other remedial or protective measures that are tailored to achieve the goals of the Policy.

Exhibit 4

h) <u>Transcript Notations</u>. If the Review Panel imposes a sanction of expulsion or suspension, the Title IX Coordinator will notify the University Registrar to place a prominent notation on the Respondent's transcript, as described in Section VI.C of these Procedures.

i) <u>Decision of the Review Panel is Final</u>. The decision of the Review Panel is final, without further recourse or appeal by either party.

j) <u>Final Outcome Letter</u>. The Review Panel Chair will simultaneously issue a written decision (the "Final Outcome Letter") to both the Complainant and the Respondent, with a copy to the Title IX Coordinator, within five (5) calendar days following the Review Panel Hearing (or such longer time as the Chair may for good cause determine). The Final Outcome Letter will set forth the violation(s) of the Policy (and, if applicable, the PADH policy and/or the Standards of Conduct) for which the Respondent was found responsible or not responsible, as supported by the rationale set forth in the Final Investigation Report and/or modified by the Review Panel; the sanction(s) (if applicable) imposed against the Respondent; and the rationale for any sanction(s) imposed. The Final Outcome Letter may also identify protective measures implemented with respect to the Respondent or the broader University community. The Final Outcome Letter will not disclose any remedial measures provided to the Complainant.

k) <u>Release of Documents</u>. Under federal privacy laws, the Final Investigation Report, statements of one party that are shared with the other party in the resolution process, and any documents prepared by the University, including documents by or for the Review Panel in advance of the Hearing, constitute education records which may not be disclosed outside of the proceedings, except as may be required or authorized by law. The University does not, however, impose any restrictions on the parties regarding re-disclosure of the incident, their participation in proceedings under these Procedures, or the Final Outcome Letter.

## B. ALTERNATIVE RESOLUTION

The Complainant may seek Alternative Resolution in place of an investigation and Formal Resolution. The University, however, has the discretion to determine whether the nature of the reported conduct is appropriate for Alternative Resolution, to determine the type of Alternative Resolution that may be appropriate in a specific case, and, pursuant to Section V.C of these Procedures, to refer a report for Formal Resolution at any time. In addition, Alternative Resolution may not be available where the Evaluation Panel has determined that one or more of the Risk Factors listed in Section V.B.1 of these Procedures is present. **Forms of Alternative Resolution that involve face-to-face meetings between the Complainant and the Respondent, such as mediation, are not available in cases involving Sexual Assault.**

Participation in Alternative Resolution (including any specific form of Alternative

Exhibit 4

Resolution) is voluntary. The University will not compel a Complainant or Respondent to engage in Alternative Resolution, will not compel a Complainant to directly confront the Respondent, and will allow a Complainant or Respondent to withdraw from Alternative Resolution at any time. The University may decline the request for Alternative Resolution in any particular case and may terminate an ongoing Alternative Resolution process at any time. Pursuing Alternative Resolution does not preclude later use of Formal Resolution if the Alternative Resolution fails to achieve a resolution acceptable to the parties and the University. Where the Complainant or the Respondent withdraws from Alternative Resolution or Alternative Resolution is otherwise terminated for any reason, any statements or disclosures made by the parties during the course of the Alternative Resolution may be considered in a subsequent investigation and Formal Resolution.

With any form of Alternative Resolution, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness to the reported incident(s). The parties may be accompanied by their respective advisors at any meeting or proceeding held as part of Alternative Resolution. While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

Alternative Resolution may include:

- <u>Resolution with the Assistance of a Third Party</u>: A Complainant may seek assistance in informally resolving a report of Prohibited Conduct from the Title IX Coordinator, who can arrange to have a trained representative facilitate a meeting or meetings between the parties. The availability of this form of Alternative Resolution, and any resolution reached through such form of Alternative Resolution, is subject to the agreement of the Title IX Coordinator, the Complainant and the Respondent. This form of Alternative Resolution may not be used where the allegation involves Sexual Assault.
- <u>Interventions and Remedies</u>: Alternative Resolution agreements may involve a host of interventions and remedies, such as actions designed to maximize the Complainant's access to educational, extracurricular, and/or University employment activities; increased monitoring, supervision, and/or security at locations or activities where the Prohibited Conduct occurred or is likely to reoccur; targeted or broad-based educational programming or training for relevant individuals or groups; academic and/or University housing modifications for Student Complainants; workplace modifications for Employee Complainants; one or more of the restorative remedies or other sanctions described in these Procedures; and/or any other remedial or protective measures that can be tailored to the involved individuals to achieve the goals of the Policy.

Any form of Alternative Resolution and any combination of interventions and remedies may be utilized. If an agreement acceptable to the University, the Complainant, and the Respondent is reached through Alternative Resolution, the terms of the agreement are implemented and the matter is resolved and closed. If an agreement is not reached, and the

Exhibit 4

Title IX Coordinator determines that further action is necessary, or if a Respondent fails to comply with the terms of the Alternative Resolution, the matter may be referred for an investigation and Formal Resolution under these Procedures.

The Title IX Coordinator will maintain records of all reports and conduct referred for Alternative Resolution, which typically will be completed within thirty (30) calendar days.

## C. ACADEMIC TRANSCRIPT NOTATIONS

Pursuant to Va. Code §23-9.2:18, the Title IX Coordinator will direct the University Registrar to include a prominent notation on the academic transcript of any Student who has been (1) suspended, (2) expelled (i.e., permanently dismissed), or (3) who has withdrawn from the University while under investigation, for Prohibited Conduct pursuant to the Policy. Such notation will reflect, as appropriate, the following language: "[Suspended, Expelled, or Withdrew While Under Investigation] for a Violation of the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence." The Title IX Coordinator will direct the University Registrar to remove any such notation where (a) a Student is subsequently found not to have committed an act of Prohibited Conduct pursuant to the Policy, and/or (b) a Student who has been suspended for Prohibited Conduct pursuant to the Policy, has (i) completed the term of such suspension and any conditions thereof, and (ii) has been determined by the University to be in good standing pursuant to all applicable University academic and non-academic standards.

## D. RECORDS RETENTION

The University shall retain all records relating to a report of Prohibited Conduct for a period of ten years after the date the report was received, and the University shall retain all of such records for a period of twenty years in cases in which the Respondent was found responsible for Prohibited Conduct.

Exhibit 5

UNIVERSITY OF VIRGINIA

# RESOURCE AND REPORTING GUIDE FOR STUDENTS

## POLICY ON SEXUAL AND GENDER-BASED HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE

The University of Virginia (the "University") is committed to providing a safe and non-discriminatory environment for all members of the University community. The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity and Retaliation (together, "Prohibited Conduct"). These forms of Prohibited Conduct are defined in the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (the "Policy"). This Resource and Reporting Guide, referred to as the "Student Resource Guide" in the Policy, provides an overview of University and community resources, including confidential resources, and options for reporting Prohibited Conduct to law enforcement and/or to the University.[1]

When used in this Student Resource Guide, the term "Student" refers to Complainants, Respondents, witnesses or any other University student in need of information, assistance, or support. As outlined in the Policy, the University offers a wide range of resources for Students to provide support and guidance throughout the initiation, investigation and resolution of a report of Prohibited Conduct. The University will offer reasonable and appropriate measures to protect a Complainant and facilitate the Complainant's continued access to University employment or education programs and activities. These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (involving action against a Respondent). Remedial and protective measures, which may be temporary or permanent, may include no-contact directives, residence modifications, academic modifications and support, work schedule modifications, interim disciplinary suspension, suspension from employment, and pre-disciplinary leave (with or without pay). Remedial measures are available regardless of whether a Complainant pursues criminal or University disciplinary action.

---

[1] This Resource Guide should be read in conjunction with the Policy. Capitalized terms used and not otherwise defined in this Resource Guide are defined in the Policy.

