IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:19-CV-00038-GEC |
| | ) |
| RECTOR AND VISITORS OF THE | ) |
| UNIVERSITY OF VIRGINIA, ET AL., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF EMILY BABB

I, Emily Babb, hereby declare and state as follows:

1. I am Emily Babb and I am over 18 years of age.

2. I am the Assistant Vice President for Title IX Compliance and the Title IX Coordinator at the University of Virginia in Charlottesville, Virginia. I have held this position since May 1, 2017.

3. I earned a Bachelor of Arts degree from DePauw University in 2001. I earned a Juris Doctor, with distinction, from the University of Oklahoma in 2004. I am a licensed attorney, admitted to practice by the State Bar of Texas in 2004 and in good standing.

4. From 2005 to 2015, I was employed by the U.S. Department of Education, Office for Civil Rights (OCR), Dallas Office. During my tenure with the Dallas office, I served as an Attorney, a Senior Attorney, and the Special Assistant to the Chief Attorney. I managed investigations of recipients of Federal financial assistance to determine compliance with Title IX of the Education Amendments of 1972, and other federal statutes. During my service as the Special Assistant to the Chief Attorney, I provided legal and policy advice to investigative staff, team leaders, the Chief Attorney, and the Regional Director concerning the appropriate legal standards and analysis in investigations to ensure resolutions were consistent with agency standards, legal sufficiency, and support by the facts.

5. From 2015 to 2017, I was employed by the U.S. Department of Education Office for Civil Rights, Cleveland Office, as Program Manager/Supervisory Attorney. I supervised four investigatory teams, led by a team leader and comprised of attorneys and equal

1

opportunity specialists, responsible for investigating more than 600 pending complaints alleging discrimination based upon the laws enforced by OCR. During my tenure as Program Manager, I also served as Acting Regional Director in 2016, overseeing all operations of the regional enforcement office, including reviewing the legal sufficiency of letters of finding, resolutions agreements, and monitoring closures.

6. As Assistant Vice President for Title IX Compliance/Title IX Coordinator, I oversee all aspects of the implementation of the University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence (Title IX Policy), with respect to all University programs, services, and activities to ensure a hostile-free living, learning, and working environment. I supervise the internal Title IX team and pool of external investigators to ensure the prompt and equitable resolution of all reports under the Title IX policy through both Alternative and Formal Resolution. For Formal Resolution/investigation I issue Notices of Investigation, provide guidance to internal and external investigators throughout the investigation, implement remedial measures, review all investigative reports for legal and factual sufficiency, and coordinate the Review Panel Hearing. I oversee the University's comprehensive Title IX training by developing training presentations, providing in-person training to students, faculty, and staff, and coordinating the implementation of the comprehensive online training for students, faculty and staff.

7. The University's Evaluation Panel reviews every report of Prohibited Conduct under the Title IX Policy. The Evaluation Panel is comprised of representatives from the Title IX office, Student Affairs, and the University Police Department. Reports of Prohibited Conduct are reviewed by the Evaluation Panel within 72 hours of receipt. The Evaluation Panel determines whether the reported information and any other available information provides a rational basis of concluding that there is a threat to the health or safety of the Complainant or to any other member of the University community. In making this determination, the Evaluation Panel is guided by the following factors:
    A. Whether the Respondent has prior arrests, is the subject of prior reports and/or complaints related to any form of Prohibited Conduct, or has any history of violent behavior;
    B. Whether the Respondent has a history of failing to comply with any University No-Contact Directive, other University protective measures, and/or any judicial protective order;
    C. Whether the Respondent has threatened to commit violence or any form of Prohibited Conduct;
    D. Whether the Prohibited Conduct involved multiple Respondents;
    E. Whether the Prohibited Conduct involved physical violence. "Physical violence" means exerting control over another person through the use of physical force. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking and brandishing or using any weapon;

F. Whether the report reveals a pattern of Prohibited Conduct (e.g., by the Respondent, by a particular group or organization, around a particular recurring event or activity, or at a particular location);
G. Whether the Prohibited Conduct was facilitated through the use of "date-rape" or similar drugs or intoxicants;
H. Whether the Prohibited Conduct occurred while the Complainant was unconscious, physically helpless or unaware that the Prohibited Conduct was occurring;
I. Whether the Complainant is (or was at the time of the Prohibited Conduct) a minor (under 18); and/or
J. Whether any other aggravating circumstances or signs of predatory behavior are present.

If the reported information constitutes a felony violation of the Code of Virginia, the Evaluation Panel also must disclose to the Commonwealth's Attorney.