Exhibit 5

**Table of Contents**

I. UNIVERSITY AND COMMUNITY RESOURCES ............................................................. 2

    A. EMERGENCY MEDICAL, LAW ENFORCEMENT AND CRISIS RESPONSE
       RESOURCES ....................................................................................................... 2

        1. Medical Assistance ....................................................................................... 2
        2. Law Enforcement .......................................................................................... 3
        3. Confidential Crisis Resources (Support and Counseling) ........................... 4

    B. ONGOING CONFIDENTIAL COUNSELING AND SUPPORT ................................. 4

        1. University Confidential Resources ............................................................... 4
        2. Community Confidential Resources .............................................................. 5
        3. National Confidential Resources .................................................................. 5

    C. LEGAL RESOURCES ............................................................................................. 6

    D. UNIVERSITY SUPPORT; REMEDIAL AND PROTECTIVE MEASURES .............. 6

II. REPORTING PROHIBITED CONDUCT ....................................................................... 8

    A. PRESERVATION OF EVIDENCE ........................................................................... 8

    B. REPORTING TO THE POLICE ............................................................................... 8

    C. REPORTING TO THE UNIVERSITY ...................................................................... 8

    D. SEEKING A PROTECTIVE ORDER ....................................................................... 9

## I. UNIVERSITY AND COMMUNITY RESOURCES

### A. EMERGENCY MEDICAL, LAW ENFORCEMENT AND CRISIS RESPONSE RESOURCES

**1. Medical Assistance**: An individual who experiences sexual assault or any other form of interpersonal violence is strongly encouraged to seek immediate medical attention at the University's Emergency Department.

| U.Va. Medical Center Emergency Department | 1215 Lee Street, Charlottesville (434) 924-2231 |
| --- | --- |

The University's Medical Center is the *only* hospital in Charlottesville where an individual can receive a forensic sexual assault examination by a Sexual Assault Nurse Examiner (also known as "SANE Nurse"). SANE Nurses can assess injuries related to physical trauma; evaluate for sexually-transmitted infections and possible pregnancy; provide medical care (including medications to prevent

Exhibit 5

infections and pregnancy); and can, *within the first 72 hours* after a sexual assault, administer a "forensic exam."[2] During the forensic exam, the SANE Nurse documents and collects evidence of sexual contact and/or physical trauma (including injuries to the body and genitals), trace evidence, biological fluids, and identifiable DNA. When there is reason to believe that an assault may have been facilitated by the use of drugs or alcohol, the forensic exam may also include the collection of urine and blood samples for toxicology testing. *Students are not required to report an incident to law enforcement or the University in order to receive medical attention or a forensic exam.*[3] Students may have a support person of their choosing present throughout the forensic exam. In addition, the Emergency Department ensures that an advocate from the Sexual Assault Resource Agency ("SARA") is available to all patients reporting sexual assault. Students may accept or decline the confidential services of the SARA advocate.

Regardless of whether a forensic exam is obtained within the first 72 hours after a sexual assault, Students are encouraged to seek follow-up care to address any ongoing medical concerns, including those related to sexually-transmitted infections and pregnancy. Students may access follow-up care at the University Medical Center, Student Health, or through any appropriate health care provider outside of the University.

2. **Law Enforcement**: Students are urged to report any Prohibited Conduct that may constitute a crime to local law enforcement ("Police") immediately. Police have unique legal authority to seek and execute search warrants, to collect forensic evidence that may have been left at the scene or at other relevant locations and to make an arrest when supported by probable cause to believe a crime has been committed. Police are also able to assist Students in seeking Emergency Protective Orders (see below).

Police can be reached by calling "911" (or one of the other numbers listed below). Students seeking medical attention at the University Emergency Department can ask that Police be called on their behalf.

| Police Emergency | 911 |
| --- | --- |
| Albemarle County Police | (434) 977-9041 |
| City of Charlottesville Police | (434) 970-3280 |
| University Police | (434) 924-7166 |

---

[2] Detailed information about obtaining a forensic exam at the University Medical Center can be accessed at http://www.virginia.edu/sexualviolence/sexualassault/afteranassault.

[3] Forensic evidence will be stored for at least 120 days. If the Complainant does not wish to file an official police report, a law enforcement officer will make a brief, anonymous report (containing no personally identifiable information), and explain when, where and why the evidence will be held.

Exhibit 5

Incidents that occur on-Grounds fall within the jurisdiction of the University Police; incidents that occur off-Grounds within the City of Charlottesville or within Albemarle County fall within those Police jurisdictions, respectively. Students will be directed to the appropriate Police Department when they call "911" or by contacting the University Police Department's Victim/Witness Assistance Program at (434) 924-8845 or (434) 531-5600. The Victim/Witness Assistance Program is designed to ensure that victims and witnesses of criminal offenses receive fair and compassionate treatment throughout the criminal justice process. The Victim/Witness Assistance Officer can provide information and resources to assist a Student in understanding a law enforcement investigation or criminal prosecution.

3. **Confidential Crisis Resources (Support and Counseling):** Students are urged to seek immediate emotional support after any incident of Prohibited Conduct. There are a number of confidential sources and "hotlines" for crisis counseling, both at the University and in the local community. Confidential counselors can provide trauma-informed support and offer information about reporting options.

   a) Underline: University Confidential Crisis Resources:

| Counseling & Psychological Services (CAPS) | (434) 243-5150 (daytime) (434) 972-7004 (evenings and weekends) |
|---|---|
| UVA Women's Center | (434) 982-2252 (daytime) |

   b) Community Confidential Crisis Resources:

| Sexual Assault Resource Agency (SARA) | (434) 977-7273 |
|---|---|
| Shelter for Help in Emergency (SHE) | (434) 293-8509 |
| Family Violence and Sexual Assault Virginia Hotline | Call: (800) 838-8238 Text: (804) 793-9999 |

## B. ONGOING CONFIDENTIAL COUNSELING AND SUPPORT

Confidential counseling and trauma-informed support are available on an ongoing basis at the University, in the local community, and through national "hotlines."

1. **University Confidential Resources:**

| Counseling & Psychological Services (CAPS) | (434) 243-5150 (434) 972-7004 (after hours) |
|---|---|
| Student Health: Gynecology | (434) 924-2773 |

Exhibit 5

| | |
|---|---|
| Student Health: General Medicine | (434) 982-3915<br>(434) 972-7004 (after hours) |
| Student Health: Psychologists in the Student Disability Access Center (SDAC) | 434-243-5180<br>SDAC@Virginia.edu |
| The Women's Center: Counseling Staff | (434) 982-2252 |
| The McCue Center: Sports Medicine and Sports Psychology Clinical Staff<br>(Serves Student-Athletes) | (434) 982-5450 |
| UVA Teen and Young Adult Health Center<br>(Provides health care for ages 12 to 26) | (434) 982-0090 |
| Mary D. Ainsworth Psychological Clinic<br>(Clinical training program that generally does not see patients in crisis) | (434) 982-4737<br>ainsworth@virginia.edu |
| Sheila C. Johnson Center for Human Services<br>(Clinical training program that generally does not see patients in crisis) | (434) 924-7034 |

2.  **Community Confidential Resources:**

| | |
|---|---|
| Sexual Assault Resource Agency (SARA) | Weekdays:  (434) 295-7273<br>24-hour Hotline: (434) 977-7273 |
| Shelter for Help in Emergency (SHE) | (434) 293-8509 |
| Family Violence and Sexual Assault Virginia Hotline | Call: (800) 838-8238<br>Text: (804) 793-9999 |

3. **National Confidential Resources:**

| | |
|---|---|
| Rape and Incest National Network (RAINN) Online Hotline | https://ohl.rainn.org/online/ |
| National Sexual Assault Hotline | (800) 656-4673 |

Exhibit 5

## C. LEGAL RESOURCES

There are several resources that may help Students explore and understand their legal rights and options – both criminal and civil – following an incident of Prohibited Conduct.