8. In the report involving Jane Roe and John Doe, the University received the report of prohibited conduct from the Charlottesville Police Department on August 3, 2018. The University convened an Evaluation Panel on August 6, 2018. The Evaluation Panel concluded the reported information indicated a threat to the health and safety of the Complainant or University Community due to serious and/or multiple risk factors and the University Police Department representative disclosed the report to the Charlottesville Police Department. The Evaluation Panel concluded that the reported information indicated a felony and the University Police Department Representative disclosed the report to the Charlottesville Commonwealth's Attorney.

9. The University maintains a record of all reports of Prohibited Conduct reported to the institution.

    A. During the 2017-2018 academic year, the University initiated 30 Formal Resolutions pursuant to the Title IX Policy.
        - 9 the Formal Resolutions involved complainants who were third parties, former students, or former employees.
        - 16 of the Formal Resolutions involved conduct that occurred off Grounds.

    B. During the 2018-2019 academic year, the University initiated 41 Formal Resolutions pursuant to the Title IX Policy.
        - 6 of the Formal Resolutions involved complainants who were third parties, former students, or former employees.
        - 23 of the Formal Resolutions involved conduct that occurred Off Grounds.

10. Prior to the University's May 2017 Final Exercises, the University issued 7 degree holds for students who were in a pending Formal Resolution pursuant to the Title IX Policy. Prior to the University's May 2018 Final Exercises, the University issued 5 degree holds

3

for students who were in a pending Formal Resolution pursuant to the Title IX Policy. Prior to the University's May 2019 Final Exercises, the University issued 6 degree holds for students who were in a pending Formal Resolution pursuant to the Title IX Policy.

11. The Title IX Procedures provide a range of sanctions for students, from a verbal or written admonition through suspension, suspension in abeyance, and expulsion. Review Panels have imposed a range sanctions for students who have separated from the University prior to the conclusion of the pending Formal Resolution, including expulsion, suspension of a degree conferral, prohibition from re-enrollment at the University, prohibition from attending Final Exercises or other graduation ceremonies, and No Trespass Orders. Similarly, Review Panels have recommended a range of sanctions for employees who have separated from the University prior to the conclusion of the pending Formal Resolution, including ineligibility for rehire, exclusion from certain post-employment benefits, such as eligibility for emeritus status, and No Trespass Orders.

12. Pursuant to the Title IX Policy and Procedures, the Title IX Coordinator may impose protective and remedial measures. The availability of these measures are determined by the specific circumstances of each case. The Title IX Coordinator considers a variety of factors in determining which measures to take, including:
    A. The needs of the individual seeking remedial and/or protective measures;
    B. The severity or pervasiveness of the alleged Prohibited Conduct;
    C. As appropriate, any continuing effects;
    D. Whether the Complainant and Respondent share the same residence hall, dining hall, academic course(s), job or parking locations; and
    E. Whether other judicial measures have been taken (e.g., Protective Orders).

    The University seeks to minimize the burden imposed by such measures as appropriate to the specific circumstances of each case. Protective and remedial measures may be permanent or temporary and may be modified by the University as circumstances change. Examples of these measures are outlined in the Resource and Reporting Guide for Students, available at https://eocr.virginia.edu/appendixa-1.

13. When issuing a protective measure of interim suspension, the Title IX Coordinator and Evaluation Panel also consider the Health and Safety Threat Assessment factors outlined in the Procedures and listed above in Paragraph 7.

14. In the matter involving Mr. Doe, I reviewed the above-referenced factors and concluded that while the Evaluation Panel concluded the Health and Safety factors warranted the University disclosing the report to the Charlottesville Police Department and to the Commonwealth's Attorney, they did not indicate a need to interim suspend Mr. Doe during the pendency of the Formal Resolution. Consistent with the University's Procedures, Ms. Roe was provided the Resource and Reporting Guide, which provides a number of University and Community resources.

4

15. From January 1, 2017 through July 30, 2019, the University has interim suspended 7 students who were respondents in a pending Formal Resolution pursuant to the Title IX Policy. Of those individuals who were interim suspended, 5 ultimately were expelled at the conclusion of the Formal Resolution process.

16. On May 28, 2019, I received Plaintiff's Response to the Final Investigation Report (FIR). Joint Stip. Ex. 11. Plaintiff's Response included his objection to the University's continued assertion of authority under the Title IX Policy to complete the disciplinary process involving him. Plaintiff's Response said, in pertinent part: "Finally, the University lacks jurisdiction over this matter under its own Policy. The Complainant is not affiliated with the University in any capacity, as the investigator wrote in the FIR. No other provision of the Policy confers jurisdiction over this matter." I considered and rejected Plaintiff's contention that the University lacked authority under the Title IX Policy to continue its disciplinary process involving Plaintiff. I subsequently issued the Notice of Review Panel Hearing to the parties on June 5, 2019.

I declare under penalty of perjury that the laws of the United States of America that the foregoing is true and correct. Executed on this 2nd day of August, 2019.

*Emily Babb*

Emily Babb