| Sexual Assault Advocacy Fund | www.studentsaaf.org<br>Central Virginia Legal Aid Society<br>1000 Preston Avenue, Suite B<br>434-327-1447 |
|---|---|
| Student Legal Services | http://www.student.virginia.edu/~stud-leg/<br>Newcomb Hall, Room 460 (434) 924-7524 |
| Virginia Legal Aid | http://www.valegalaid.org/ |
| Legal Aid Justice Center | https://www.justice4all.org/<br>1000 Preston Avenue, Suite A<br>Charlottesville, VA 22903<br>Phone: (434) 977-0553 |

## D. UNIVERSITY SUPPORT; REMEDIAL AND PROTECTIVE MEASURES

The Office of the Dean of Students ("ODOS") can provide Students with information, support, and assistance and can arrange for a broad range of remedial and protective measures. ODOS employees have received training for this purpose and will assist Students in determining whether certain forms of support, remedial and/or protective measures may be beneficial and appropriate. ODOS employees are Responsible Employees and are therefore required to report information disclosed to them about Prohibited Conduct to the University's Title IX Coordinator. If a Complainant requests (a) that personally-identifying information not be shared with the Respondent, (b) that no investigation be pursued, and/or (c) that no disciplinary action be taken, the University will seek to honor this request unless there is a health or safety risk to the Complainant or to any member of the University community. The Procedures outlined in Appendix A provide additional guidance about how the University will evaluate such requests.

| Office of the Dean of Students | Peabody Hall, Second Floor<br>DeanofStudents@virginia.edu<br>(434) 924-7429 or (434) 924-7133<br>After hours: (434) 924-7166 for "Dean on Call" |
|---|---|

The availability of remedial and protective measures will be determined by the specific circumstances of each case. ODOS, in consultation with the Title IX Coordinator, will consider a number of factors in determining which measures to take, including the needs of the Student seeking remedial and/or protective measures; the severity or pervasiveness of the alleged Prohibited Conduct; any continuing effects on the Complainant; whether the Complainant and the Respondent share the same residence hall, dining hall,

Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 60 of 92   Pageid#: 494

Exhibit 5

academic course(s), job or parking location(s); and whether other judicial measures have been taken to protect the Complainant (e.g., Protective Orders). When implementing such measures, the University will seek to minimize the burden on the Student seeking the measures. For example, if the Complainant and the Respondent share the same class or residence hall, the University will not, as a matter of course, remove the Complainant from the class or residence hall while allowing the Respondent to remain, without carefully considering all options and circumstances.

Protective and remedial measures may be temporary or permanent and may be modified by the University as circumstances change. Examples of such measures include:

- Imposition of a No Contact Directive against an Employee or Student (i.e., an order directing one or both of the parties to refrain from contacting the other, directly or through proxies);
- Arranging a meeting with Police to discuss or report Prohibited Conduct;
- Arranging a meeting with Police to discuss safety planning;
- Arranging access to counseling services and assistance in setting up initial appointments;
- Arranging access to medical services and assistance in setting up initial appointments;
- Assistance in seeking academic assistance, including modified class schedules (including transfer to another section), permission to withdraw from and/or retake a class or attend a class via alternative means (e.g., online or independent study), extension of assignment deadlines, and voluntary leaves of absence;
- Assistance in modifying University housing arrangements, including immediate temporary relocation to safe living quarters and/or permanent reassignment of University residence halls;
- Assistance in modifying assigned parking;
- Assistance in modifying University employment arrangements, including changes in work schedules, job assignments, work locations and/or assigned parking;
- Imposing an interim disciplinary suspension and/or pre-disciplinary leave, with or without pay, on the Respondent; and
- Any other measures that may be arranged by the University (to the extent reasonably available) to ensure the safety and well-being of a Student who has been affected by Prohibited Conduct.

In some cases, a Student may choose to seek a leave of absence or a reduced course load; these actions may, in turn, impact a Student's immigration, visa and/or financial aid status. In such cases, ODOS will connect Students with the applicable University department or unit so that they may obtain relevant information and assistance.

ODOS will ensure Students receive written notification of all their rights and options, regardless of whether a Student chooses to report Prohibited Conduct to the University or to the Police.

Exhibit 5

## II.    REPORTING PROHIBITED CONDUCT

Students may report Prohibited Conduct to the Police, to the University, to both or to neither. These reporting options are not exclusive. Complainants may simultaneously pursue criminal and University disciplinary action. The University will support Complainants in understanding and assessing their reporting options.

### A. PRESERVATION OF EVIDENCE

The University recognizes that making the decision to report Prohibited Conduct often takes time. Nevertheless, pending the decision to report, Students are strongly encouraged to take immediate steps to preserve all evidence that might support a future report of Prohibited Conduct, a Protective Order, or an investigation by the Police, by the University, or both. Such evidence may include:

- A forensic sexual assault examination (within 72 hours);
- Any clothing, sheets or other materials (items containing bodily fluids should be stored in cardboard boxes or paper bags);
- Electronic exchanges (e.g., text messages, emails, and Facebook, Instagram, Snapchat or other social media posts, to the extent that they can be captured or preserved);
- Photographs (including photographs stored on smartphones and other devices); and
- Voice-mail messages and other physical, documentary and/or electronic data that might be helpful or relevant in an investigation.

Electronic and photographic evidence may be lost through the upgrade or replacement of equipment (including smartphones), software and/or accounts or may simply be lost to the passage of time.

### B. REPORTING TO THE POLICE

Students have the right to notify Police or decline to notify Police. Students may contact the Police directly (see Section I, above). Alternatively, Students may seek assistance in notifying Police from ODOS. ODOS can assist in setting up an initial meeting with Police and can accompany Students to that meeting. Filing a Police report does not obligate a Student to participate in any subsequent criminal proceedings. Although a Police report may be made at any time, Students should be aware that a one-year statute of limitations may apply to certain misdemeanors in Virginia.

### C. REPORTING TO THE UNIVERSITY

The University strongly encourages Students who have experienced, have knowledge of, or have witnessed Prohibited Conduct to make a report to the University. Under Title IX, once an institution has notice of an act of Prohibited Conduct, it is required to (1) take immediate and appropriate steps to investigate or otherwise determine what occurred; and (2) take prompt and effective action to end any misconduct that occurred; remedy its

Exhibit 5

effects; and prevent its recurrence. Although there is no time limit for reporting Prohibited Conduct to the University, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer a Student or an Employee, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take other reasonable steps to respond under Title IX. Making a report to the University does not require participation in any subsequent University proceedings, nor is a report required in order for a Student to receive support or remedial measures.

Students are encouraged to report Prohibited Conduct through *Just Report It*, the University's website for online reporting (which also allows for anonymous reporting), or by contacting the Title IX Coordinator or ODOS:

| | |
|---|---|
| Just Report It<br><br>(also for anonymous reports) | http://www.virginia.edu/justreportit/titleix-vawa |
| ODOS | Peabody Hall, Second Floor<br>Business hours: (434) 924-7133<br>After hours: (434) 924-7166 for "Dean on Call" |
| Emily Babb, Assistant Vice President for Title IX Compliance/Title IX Coordinator<br><br>Akia Haynes, Deputy Title IX Coordinator | O'Neil Hall, Terrace Level<br>Room 037<br>titleixcoordinator@virginia.edu<br>(434) 297-7988 |

Students should be aware that all disclosures of Prohibited Conduct to any "Responsible Employee" will be reported, as required by University Policy, to the Title IX Coordinator. A ***Responsible Employee*** is any University Employee who is not a Confidential Employee. A list of Confidential Employees is posted here: http://www.virginia.edu/justreportit/confidential_resources.pdf.

Upon receipt of a report of Prohibited Conduct, the University will conduct an initial assessment, a ***threat assessment***, and take any immediate action that may be necessary to protect the health and safety of the Student and the University community, as described in the Procedures attached as Appendix A and Appendix B to the Policy.

D. SEEKING A PROTECTIVE ORDER

Where Prohibited Conduct is reported to the Police, it may be possible to obtain a court-ordered Emergency or Preliminary Protective Order. These Protective Orders may be issued if the judge or magistrate believes that there is an immediate threat to health or safety. Later, after a full hearing, the court may agree to issue a "Permanent" Protective Order, in appropriate cases. A Permanent Protective Order may remain in place for up to

Exhibit 5

two years under Virginia law and, in some cases, may be extended for an additional two years. "Protective Orders" are separate and distinct from "No Contact Directives" (described above). Protective Orders may be obtained only from a court of law and are enforceable anywhere in the United States; their violation may result in criminal charges. In contrast, No Contact Directives may be obtained from ODOS and are enforceable through the University. ODOS can arrange and/or attend a meeting with the University Police Department's Victim/Witness Assistance Coordinator, who can explain the process for seeking a Protective Order and can escort a Student to the appropriate office in order to initiate a petition seeking a Protective Order.

Exhibit 6



# SEXUAL AND GENDER-BASED VIOLENCE
# WHAT STUDENTS NEED TO KNOW
## Obtaining Information, Assistance and Support; Reporting Options



If you have experienced sexual or gender-based violence, there are a number of ways to report the incident and multiple channels for obtaining information, assistance and support to ensure your health and safety, both physical and emotional. This Infographic provides an overview of your options. Detailed information can be found in the **Resource Guide for Students** (http://bit.ly/1JN4vBM) and on the Sexual Violence Education & Resources website (the "SV Website"), at www.virginia.edu/sexualviolence.

The term "sexual and gender-based violence" is used here as an umbrella term to refer to all "Prohibited Conduct," as defined in the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (the "Policy"). Prohibited Conduct includes Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity (in the commission of any such conduct), and Retaliation against any person for making a good faith report of Prohibited Conduct or participating in any proceedings under the Policy. Detailed definitions of these and other key terms, including "Affirmative Consent" and "Incapacitation" are set forth in the Policy:
http://eocr.virginia.edu/policies-procedures-and-resources

## 1  IMMEDIATELY AFTER INCIDENT

### Reporting the Incident

**You are strongly encouraged to report sexual and gender-based violence to the police.**



Report to any police officer, in person, or by calling one of the numbers to the right. If you seek medical attention at the UVA Emergency Department (see below), you may ask to make a police report at the hospital. Reporting to police will not affect your ability to pursue resolution through the University process (see next page). The University's process is independent of the criminal process.

**HOW TO CONTACT THE POLICE**

Emergency:  Non-emergency:
911        • Albemarle County Police: (434) 977-9041
           • City of Charlottesville Police: (434) 970-3280

### Seeking Emergency Medical Attention

**You are strongly encouraged to seek medical attention.**



You may obtain medical attention at any facility. However, the UVA Hospital Emergency Department and UVA Student Health are the only local healthcare facilities with nurses (called "SANE nurses") who are specially trained to perform a forensic sexual assault examination that preserves evidence within the first 72 hours after an assault. These include assessment for injuries, as well as prevention of sexually-transmitted infections and pregnancy. More information about the forensic exam can be found in the Resource Guide for Students (http://bit.ly/1JN4vBM) and on the SV Website. Students are not required to report an incident to law enforcement or the University in order to receive medical attention or a forensic exam. *Both facilities provide other appropriate medical services whether or not a student chooses collection of forensic evidence.*

**WHERE TO GO FOR CONFIDENTIAL MEDICAL ATTENTION**
24 hours/7 days a week       Regular business hours
• UVA Hospital ER           • Elson Student Health Ctr
  1215 Lee Street             400 Brandon Avenue
  (434) 924-2231             (434) 924-5362
                             www.virginia.edu/studenthealth

### Seeking Confidential Crisis Counseling

**You are strongly encouraged to seek confidential counseling.**



You may obtain crisis counseling and confidential information, advice and support through any of the sources listed to the right.

**UVA CONFIDENTIAL CRISIS RESOURCES**
• UVA Counseling and Psychological Services ("CAPS"): (434) 243-5150 (daytime); (434) 972-7004 (evenings/weekends)
• UVA Women's Center: (434) 982-2252 (daytime)
**COMMUNITY CONFIDENTIAL CRISIS RESOURCES**
• Sexual Assault Resource Agency ("SARA"): (434) 977-7273
• Shelter for Help in Emergency ("SHE"): (434) 293-8509
• Family Violence and Sexual Assault Virginia Hotline: 1 (800) 838-8238

 **Seeking Emotional Support**

Exhibit 6

**②** # OTHER INFORMATION, ASSISTANCE AND SUPPORT

There are many sources of information, assistance and support at the University and in the community.



### Seeking Ongoing Confidential Counseling

At the University, confidential support is available through CAPS (434) 243-5150, the Women's Center (434) 982-2252, and at Student Health (434) 924-5362 (in the departments of Gynecology, General Medicine, and the Student Disability Access Center).

In the Charlottesville Community, confidential support is available through SARA (434) 977-7273 and SHE (434) 293-8509. Detailed contact information and a list of other sources of confidential support is contained on the SV Website: www.virginia.edu/sexualviolence.

### Seeking Remedial and Protective Measures



**University Measures:** ODOS can arrange for a broad range of protective and remedial measures, including (1) a "No-Contact Directive," which is enforceable through the Standards of Conduct, and (2) appropriate and available academic, University housing and/or university employment modifications. Information you share with ODOS will be evaluated to assess individual and community safety consistent with UNIVERSITY OBLIGATIONS outlined below.

> **WHO TO CONTACT**
> **Office of the Dean of Students ("ODOS") Dean on Call:** ODOS provides 24-hour crisis management services.
> During regular business hours, call ODOS at **(434) 924-7133.**

Remedial measures are available regardless of whether a student pursues a report or investigation under the Policy. The Resource Guide for Students (http://bit.ly/1JN4vBM) describes such measures in detail.

**Judicial Protective Orders:** Where there is an immediate threat to health or safety, it may also be possible to obtain a judicial protective order. ODOS and/or the University Police can provide information and assistance in filing for a protective order.

**③** # REPORTING OPTIONS

You may report to the police and/or to the University.



You may report to: (1) the police, in which case the Commonwealth's Attorney will decide whether or not to pursue criminal charges, and (2) the University, in which case the University will assess the report and determine the appropriate course of action. You may pursue both or neither of these options. While you may make a report at any time, filing a report immediately after an

### University Report

You may report to the University through its reporting website, Just Report It: www.virginia.edu/justreportit/titleix-vawa, or by contacting the University's Title IX Coordinator, directly at (434) 297-7988 or titleixcoordinator@virginia.edu. You may also contact ODOS Dean on Call after hours.

You may also pursue University resolution under the Policy. The standard of proof under the Policy is a "preponderance of the evidence," and sanctions may include disciplinary action, up to and including suspension or expulsion.

### Police Report

You may report to the police directly or you may request assistance from ODOS in reporting to the police. The criminal process is governed by applicable criminal statutes; the standard of proof is "beyond a reasonable doubt," and sanctions may include all applicable criminal penalties.

### Anonymous Report

You may report anonymously through Just Report It: www.virginia.edu/justreportit/titleix-vawa. However, the University's ability to respond to an anonymous report may be limited.

**④** # UNIVERSITY OBLIGATIONS



Once a report of Prohibited Conduct is received, the University will conduct an initial assessment, a threat assessment, and take any immediate action that

> **FOR MORE INFORMATION** about reporting requirements and confidential resources:
> **Resource Guide for Students:** http://bit.ly/1JN4vBM

may be necessary to protect the health and safety of individuals and the University community. Depending on the nature and severity of the conduct reported, the University may be required to share all known information, including names, with law enforcement. The University is committed to protecting the safety of the broader University community, which includes reporting crime statistics and, in some cases, issuing incident notifications in accordance with federal law. Most University employees – "Responsible Employees"- are required to report any knowledge of an incident of sexual or gender-based violence or harassment to the University's Title IX Coordinator within 24 hours. Licensed clinical health and mental health care providers are considered confidential resources and will not report Prohibited Conduct to the University's Title IX Coordinator.

Exhibit 7

UNIVERSITY *of* VIRGINIA
**OFFICE FOR EQUAL OPPORTUNITY AND CIVIL RIGHTS**
Title IX Office • O'Neil Hall, Terrace Level, Room 037 • 445 Rugby Road • Charlottesville, VA 22904 • (434) 297-7988

To assist parties in identifying an advisor, the Title IX Office maintains a list of Charlottesville attorneys with knowledge of UVA's Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Policy and Procedures experience representing students named as Respondents in this process. These individuals are offered solely as a resource and the University does not endorse any advisor:

Rhonda Quaqliana
St. John, Bowling, Lawrence & Quagliana
416 Park St.
Charlottesville, VA 22902
rq@stlawva.com
(434) 296-7138

Fran Lawrence
St. John, Bowling, Lawrence & Quagliana
416 Park St.
Charlottesville, VA 22902
fml@stlawva.com
(434) 296-7138

Dave Heilberg
Dygert, Wright, Hobbs & Heilberg, PLC
415 4th St NE
Charlottesville, VA 22902
dheilberg@charlottesvillelegal.com
(434) 979-5515

André Hakes
Tucker Griffin Barnes PC
307 Rio Rd. W.
Charlottesville, VA 22901
ahakes@tgblaw.com
(434) 973-7474

For additional attorney referrals, contact:

Virginia State Bar Lawyer Referral Service: (800) 552-7977;
http://www.vsb.org/vlrs/index.php/public/vlrs/

Charlottesville Albemarle Bar Association: (800) 552-7977;
https://cabaonline.org/

*Mission*
*Ensuring equal opportunity and protecting the civil rights of all University community members through proactive outreach, education, and effective response and resolution.*

Exhibit 8

**Diane Mathews**

**Subject:**                 FW: CONFIDENTIAL TITLE IX MATTER

**From:** Flood, John J. (jjf3y) [mailto:jjf3y@virginia.edu]
**Sent:** Wednesday, August 15, 2018 2:12 PM
**To:** ███████████████████
**Cc:** Babb, Emily C. (ecb6y); Bassett, Kimberley C (kcb6j); Rhonda Quagliana
**Subject:** CONFIDENTIAL TITLE IX MATTER

████████████ :

Good afternoon and I hope this message finds you well. As described in the Notice of Investigation you received from Emily Babb, I will be investigating this matter. I would like to meet with you as soon as possible to discuss the matter. Our office is located at O'Neil Hall, 445 Rugby Road  https://goo.gl/maps/iGotJsBy2F92 .

Please note that you may bring an advisor to this meeting as listed in Section VI(B)(1)(f) of the Procedures. For convenience, the section has been included below:

*Advisors. Throughout the investigation and resolution process, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness involved in the investigation. The parties may be accompanied by their respective advisors at any meeting or proceeding related to the investigation and resolution of a report under these Procedures. While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.*

Please preserve and bring any potentially relevant evidence (in any format) related to this matter to this meeting. Also, if applicable, please reply to this email with the names of any individuals that you would like for me to speak to regarding this matter. Please confirm as soon as possible a date and time that is convenient for you to meet.

I look forward to meeting with you soon. Please do not hesitate to contact me with any questions you may have.

Sincerely,

*John J. Flood*

Exhibit 8

**John J. Flood**
*Investigator*

**E** JJFLOOD@VIRGINIA.EDU
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431

**University of Virginia**
Title-IX Office
O'Neil Hall
445 RUGBY ROAD
CHARLOTTESVILLE, VA 22904-4211

eocr.virginia.edu/title-ix



Exhibit 9

**Diane Mathews**

| | |
|---|---|
| **Subject:** | FW: CONFIDENTIAL TITLE IX COMMUNICATION |

**From:** Flood, John J (jjf3y) [mailto:jjf3y@virginia.edu]
**Sent:** Monday, October 08, 2018 9:20 AM
**To:** ████████████████████
**Cc:** Rhonda Quagliana; Babb, Emily C (ecb6y); Title IX Coordinator
**Subject:** CONFIDENTIAL TITLE IX COMMUNICATION

███████████████ :

I hope this email finds you well. Pursuant to the Procedures, the time frame for completion of an investigation may be extended for good cause. Should such an extension be necessary, it is our responsibility to notify both parties in writing and provide the reason for the extension. Accordingly, we are writing to you today to let you know that we are extending the anticipated due date for distribution of the Draft Investigation Report in order to ensure the integrity and completeness of the investigation into the information detailed in the Notice of Investigation, of which you were informed on August 8, 2018. Specifically, I am attempting to locate and interview potential witnesses.

Please be assured that our goal is to resolve this matter as expeditiously and thoroughly as possible. We remain available to answer any questions you may have, and you also should feel free to contact the Title IX Coordinator, Emily Babb, directly with any questions about the process at titleixcoordinator@virginia.edu .

*John J. Flood*

**John J. Flood**
*Investigator*

**E** JJFLOOD@VIRGINIA.EDU
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431

**University of Virginia**
Title-IX Office
O'Neil Hall
445 RUGBY ROAD
CHARLOTTESVILLE, VA 22904-4211

eocr.virginia.edu/title-ix

Exhibit 9



Exhibit 5

Exhibit 10

## Diane Mathews

**Subject:**  FW: Confidential University Communication - Draft Investigation Report (Time Sensitive)

---

**From:** Babb, Emily C (ecb6y) [mailto:ecb6y@virginia.edu]
**Sent:** Wednesday, December 19, 2018 12:30 PM
**To:** Rhonda Quagliana; ██████████████████████
**Cc:** Title IX Coordinator; Flood, John J (jjf3y)
**Subject:** RE: Confidential University Communication - Draft Investigation Report (Time Sensitive)

Dear Rhonda and █████,

Thank you for your message. This will confirm receipt. Based upon the winter break, your office closure, the conflicts with regard to ██████ travel, and your personal family medical commitment, I will grant the requested extension and provide until January 25, 2019 to respond to the Draft Investigation Report. Please note that the complainant will be provided the same extension.

Best,
Emily

---

**From:** Rhonda Quagliana <rq@stlawva.com>
**Sent:** Tuesday, December 18, 2018 3:58 PM
**To:** Babb, Emily C (ecb6y) <ecb6y@virginia.edu>; ██████████████████████████
**Cc:** Title IX Coordinator <titleixcoordinator@virginia.edu>; Flood, John J (jjf3y) <jjf3y@virginia.edu>
**Subject:** RE: Confidential University Communication - Draft Investigation Report (Time Sensitive)

We have received the Draft Report. ██████████ requires additional time to respond. He returned home yesterday. He will be leaving for a trip with his family, planned well in advance, to travel out of the country on December 28 and will return to ██████ on January 9, 2019.

My office is closed from December 24 through January 1. We reopen January 2. I will be out of town at the Cleveland Clinic dealing with a family medical issue on the 27th and 28th of that week and will be unavailable to assist ████████.

████████ will return to Charlottesville on January 13.

The investigation has taken nearly 5 months to complete. The Draft Report includes detailed information and interviews. ████████ wishes to exercise his right to obtain guidance and advice from his advisor and to respond fully. I will not be available for that purpose for much of the time he was given to respond due to the intervening holidays, the closure of my office, and a personal family medical commitment involving an unwell, aging parent.

Also, ████████ and his family had plans in place that will take him out of the country until January 9.

Given these rather extraordinary circumstances, including the duration of the investigation, we would respectfully request additional time to respond. Given ████████ return on January 13, we would ask that you extend the deadline to January 25 to provide ████████ sufficient time to consider and evaluate the Draft Report and confer with his advisor, which is his right.

Thank you,

Exhibit 10

Rhonda Quagliana

Rhonda Quagliana, Esquire
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice:  This email may contain attorney-client privileged information, privileged work product, or other confidential information.  It is intended only for the designated recipient.  If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake.  Thank you.

---

**From:** Babb, Emily C (ecb6y) [mailto:ecb6y@virginia.edu]
**Sent:** Tuesday, December 18, 2018 1:00 PM
**To:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Cc:** Title IX Coordinator; Flood, John J (jjf3y); 'Rhonda Quagliana'
**Subject:** Confidential University Communication - Draft Investigation Report (Time Sensitive)

Dear ▇▇▇▇

Good afternoon and I hope this message finds you well. I am sending this message on behalf of John Flood. I have attached an important document related to the Title IX investigation involving you for your review. You may also access the document and the corresponding exhibits using the following link:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Please note that this is a time-sensitive communication, as you are being asked to respond, should you choose to do so. The response is due to Mr. Flood, who I have copied on this message by **January 7, 2019**. Additionally, please note that you will only be able to access the above link for the response period, up to and including **January 7, 2019**, after which the link will be unavailable. If you have any additional questions or concerns, please let me or Mr. Flood know.

Mr. Flood is currently out of the office and will return on January 7. If you require assistance during this time, please contact me at ecb6y@virginia.edu or (434) 297-7988.

Best,

*Emily*

Emily C. Babb
Assistant Vice President for Title IX Compliance/Title IX Coordinator
UNIVERSITY *of* VIRGINIA
O'Neil Hall
445 Rugby Road
Post Office Box 400211
Charlottesville, VA 22904-4211
434.297.7643
ecb6y@virginia.edu
Pronouns:  she, her, hers

Exhibit 11

## Diane Mathews

| | |
|---|---|
| **From:** | Flood, John J (jjf3y) <jjf3y@virginia.edu> |
| **Sent:** | Friday, January 25, 2019 1:59 PM |
| **To:** | Diane Mathews |
| **Cc:** | Rhonda Quagliana; ██████████ ████████████ Babb, Emily C (ecb6y) |
| **Subject:** | RE: ███ |

Ms. Matthews:

I am in receipt of the correspondence from Ms. Quagliana.

V/r,



**John J. Flood**
*Investigator*
*Title-IX Office*

**E** jjflood@virginia.edu
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431



---

**From:** Diane Mathews <dkm@stlawva.com>
**Sent:** Friday, January 25, 2019 13:48
**To:** Flood, John J (jjf3y) <jjf3y@virginia.edu>
**Cc:** Rhonda Quagliana <rq@stlawva.com>; ████████████████████████████████
**Subject:** ███

Mr. Flood,

Please see the attached correspondence from Ms. Quagliana.

Should you have any questions, please do not hesitate to contact us. Thank you.

Sincerely,

Diane Mathews, Paralegal
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Exhibit 11

Notice:  This email may contain attorney-client privileged information, privileged work product, or other confidential information.  It is intended only for the designated recipient.  If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake.  Thank you.

Exhibit 11

# St. John, Bowling,
# Lawrence & Quagliana, LLP

James M. Bowling, IV
Francis McQ. Lawrence
Rhonda Quagliana
K. Jay Galloway

Of Counsel
Francesca E. Fornari
Retired
George R. St. John

Attorneys at Law
416 Park Street
Charlottesville, VA 22902

Tel: (434) 296-7138
Fax: (434) 296-1301
www.stlawva.com

January 25, 2019

**VIA EMAIL [jjf3y@virginia.edu]**

Mr. John Flood
Title IX Investigator
University of Virginia Office for Equal Opportunity and Civil Rights
O'Neil Hall, 445 Rugby Road
Charlottesville, VA 22904

RE: ███

Dear Mr. Flood:

To ensure its receipt by you, ███ has asked me to submit on his behalf his enclosed response to the Draft Investigation Report.

Please let us know if you have any questions and kindly confirm receipt. Thank you.

Sincerely,

Rhonda Quagliana

RQ/dkm
Enclosures

Cc: ███

James M. Bowling, IV: jmb@stlawva.com • Francis McQ. Lawrence: fml@stlawva.com
Rhonda Quagliana: rq@stlawva.com • K. Jay Galloway: jay@stlawva.com
Francesca E. Fornari: fef@stlawva.com

Exhibit 12

**Diane Mathews**

| | |
|---|---|
| **From:** | Flood, John J (jjf3y) <jjf3y@virginia.edu> |
| **Sent:** | Thursday, February 7, 2019 2:22 PM |
| **To:** | Rhonda Quagliana; 'Diane Mathews' |
| **Cc:** | ██████████████████████ Babb, Emily C (ecb6y) |
| **Subject:** | RE: ████ |

Counselor:

Not a problem extending it to Wednesday 13 February, 2019.

V/r,

*JJF*

**John J. Flood**
*Investigator*
*Title-IX Office*

**E** jjflood@virginia.edu
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431



---

**From:** Rhonda Quagliana <rq@stlawva.com>
**Sent:** Thursday, February 7, 2019 13:49
**To:** Flood, John J (jjf3y) <jjf3y@virginia.edu>; 'Diane Mathews' <dkm@stlawva.com>
**Cc:** ██████████████████████ Babb, Emily C (ecb6y) <ecb6y@virginia.edu>
**Subject:** RE: ████

John:  Thank you.  ████████  would respectfully request 2 additional days to respond, given the intervening weekend and that I am largely unavailable to him tomorrow.  May he have until Wednesday the 13th to respond?
Rhonda

Rhonda Quagliana, Esquire
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice:  This email may contain attorney-client privileged information, privileged work product, or other confidential information.  It is intended only for the designated recipient.  If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake.  Thank you.

Exhibit 12

**From:** Flood, John J (jjf3y) [mailto:jjf3y@virginia.edu]
**Sent:** Thursday, February 07, 2019 12:44 PM
**To:** Diane Mathews
**Cc:** Rhonda Quagliana; █████████████████ Babb, Emily C (ecb6y)
**Subject:** RE: ██████

Ms. Matthews:

I have attached the Complainant's response to your client's DIR response for his and/or your review. Please provide any comments, etc. by **_11 February, 2019._**

Thank you,



**John J. Flood**
*Investigator*
*Title-IX Office*

**E** jjflood@virginia.edu
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431



**From:** Diane Mathews <dkm@stlawva.com>
**Sent:** Friday, January 25, 2019 13:48
**To:** Flood, John J (jjf3y) <jjf3y@virginia.edu>
**Cc:** Rhonda Quagliana <rq@stlawva.com>; ██████████████████████
**Subject:** ██████

Mr. Flood,

Please see the attached correspondence from Ms. Quagliana.

Should you have any questions, please do not hesitate to contact us. Thank you.

Sincerely,

Diane Mathews, Paralegal
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice: This email may contain attorney-client privileged information, privileged work product, or other confidential information. It is intended only for the designated recipient. If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake. Thank you.

Exhibit 13

# Diane Mathews

| | |
|---|---|
| **From:** | Diane Mathews <dkm@stlawva.com> |
| **Sent:** | Wednesday, February 13, 2019 2:51 PM |
| **To:** | jjf3y@virginia.edu |
| **Cc:** | Rhonda Quagliana; ██████████████ |
| **Subject:** | ███ |
| **Attachments:** | 20190213145238861.pdf |

Mr. Flood,

Please see the attached correspondence from Ms. Quagliana.

Should you have any questions, please do not hesitate to contact us. Thank you.

Sincerely,

Diane Mathews, Paralegal
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice:  This email may contain attorney-client privileged information, privileged work product, or other confidential information.  It is intended only for the designated recipient.  If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake.  Thank you.

Exhibit 13

# ST. JOHN, BOWLING,

# LAWRENCE & QUAGLIANA, LLP

James M. Bowling, IV
Francis McQ. Lawrence
Rhonda Quagliana
K. Jay Galloway

OF COUNSEL
Francesca E. Fornari
RETIRED
George R. St. John

ATTORNEYS AT LAW
416 Park Street
Charlottesville, VA 22902

Tel: (434) 296-7138
Fax: (434) 296-1301
www.stlawva.com

February 13, 2019

**VIA EMAIL [jjf3y@virginia.edu]**

Mr. John Flood
Title IX Investigator
University of Virginia Office for Equal Opportunity and Civil Rights
O'Neil Hall, 445 Rugby Road
Charlottesville, VA 22904

      RE: ███████

Dear Mr. Flood:

      Please find enclosed ███████ additional comments and Response to Complainant's written response.

      Please let us know if you have any questions and kindly confirm receipt. Thank you.

      Sincerely,

Rhonda Quagliana

RQ/dkm
Enclosures

Cc: ███████

James M. Bowling, IV: jmb@stlawva.com • Francis McQ. Lawrence: fml@stlawva.com
Rhonda Quagliana: rq@stlawva.com • K. Jay Galloway: jay@stlawva.com
Francesca E. Fornari: fef@stlawva.com

Exhibit 14

## Diane Mathews

| | |
|---|---|
| **From:** | Flood, John J (jjf3y) <jjf3y@virginia.edu> |
| **Sent:** | Wednesday, February 13, 2019 3:21 PM |
| **To:** | Diane Mathews |
| **Cc:** | Rhonda Quagliana; ███████████ |
| **Subject:** | RE: ████ |

Thank you, I am in receipt of this correspondence.

All the best,



**John J. Flood**
*Investigator*
*Title-IX Office*

**E** jjflood@virginia.edu
**P** 434.924.6534
**M** 434.964.8182
**F** 434.924.7431



**From:** Diane Mathews <dkm@stlawva.com>
**Sent:** Wednesday, February 13, 2019 14:51
**To:** Flood, John J (jjf3y) <jjf3y@virginia.edu>
**Cc:** Rhonda Quagliana <rq@stlawva.com>; ███████████████
**Subject:** ████

Mr. Flood,

Please see the attached correspondence from Ms. Quagliana.

Should you have any questions, please do not hesitate to contact us. Thank you.

Sincerely,

Diane Mathews, Paralegal
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice: This email may contain attorney-client privileged information, privileged work product, or other confidential information. It is intended only for the designated recipient. If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake. Thank you.

1

Exhibit 15

## Diane Mathews

**Subject:**                               FW: Confidential University Communication

**From:** Babb, Emily C (ecb6y) [mailto:ecb6y@virginia.edu]
**Sent:** Wednesday, May 01, 2019 3:03 PM
**To:** █████████████████
**Cc:** Title IX Coordinator; Rhonda Quagliana
**Subject:** Confidential University Communication

Dear █████

I am writing on behalf of the Office for Equal Opportunity and Civil Rights (EOCR), that includes the Title IX team that I oversee, to confirm that your degree will be held pending final resolution of the current Title IX matter involving you. This action does not prevent you from participating in Final Exercises. Your name will be included in the Finals Program, and you may participate fully in all ceremonies that will be held.

Please feel free to contact me if you have any questions related to this notification.

Best,

*Emily*

Emily C. Babb
Assistant Vice President for Title IX Compliance/Title IX Coordinator
UNIVERSITY *of* VIRGINIA
O'Neil Hall
445 Rugby Road
Post Office Box 400211
Charlottesville, VA 22904-4211
434.297.7643
ecb6y@virginia.edu
Pronouns:  she, her, hers

Exhibit 16    **Exhibit 20**

**From:**       ████████
**To:**         Flood, John J (jjf3y)
**Subject:**    Verizon Bill (April 2017)
**Date:**       Monday, April 29, 2019 12:27:40
**Attachments:** ████████████ .pdf

Hi John!

I've attached the bill from Verizon for April 2017, which shows that I did not make or receive any phone calls during the time period of the incident. Let me know if there's any other information you need from me.

Best,

████████

Exhibit 17

# Diane Mathews

| | |
|---|---|
| **From:** | Diane Mathews <dkm@stlawva.com> |
| **Sent:** | Tuesday, May 28, 2019 3:49 PM |
| **To:** | ecb6y@virginia.edu |
| **Cc:** | 'Rhonda Quagliana'; theaphy@virginia.edu; bmeek@virginia.edu; ███████████ |
| **Subject:** | ████ |
| **Attachments:** | 20190528155252445.pdf |

Ms. Babb,

Please see the attached correspondence from Ms. Quagliana.

Should you have any questions, please do not hesitate to contact us. Thank you.

Sincerely,

Diane Mathews, Paralegal
St. John, Bowling, Lawrence & Quagliana, LLP
416 Park Street
Charlottesville, Virginia 22902
(434) 296-7138
(434) 296-1301 Fax

Notice: This email may contain attorney-client privileged information, privileged work product, or other confidential information. It is intended only for the designated recipient. If you receive this message and are not a designated recipient you are requested to delete this message immediately and notify me that you have received this by mistake. Thank you.

Exhibit 17

# St. John, Bowling,
# Lawrence & Quagliana, LLP

James M. Bowling, IV
Francis McQ. Lawrence
Rhonda Quagliana

K. Jay Galloway

OF COUNSEL
Francesca E. Fornari
RETIRED
George R. St. John

ATTORNEYS AT LAW
416 Park Street
Charlottesville, VA 22902

Tel: (434) 296-7138
Fax: (434) 296-1301
www.stlawva.com

May 28, 2019

**VIA EMAIL [ecb6y@virginia.edu]**

Ms. Emily Babb
Assistant Vice President for Title IX Compliance/Title IX Coordinator
University of Virginia Office for Equal Opportunity and Civil Rights
O'Neil Hall, 445 Rugby Road
Charlottesville, VA 22904

Re: ███████

Dear Ms. Babb:

To ensure its timely receipt, ████████ asked me, as his advisor, to provide you with his Response to the Final Investigation Report, which is due today. His response is as follows:

1. I contest the finding of responsibility that I violated University Policy by committing sexual assault.
2. I object to the statements of the Complainant and witnesses to the extent the statements are used against me to support a finding of responsibility in the Final Investigation Report ("FIR").
3. I provided a truthful account of the events, including a statement under oath and on my honor as a student, that I had the Complainant's affirmative consent. I provided this testimony under oath in the form of a sworn affidavit.
4. The investigation was not fair and complete and I have not had an equal opportunity to be heard, nor have I received sufficient notices under the Policy.
5. The Draft Investigation Report ("DIR") issued in December did not contain sufficient evidence for a finding of responsibility.
6. I received no notice that the investigation continued after what was supposed to be the conclusion of the investigation.

James M. Bowling, IV: jmb@stlawva.com ▪ Francis McQ. Lawrence: fml@stlawva.com
Rhonda Quagliana: rq@stlawva.com ▪ K. Jay Galloway: jay@stlawva.com
Francesca E. Fornari: fef@stlawva.com
Case 3:19-cv-00038-GEC   Document 46-1   Filed 07/19/19   Page 85 of 92   Pageid#: 519

Exhibit 17

Emily Babb                    May 28, 2019                    Page 2 of 3

7.  After issuing the DIR, the investigator took it upon himself and coordinated only with the Complainant to develop new evidence used to find me responsible. He did not work with me or reach out to my advisor to determine whether we had new or additional evidence relevant to the investigation.

8.  The investigator then relied heavily on this new material – a friend of the Complainant who was known to the investigator in September 2018, and the phone records of the Complainant which were also available in August 2018 – to find me responsible under the Policy.

9.  I was provided no opportunity to address this new information developed with the Complainant over a period of months after the DIR had been issued, and it appeared the matter had fallen dormant and that the University was no longer pursuing the matter.

10. The investigator did not objectively evaluate the evidence and his inconsistent findings in the FIR reflect the lack of objectivity.

11. The FIR quotes at length the unchallenged opinions of a nurse examiner. The investigator provides no basis for ignoring outright the contrary opinion of a qualified expert who also examined the medical evidence in this case.

12. I had a right under the Policy not to participate or be interviewed, and my decision not to participate or be interviewed in the investigation cannot be used against me. The investigator violated the Policy, relying heavily for his finding of responsibility on what he perceived as my insufficient description of events in my affidavit. In addition, his findings show that he disregarded my truthful statements provided in an affidavit under oath, and credited instead an unsworn interview of the Complainant.

13. Finally, the University lacks jurisdiction over this matter under its own Policy. The Complainant is not affiliated with the University in any capacity, as the investigator wrote in the FIR. No other provision in the Policy confers jurisdiction over this matter.

***

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Rhonda Quagliana

RQ/dkm

Cc:     Timothy J. Heaphy, Esquire (*via email*)
         Barry T. Meek, Esquire (*via email*)

Exhibit 18

## Diane Mathews

**Subject:**         FW: Confidential University Communication - Notice of Hearing (Time Sensitive)
**Attachments:**    Notice of Hearing ███████

---

**From:** Babb, Emily C (ecb6y) [mailto:ecb6y@virginia.edu]
**Sent:** Wednesday, June 05, 2019 2:58 PM
**To:** ████████████████████████
**Cc:** 'Rhonda Quagliana'; Title IX Coordinator; Mitchell, Jennifer E (jep3f); Tyler, Crystal L. (Richmond); Groves, Allen William (awg8vd)
**Subject:** Confidential University Communication - Notice of Hearing (Time Sensitive)

Dear ████████

Attached please find the Notice of Hearing in the pending Title IX matter involving you. This matter has been set for hearing on July 1, 2019 at 9:00 am at O'Neil Hall. The attached letter explains the Review Panel Hearing, your opportunity to notify me if you believe any of the Review Panel members have an actual conflict of interest, and your opportunity to request witnesses be present or request to participate through alternative means.

Please do not hesitate to contact me if you have any questions.

Best regards,

*Emily*

Emily C. Babb
Assistant Vice President for Title IX Compliance/Title IX Coordinator
🔲 UNIVERSITY*of* VIRGINIA
O'Neil Hall
445 Rugby Road
Post Office Box 400211
Charlottesville, VA 22904-4211
434.297.7643
ecb6y@virginia.edu
Pronouns:  she, her, hers

1

Exhibit 18

### UNIVERSITY *of* VIRGINIA
## OFFICE *for* EQUAL OPPORTUNITY *and* CIVIL RIGHTS
Title IX Office • O'Neil Hall, Terrace Level, Room 037 • 445 Rugby Road •Charlottesville, VA 22904 • (434) 297-7988

June 5, 2019

**Via Electronic Mail**

███████████████

RE:     **Notice of Review Panel Hearing**

Dear ██████

I am writing to inform you that the University of Virginia has scheduled a Review Panel Hearing ("Hearing") in reference to the report of Prohibited Conduct concerning you and ████████████ ("Complainant") under the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence ("the Title IX Policy"). You have contested the recommended findings of responsibility for Sexual Assault (in the form of nonconsensual sexual intercourse). The Complainant has not contested the recommended findings of no responsibility for Sexual Assault (in the form of intentional nonconsensual sexual contact).

The Hearing will occur on **Monday, July 1, 2019, at 9:00 AM, in the Second Floor Conference Room of O'Neil Hall, 445 Rugby Road, Charlottesville, Virginia**. It will be conducted in accordance with Section VI.A.3 of Appendix A of the Procedures for Reports Against Students ("the Procedures").

Please note that there is limited guest parking available at O'Neil Hall. As such, we kindly ask that you please carpool with other members of your group, if at all possible. Prior to parking in a designated space upon your arrival to O'Neil Hall, please check in with the Receptionist at the main entrance to receive instructions on where to park as well as to obtain a parking pass. Jenna Mitchell, Executive Assistant to the Title IX Office, will then be present to assist you throughout the rest of the day.

**Review Panel**

I have appointed **Crystal L. Tyler**, an external professional with experience adjudicating cases of Prohibited Conduct, to serve as the Non-Voting Hearing Chair. I have also selected three trained members of the University community to serve on the Review Panel and one alternate:

> **Manuel Lerdau**
> *Professor, Department of Environmental Sciences*

#### Mission
*Ensuring equal opportunity and protecting the civil rights of all University community members through proactive outreach, education, and effective response and resolution.*

Exhibit 18

**Susan Kools**
*Professor, School of Nursing*

**Archie Holmes**
*Vice Provost, Office of the Executive Vice President and Provost*

**Alternate Panelist:**

**Adrian Miller**
*Employee Relations Consultant, Health System Human Resources*

**Please notify me within 48 hours of the date of this notice if you believe any of the above-named panelists are not able to serve on the Review Panel in an impartial manner due to actual bias and/or a conflict of interest.**

**Hearing Format**

The Hearing is an opportunity for the parties to address the Review Panel, in person, about whether the preponderance of the evidence standard was appropriately applied by the Investigator, whether the investigation was thorough, fair and impartial, and whether there is sufficient evidence to support the Investigator's recommended findings by a preponderance of the evidence. You may address any information in the Final Investigation Report, dated May 22, 2019, any supplemental statements filed by the parties in response to the report, and/or any impact or mitigation statements submitted by the parties. Complainant and you each have the opportunity to be heard, to identify witnesses for the Review Panel's consideration, and to respond to any questions of the Review Panel. You may not directly question one another or any witness, although you may submit questions to the Review Panel, the members of which may choose, in their discretion, to pose appropriate and relevant questions of the Investigator, the parties, or any witnesses. A typical hearing includes brief opening remarks by the Complainant and/or the Respondent, with follow-up questions posed by the Review Panel; information presented by the Investigator or witnesses deemed relevant by the Review Panel, with follow-up questions by the Review Panel of the Investigator or witnesses; and brief concluding remarks by the Complainant and/or Respondent. The Hearing Chair has the discretion to determine the specific Hearing format.

**Participation in Hearing**

Parties:

Complainant and you both have a right to be present at the hearing. Either of you may request alternative methods for participating in the hearing that do not require physical proximity to the other, including participation through electronic means. If you wish to make such a request, please notify me via email at titleixcoordinator@virginia.edu **by 5:00 PM on Friday, June 14, 2019**. Neither party is required to participate in the Hearing in order for the Hearing to proceed.

Exhibit 18



Investigator or Other Witnesses:

The Review Panel may request the presence of the Investigator or any other witness they deem necessary to their determination. The parties may also request the presence of any witness they deem relevant to the determination. Please notify me of any such witnesses by **5:00 PM on June 14, 2019** so we can ascertain their availability. The Review Panel has absolute discretion to determine which witnesses are relevant to their determination and may decline to hear from witnesses where they determine the information is not necessary for their review.

Advisors:

Complainant and you have the right to be accompanied at the Hearing by an advisor of your choosing. The advisor may be anyone, including an attorney, who is not otherwise a party or witness. While the advisor may provide support and advice to a party at the Hearing, the advisor may not speak on behalf of the party or otherwise participate in, or in any manner disrupt, the Hearing. The Hearing Chair may remove any individual whose actions are disruptive to the proceedings.

If you will have an advisor attend the Hearing, please notify me of your advisor's name and contact information so I can provide the information to the Hearing Chair.

**Procedure for Requesting Reasonable Accommodations**

If you are an individual with a disability and need a reasonable accommodation in order to fully and effectively participate in the Hearing, please notify me as soon as possible. I will work with the Students with Disabilities Access Center (SDAC) to ensure reasonable accommodations are provided.

**Determination by the Review Panel**

Because you have contested the recommended findings of Responsibility for Sexual Assault contained in the Final Investigation Report, the Review Panel will, at the conclusion of the hearing, determine, by majority vote, whether the preponderance of the evidence standard was appropriately applied by the Investigator by making a finding:

(1) whether the concerns stated by you raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation; and, if not,

(2) whether there is sufficient evidence to support the Investigator's recommended findings by a preponderance of the evidence.

If the Review Panel finds that any concerns stated by you raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, it will remand the matter to me with instructions for further investigation or other action.

Exhibit 18

███████████

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation and affirms that there is sufficient evidence to support the recommended findings of responsibility by a preponderance of the evidence, it will then determine, by majority vote, the appropriate sanction(s) for the Prohibited Conduct, as outlined in Section VI.A.3 (g) of the Procedures.

Sincerely,

*Emily Babb*

Emily Babb
Assistant Vice President for Title IX Compliance
and Title IX Coordinator

cc:     Allen Groves, University Dean of Students
        Crystal Tyler, Non-Voting Hearing Chair
        Rhonda Quagliana, Advisor
        Jenna Mitchell, Executive Assistant to the Title IX Coordinator